**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENZO PECCARINO, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| Plaintiff, | |
| v. | |
| GRAB HOLDINGS LIMITED, ANTHONY TAN, and PETER OEY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Vincenzo Peccarino ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Grab Holdings Limited ("Grab" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Grab; and (c) review of other publicly available information concerning Grab.

## <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Grab securities between November 12, 2021 and March 3, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Grab offers a superapp that operates primarily across the deliveries, mobility, and digital financial services sectors in Southeast Asia.

3.      On December 1, 2021, Grab became a public entity via a business combination with Altimeter Growth Corp., a special purpose acquisition company.

4.      On March 3, 2022, at 7:01 a.m. Eastern, Grab disclosed that its fourth quarter revenues had declined 44% from the previous quarter and reported a $1.1 billion loss for the quarter. Grab's Chief Financial Officer attributed the poor financial results to "invest[ing] heavily" in driver incentives and stated that it would take one or two quarters "to get that equilibrium between drivers and riders, between supply and demand."

5.      On this news, the Company's stock price fell $2.04, or 37.3%, to close at $3.28 per share on March 3, 2022, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Grab's driver supply declined during the third quarter; (2) that, as a result, Grab continued to invest heavily in driver and consumer incentives to "preemptively recalibrate driver supply"; (3) that, as a result, the Company's financial results would be adversely impacted, including, among other things, a significant decline in revenue; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts

charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12.     Plaintiff Vincenzo Peccarino, as set forth in the accompanying certification, incorporated by reference herein, purchased Grab securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Grab is incorporated under the laws of the Cayman Islands with its principal executive offices located in Singapore. Grab's Class A common stock trades on the NASDAQ exchange under the symbol "GRAB," and its warrants trade under the symbol "GRABW."

14.     Defendant Anthony Tan ("Tan") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15.     Defendant Peter Oey ("Oey") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.     Defendants Tan and Oey (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be

misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Grab offers a superapp that operates primarily across the deliveries, mobility, and digital financial services sectors in Southeast Asia.

18.     On December 1, 2021, Grab became a public entity via a business combination with Altimeter Growth Corp., a special purpose acquisition company.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on November 12, 2021. On that day, Grab filed its amended Form F-4 in connection with the Business Combination. It reported the following financial results for the period ended September 30, 2021:[1]

> Despite tighter movement controls and heightened restrictions across Southeast Asia, we continued to demonstrate resilience across our consolidated business in the three months ended September 30, 2021.
>
> - ***Revenue was $157 million for the three months ended September 30, 2021, down 9% year-over-year, as a result of the decline in mobility due to the severe lockdowns in Vietnam. Revenue is net of consumer incentives and merchant- and driver-partner incentives.***
>
> - Loss for the period for the three months ended September 30, 2021 grew by $366 million to $(988) million and includes $748 million in non-cash items. The non-cash items primarily consists of interest accrued on our

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

convertible redeemable preference shares, equity-settled share-based payment and fair value changes on investments.

- Adjusted EBITDA was $(212) million for the three months ended September 30, 2021, down by $85 million year-over-year. The Adjusted EBITDA margin for the three months ended September 30, 2021 was (5.3)% of GMV. Adjusted EBITDA in the three months ended September 30, 2021 was negatively impacted by a drop in mobility, which had been segment Adjusted EBITDA positive since the three months ended December 31, 2020, as well as an increase in regional corporate costs as we continued to invest in product development and technological investments for the future.

- GMV for the three months ended September 30, 2021 grew 32% year-over-year to reach $4.0 billion. Deliveries GMV grew 63% year-over-year to reach $2.3 billion, which offset a 30% year-over-year decline in mobility GMV due to lockdowns and movement restrictions in many of our markets caused by COVID-19 and the Delta variant.

20. On November 19, 2021, Grab filed its amended Form F-4/A (the "November 19 Form F-4"), which stated, in relevant part:

Despite tighter movement controls and heightened restrictions across Southeast Asia, we continued to demonstrate resilience across our consolidated business in the three months ended September 30, 2021.

- ***Revenue was $157 million for the three months ended September 30, 2021, down 9% year-over-year, as a result of the decline in mobility due to the severe lockdowns in Vietnam. Revenue is net of consumer incentives and merchant- and driver-partner incentives.***

- Loss for the period for the three months ended September 30, 2021 grew by $366 million to $(988) million and includes $748 million in non-cash items. The non-cash items primarily consists of interest accrued on our convertible redeemable preference shares, equity-settled share-based payment and fair value changes on investments.

- Adjusted EBITDA was $(212) million for the three months ended September 30, 2021, down by $85 million year-over-year. The Adjusted EBITDA margin for the three months ended September 30, 2021 was (5.3)% of GMV. Adjusted EBITDA in the three months ended September 30, 2021 was negatively impacted by a drop in mobility, which had been segment Adjusted EBITDA positive since the three months ended December 31, 2020, as well as an increase in regional corporate costs as we continued to invest in product development and technological investments for the future.

5

- GMV for the three months ended September 30, 2021 grew 32% year-over-year to reach $4.0 billion. Deliveries GMV grew 63% year-over-year to reach $2.3 billion, which offset a 30% year-over-year decline in mobility GMV due to lockdowns and movement restrictions in many of our markets caused by COVID-19 and the Delta variant.

21.    The November 19 Form F-4 touted that Grab "had the region's **largest on-demand driver supply network**, based on the total number of registered driver-partners in Southeast Asia in 2020, and its largest food delivery network, based on the number of registered food delivery merchant-partners in Southeast Asia in 2020." It claimed that this supply "**may**" decline:

> If driver-partners are not attracted to the Grab platform or choose not to offer their services through its platform, or elect to offer them through a competitor's platform, ***Grab may lack a sufficient supply of driver-partners to attract and retain consumers and merchant-partners to the Grab platform***. Driver-partners choose Grab based on many factors, including the opportunity to earn money, the flexibility and autonomy to choose where, when and how often to work, the tools and opportunities Grab provides to seek to maximize productivity and other benefits that Grab provides to them. It is also important that Grab maintains a balance between demand and supply for mobility services in any given area at any given time. Grab has experienced and expects to continue to experience driver-partner supply constraints or oversupply from time to time in certain areas (including certain areas or locations within cities). To the extent that Grab experiences driver-partner supply constraints in a given market, Grab may need to increase, or may not be able to reduce, the driver-partner incentives that Grab offers.
>
> ***The number of driver- and merchant-partners on the Grab platform may decline or fluctuate*** as a result of a number of factors, including ceasing to provide services through its platform, passage or enforcement of local laws regulating, restricting, prohibiting or taxing the services and offerings of Grab's driver- and merchant-partners, the low costs of switching to alternative platforms, dissatisfaction with its brand or reputation, its pricing model (including potential reductions in incentives) or other aspects of Grab's business. In August 2019, personal information of some of Grab's driver-partners was exposed to other driver-partners. Additionally, driver or community protests, which have occurred in some of Grab's markets from time to time, could also negatively impact driver perception of Grab or its industry and impact Grab's ability to recruit and maintain its base of driver- and/or merchant-partners.

22.     The November 19 Form F-4 listed "[o]ur ability to realize operating leverage on our platform" as a "Key Factor[] Affecting Our Performance." It stated that "[d]uring the initial stages of growth, we offered significant incentives and promotions to attract platform consumers as well as incentives to attract driver- and merchant-partners, and conducted advertising activities to enhance our brand awareness." However, "[g]oing forward, with increasing scale and synergies on our platform, we expect to enjoy economies of scale, which we expect will allow us to more efficiently and cost effectively acquire new platform consumers and engage existing consumers."

23.     Another "Key Factor[]" was Grab's "ability to ***continue to reduce*** driver- and merchant-partner and consumer incentives." Specifically, the Company stated in the November 19 Form F-4:

> The incentives that Grab provides to its partners and consumers represented a higher proportion of our GMV during the initial stages of growth of our business. For example in 2019, incentives accounted for $2.1 billion (24% of GMV) across mobility and deliveries segment whereas in 2020 and the first half of 2021, this number dropped to $1.2 billion (13% of GMV) and $668 million (13% of GMV), respectively. ***This is due to both reduced incentive spend over time as well as growth in GMV in the respective segments.*** As our platform grows, we have been able to take advantage of the synergies of our platform and more effectively use incentives to encourage the use of our platform and acquire driver- and merchant-partners on to our platform over time, leading to an increase in revenue as a percentage of GMV in 2020. ***However, from time to time we may also increase incentives due to competitive factors in a particular country or area.***
>
> We expect that our ability to successfully reduce the amount of incentives paid to driver- and merchant-partners and consumers over time relative to the commissions and fees we receive will likely impact our ability to increase revenues, raise capital, reduce net losses and achieve profitability and reduce net cash outflows. In addition, future decreases in the use of incentives could also result in decreased growth in the number of users and driver- and merchant-partners or an overall decrease in users and driver- and merchant-partners, which could negatively impact our financial condition and results of operations.

24.     Regarding Risk Factors, the November Form 19 Form F-4 stated:

***Grab's ability to decrease its net losses and achieve profitability is dependent on its ability to reduce the amount of partner and consumer incentives it pays relative to the commissions and fees it receives for its service.***

***Grab has paid significant amounts of incentives to attract new driver and merchant partners and consumers to its services in order to grow its business and generate new demand for its services and may continue to do so in the future***. These incentives, which are typically in the form of additional payments made to partners and consumers, have in the past and may in the future exceed the amount of the commissions and fees that Grab receives for its services. Grab's revenues are reported net of partner and consumer incentives, so if incentives exceed Grab's commissions and fees received, it can result in Grab reporting negative revenue. For the years ended December 31, 2019 and 2020 and the six months ended June 30, 2021, Grab incurred incentives of $2,351 million, $1,237 million and $740 million, respectively (comprised of partner incentives of $1,234 million, $621 million, and $311 million, respectively, and consumer incentives of $1,117 million, $616 million and $429 million, respectively) resulting in reductions to Grab's reported revenues of the same amounts, which in the case of the year ended December 31, 2019 resulted in Grab reporting negative revenues of $(845) million. Notwithstanding Grab's use of significant incentive payments to encourage use of its platform, Grab's monthly transacting users nevertheless declined from approximately 29.2 million in the year ended December 31, 2019 to approximately 24.5 million for the year ended December 31, 2020, in part due to the impact of the COVID-19 pandemic on Grab's mobility segment, and thereafter remained relatively stagnant at approximately 24.3 million for the six months ended June 30, 2021.

Grab's ability to increase its revenues and, in turn, decrease its net losses and achieve profitability is therefore significantly dependent on its ability to effectively use incentives to encourage the use of its platform and over time to reduce the amount of incentives it pays to both its driver and merchant partners and consumers of its services relative to the amount of commissions and fees it receives for its services. If Grab is unable to reduce the amount of incentives it pays over time relative to the commissions and fees it receives, it will likely impact Grab's ability to increase its revenues, raise capital, reduce its net losses and achieve profitability and reduce its net cash outflows, any or all of which could prevent Grab from continuing as a going concern or achieving or maintaining profitability. In addition, given Grab's use of incentives to encourage use of its platform, future decreases in the use of incentives could also result in decreased growth in the number of users and driver- and merchant-partners or an overall decrease in users and driver- and merchant-partners and decreases in its revenues, which could negatively impact its financial condition and results of operations.

25.     On December 6, 2021, Grab filed its annual report on Form 20-F with the SEC, incorporating by reference the financial statements and risk factors stated in the November 19 Form F-4.

26.     The above statements identified in ¶¶ 19-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that Grab's driver supply declined during the third quarter; (2) that, as a result, Grab continued to invest heavily in driver and consumer incentives to "preemptively recalibrate driver supply"; (3) that, as a result, the Company's financial results would be adversely impacted, including, among other things, a significant decline in revenue; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

27.     On March 3, 2022, at 7:01 a.m. Eastern, Grab disclosed that its fourth quarter revenues had declined 44% from the previous quarter and reported a $1.1 billion loss for the quarter. Specifically, the Company issued a press release stating:

**Fourth Quarter 2021 Financial and Operational Highlights**

- GMV grew 26% YoY to reach $4.5 billion, marking four straight record quarters for Grab. Deliveries and financial services demonstrated strong YoY GMV and TPV (Pre-interco) growth of 52% and 29% respectively. Mobility GMV declined 11% YoY but continues to recover with 45% QoQ growth.

- MTUs grew by 3% YoY and 18% QoQ to 26.0 million as lockdowns continued to ease, the highest since COVID-19 related movement restrictions came into force in Q2 2020.

- Average spend per user increased by 23% YoY to $173.

- ***Revenue was $122 million, a 44% decline YoY as Grab preemptively invested to grow driver supply to support strong recovery in mobility demand***. Consumer incentives for mobility and deliveries also increased as Grab invested in its category share and MTU growth.

- Loss for the period was $1.1 billion which included $311 million non-cash interest expense related to Grab's convertible redeemable preference shares that ceased upon Grab's public listing and $328 million related to one-time public listing related expenses, of which $290 million is non-cash.

- Adjusted EBITDA of $(305) million was down by $203 million YoY. Adjusted EBITDA margins were (6.8)% of GMV compared to (2.8)% in Q4 2020. The decline is a result of the increased investments in incentives stated above, and strategic investments in areas such as tech and financial services, including the digibank as we prepare for its launch in Singapore.

28.     During a conference call held in connection with the results, Defendant Tan attributed the poor financial results to "invest[ing] heavily" in driver incentives. Specifically, he stated:

> I want to point out that the fourth quarter was a quarter of reinvestments for Grab and we expect some of this to continue into the first and second quarter. There are 3 drivers for this. First, *we're preemptively investing to recalibrate driver supply to capture a strong recovery in mobility demand.* Similar to what was observed in other parts of the world, *our driver supply base moderated down amid lower mobility demand in the third quarter.* We're investing to pull drivers back even as we continue to find ways to increase your productivity on our platform. Not only are we seeing our driver pool grow, the utilization rates went up by 19% year-over-year in the fourth quarter and the average earnings per hour grew by 16%.

> Second, we're strategically investing to maintain category leadership in Southeast Asia. . . . Third, we continue to invest into tech infrastructure and talent to support the pursuit of our long-term growth opportunities. . . .

29.     Defendant Oey stated that it would take one or two quarters "to get that equilibrium between drivers and riders, between supply and demand . . . ." He also stated that "for the first quarter, we expect to see deliveries GMV of $2.4 billion to $2.5 billion, mobility GMV of $760 million to $800 million, and financial services TPV of $3.1 billion to $3.2 billion."

30.     On this news, the Company's stock price fell $2.04, or 37.3%, to close at $3.28 per share on March 3, 2022, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Grab securities between November 12, 2021 and March 3, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Grab's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Grab shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Grab or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Grab; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Grab's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Grab's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Grab's securities relying upon the integrity of the market price of the Company's securities and market information relating to Grab, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Grab's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Grab's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Grab's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Grab's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Grab, their control over, and/or receipt and/or modification of Grab's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Grab, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Grab's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Grab's securities traded at artificially inflated prices during the Class Period.   On November 12, 2021, the Company's share price closed at a Class Period high of $16.37 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Grab's securities and market information relating to Grab, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Grab's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the

14

damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Grab's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Grab and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Grab's securities was an efficient market for the following reasons, among others:

(a)     Grab shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Grab filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Grab regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Grab was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Grab's securities promptly digested current information regarding Grab from all publicly available sources and reflected such information in Grab's share price. Under these circumstances, all purchasers of Grab's securities during the Class Period suffered similar injury through their purchase of Grab's securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to

any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Grab who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
<u>Against All Defendants</u>**

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Grab's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Grab's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Grab's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Grab's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Grab and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Grab's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Grab's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class

acquired Grab's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Grab was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Grab securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Grab within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to

influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Grab and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)	Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)	Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 16, 2022

By:  *s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Vincenzo Peccarino*

**SWORN CERTIFICATION OF PLAINTIFF**
**GRAB HOLDINGS LIMITED (GRAB) SECURITIES LITIGATION**

I, Vincenzo Peccarino, certify that:

1.      I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.      I did not purchase the Grab Holdings Limited securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Grab Holdings Limited securities during the period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/12/2022
_____
Date

_____
Vincenzo Peccarino

**Vincenzo Peccarino's Transactions in Grab Holdings Limited (GRAB)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/6/2021 | Bought | 200 | $8.6000 |
| 12/17/2021 | Bought | 200 | $7.4900 |
| 1/24/2022 | Bought | 200 | $5.3900 |
| 1/28/2022 | Bought | 100 | $5.4000 |
| 1/28/2022 | Bought | 100 | $5.3000 |
| 1/31/2022 | Bought | 200 | $5.7500 |
| 3/2/2022 | Bought | 200 | $5.1000 |
| 3/3/2022 | Bought | 300 | $3.6500 |
| 3/3/2022 | Bought | 500 | $3.6000 |