# Exhibit 1

Case 1:22-cv-02189-JLR    Document 101-1    Filed 03/05/24    Page 2 of 6

Mi v. Waterdrop Inc.; Not Reported in Fed. Rptr. (2024)

2024 WL 159191
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Qi MI, Plaintiff-Appellant,
Sidney Sandoz, Plaintiff,

v.

WATERDROP INC., Peng Shen, Kangping Shi, Nina
Zhou, Kai Huang, Guang Yang, Collen A. De Vries,
Cogency Global Inc., Goldman Sachs (Asia) L.L.C.,
Morgan Stanley & Co. LLC, BofA Securities, Inc.,
China Merchants Securities (HK) Co., Limited, CLSA
Limited, Haitong International Securities Company
Limited, Yao Hu, Haiyang Yu, Defendants–Appellees.

No. 23-301
|
January 16, 2024

Appeal from a judgment of the United States District Court
for the Southern District of New York (Cote, J.).
Upon due consideration, it is hereby **ORDERED**,
**ADJUDGED**, and **DECREED** that the judgment of the
district court is **AFFIRMED.**

**Attorneys and Law Firms**

For Plaintiff-Appellant: Craig J. Geraci, Jr., Kahn Swick &
Foti, LLC, New Orleans, Louisiana (Kim E. Miller, Kahn
Swick & Foti, LLC, New York, New York, on the brief).

For Defendants-Appellees: Sanford I. Weisburst, Quinn
Emanuel Urquhart & Sullivan, LLP, New York, New
York (Michael B. Carlinsky, Jacob J. Waldman, Quinn
Emanuel Urquhart & Sullivan, LLP, New York, NY, Jonathan
Rosenberg, Abby F. Rudzin, O'Melveny & Myers LLP, New
York, New York, on the brief).

PRESENT: Steven J. Menashi, Alison J. Nathan, Maria
Araújo Kahn, Circuit Judges.

**SUMMARY ORDER**

**\*1** Plaintiff-Appellant Qi Mi is the lead plaintiff for
a putative class consisting of investors who purchased
American Depositary Shares ("ADS") in the May 2021
initial public offering ("IPO") of Waterdrop, Inc., an Internet-
based Chinese insurance company. Mi's complaint asserted

claims against Waterdrop, certain of its officers, directors
and representatives, and the underwriters of the IPO under
sections 11 and 15 of the Securities Act of 1933. Mi alleged
that Waterdrop's registration statement—the document that
informed prospective investors in the IPO about Waterdrop
—was materially misleading. The district court dismissed the
complaint for failure to state a claim. We assume the parties'
familiarity with the facts, procedural history, and issues on
appeal.

**I**

Waterdrop, founded in China in 2016, historically had three
business segments: a commercial insurance platform; a
medical crowdfunding platform, which enabled donations to
people with high medical bills; and a mutual aid platform,
which enabled people suffering from critical illnesses to
spread their medical costs. While the commercial insurance
platform generated the majority of Waterdrop's revenue, the
crowdfunding and mutual aid programs gave Waterdrop a
competitive advantage because those programs "generate[d]
cheaper customer leads and lower[ed] Waterdrop's customer
acquisition costs." J. App'x 25. In late 2020, the China
Banking and Insurance Regulatory Commission ("CBIRC")
began scrutinizing online insurance companies. The CBIRC
focused particularly on mutual aid platforms, which the
agency deemed to present a high risk of fraud. By early
2021, most of the mutual aid platforms in China, including
Waterdrop's, had ceased operations. Despite the regulatory
environment, Waterdrop proceeded with its planned IPO on
May 7, 2021. According to Mi, "[t]he Registration Statement
disclosed the cessation of Waterdrop's mutual aid platform,
but it obscured the true reasoning behind the cessation,
thus ... downplaying the effects that the hostile regulatory
environment in China was having and would continue to have
on the Company." *Id.* at 15.

The IPO occurred approximately one month after the end of
the first fiscal quarter of 2021 ("Q1:21"). Mi alleged that
the registration statement was misleading for the additional
reason that it disclosed certain interim financials from
Q1:21 but omitted the sharp increase in aggregate expenses
during that quarter. Mi focuses on the following passage
in the section of the registration statement titled "Recent
Development":

Mi v. Waterdrop Inc., Not Reported in Fed. Rptr. (2024)

Case 1:22-cv-02189-JLR    Document 101-1    Filed 03/05/24    Page 3 of 6

We have achieved a solid business growth in the first quarter of 2021. The FYP[1] generated through Waterdrop Insurance Marketplace reached RMB 4,469 million for the first quarter of 2021, demonstrating a 14.4% increase from the fourth quarter of 2020 or a 42.7% increase from the [first quarter] of 2020.

*Id.* at 235. According to Mi, "Waterdrop notably did not disclose that operating costs and expenses had skyrocketed during Q1:21, increasing by more than 75% year over year, which led to a significant net operating loss for the quarter." *Id.* at 35. This increase largely resulted from Waterdrop's reliance on costly third-party traffic channels to grow its customer base after discontinuing the mutual aid platform.

**\*2** This action began in the Southern District of New York on September 14, 2021, as a putative class action on behalf of all investors in Waterdrop's IPO. The defendants moved to dismiss the First Amended Complaint ("FAC") for failure to state a claim, and the district court granted the motion, explaining its decision as follows:

Read in context, the Registration Statement adequately warned investors of the risks associated with Waterdrop and its IPO, including the increase in operating costs, the regulatory regime, and the closure of Mutual Aid. The FAC has failed to plead that any of the statements in the Registration Statement were materially misleading or that there were material omissions from the Registration Statement.

*Sandoz v. Waterdrop Inc.*, No. 21-CV-7683, 2023 WL 1767526, at \*8 (S.D.N.Y. Feb. 3, 2023). The district court denied leave to amend the complaint. This appeal followed.

## II

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)). "Although we generally review denials of leave to amend for abuse of discretion, in cases in which the denial is based on futility, we review *de novo* that legal conclusion." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (emphasis added).

## III

"To state a plausible section 11 claim based on an alleged omission, a complaint must pass two distinct hurdles: it must identify an omission that is (1) unlawful and (2) material." *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013). "In the Second Circuit, the long-standing test for assessing the materiality of an omission ... [is whether] a reasonable investor would view the omission as 'significantly alter[ing] the "total mix" of information made available.' " *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 36 (2d Cir. 2017) (quoting *DeMaria v. Anderson*, 318 F.3d 170, 180 (2d Cir. 2003)). We agree with the district court that Mi failed plausibly to allege that the registration statement was materially misleading with respect to either the discontinuation of the mutual aid platform or Waterdrop's Q1:21 financial results.

## A

Mi argues that the registration statement was materially misleading because it failed to disclose that the mutual aid program was discontinued due to regulatory pressure, giving investors an incomplete picture of the regulatory environment in which Waterdrop operates. But the registration statement spoke in detail about the regulatory environment and the risks it presented to Waterdrop's business. *See, e.g.*, J. App'x 248-49 ("We operate in a highly regulated industry in China, and the regulatory regime continues to evolve. ... [T]he CBIRC has extensive authority to supervise and regulate the insurance industry in China. Since the online insurance industry in China is evolving rapidly, the CBIRC has been enhancing its supervision over this industry in recent years, and new laws, regulations and regulatory requirements have

Mi v. Waterdrop Inc., Not Reported in Fed. Rptr. (2024)

Case 1:22-cv-02189-JLR    Document 101-1    Filed 03/05/24    Page 4 of 6

been promulgated and implemented from time to time."). The registration statement put investors on notice that Waterdrop operates in a highly regulated industry and is subject to considerable regulatory risk.

**\*3** In addition, as the district court noted, the complaint referred to several documents publicly available to investors at the time of the IPO that provided additional information about the increasing regulatory scrutiny of mutual aid platforms. *Cf. Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (noting that a district court deciding a motion to dismiss may consider "documents possessed by or known to the plaintiff upon which it relied in bringing the suit") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). The complaint explained that "in late 2020 and early 2021, publications by the CBIRC demonstrated ... that the Chinese Government was cracking down on the health insurance industry, especially medical mutual aid," and it cited a CBIRC study from September 2020 that specifically named Waterdrop's mutual aid platform as an "unlicensed operation[ ]" that posed "stakeholder risks [that] cannot be ignored." J. App'x 49. The district court correctly concluded that explicitly stating that the mutual aid program was discontinued due to pressure from the CBIRC would not have "significantly altered the total mix of information" available to a reasonable investor at the time of the IPO.

**B**

Mi's argument that the registration statement was materially misleading for failing to disclose the rate of increase in aggregate expenses in Q1:21 also fails. The district court observed that "[r]epeatedly, the Registration Statement states that operating costs and expenses had increased and were expected to continue to increase 'in the foreseeable future.' " *Waterdrop*, 2023 WL 1767526, at \*8. On appeal, Mi argues that despite this language the registration statement was still misleading because it omitted the rate of increase in Q1:21. "[T]he Q1:21 costs and expenses ... were not consistent with the historical results provided in the Registration Statement," according to Mi, because the year-over-year rate of growth in aggregate expenses "had been trending downwards—*until Q1:21*, when that trend notably reversed (and rapidly accelerated into Q2:21, which was well underway at the time of the IPO." Reply Br. 5. Thus, Mi argues, Waterdrop misled investors by selectively disclosing the rate of growth in FYP in Q1:21 without also disclosing the rate at which aggregate expenses grew. Had Waterdrop disclosed its Q1:21

expenses, the registration statement "would have revealed that generating the increased FYP and the 'solid business growth' in Q1:21 came with a significant and unexpected price tag." *Id.* at 12.

Mi's argument fails because the "price tag" would not have come as a surprise to a rational investor. On the contrary, a reasonable investor who understood Mi's business model would have known that Waterdrop's FYP growth in Q1:21 could not have been achieved for free. The financial data included in the registration statement revealed that FYP grew by approximately 20% between Q1:20 and Q4:20 while aggregate expenses grew by approximately 44% over the same period. Waterdrop disclosed that FYP increased by 14.4% from Q4:20 to Q1:21, while its earnings release following the IPO revealed that aggregate expenses grew by 22.3% over the same period. The ratio between the growth rates of FYP and aggregate expenses in Q1:21 was consistent with Waterdrop's results for fiscal 2020—indeed, it was slightly better. As Mi alleged in his complaint, analysts covering Waterdrop at Bank of America and Morgan Stanley did not change their price targets for Waterdrop's ADS when the Q1:21 financials were released after the IPO. *See* J. App'x 37. A reasonable investor thus would not have been particularly surprised by the rate at which Waterdrop's aggregate expenses increased in Q1:21.

Mi's argument appears plausible only when the reference to "solid business growth" in Q1:21 is read in isolation. But we are required to read the registration statement "cover-to-cover" and "consider whether the disclosures and representations, 'taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities].' " *In re Proshares*, 728 F.3d at 103 (quoting *DeMaria*, 318 F.3d at 180). The registration statement as a whole described a risky and speculative investment in an upstart growth company that had never been, and might never be, profitable. *See, e.g.*, J. App'x 247-48 ("We have incurred net losses and negative cash flows from operating activities each year since our inception and we may not be able to achieve or maintain profitability or positive cash flow in the future. ... We anticipate that our operating costs and expenses will increase in the foreseeable future as we continue to grow our business."). The reference to Q1:21 growth, and the omission of the precise figure for aggregate expenses, did not affect the overall picture of Waterdrop that the registration statement presented. The registration statement was not materially misleading.

## C

**\*4** Although Mi's primary argument on appeal is that the registration statement was rendered materially misleading by "omissions of historical or present fact about Waterdrop's Q1:21 results," Appellant's Br. 31, he also complains about certain forward-looking statements. Mi asserts that "the Registration Statement ... assure[d] investors that 'we expect our operating costs as a percentage of our net operating revenue will decrease in the foreseeable future,' despite operating costs as a percentage of revenue having already increased in Q1:21." *Id.* at 34.

Under the bespeaks-caution doctrine, however, "alleged misrepresentations in a stock offering are immaterial as a matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (quoting *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)). Mi focuses almost exclusively on the language in the "Special Note Regarding Forward-Looking Statements" and characterizes it as mere "boilerplate." Appellant's Br. 37. But as we have explained, "[w]hen there is cautionary language in the disclosure, the Court analyzes 'the allegedly fraudulent materials in their entirety to determine whether a reasonable investor would have been misled.' " *Rombach*, 355 F.3d at 173 (quoting *Halperin*, 295 F.3d at 357). In *Rombach*, although we described some of the cautionary statements as "formulaic," we concluded "that as a whole they provided a sobering picture of [the issuer's] financial condition and future plans" and were therefore sufficiently meaningful to qualify any forward-looking statements. *Id.* at 176. Likewise, here, Waterdrop's registration statement cautioned investors by painting an overall picture of a risky and speculative investment in a company that might never be profitable. We conclude that the forward-looking statements are not misleading pursuant to the bespeaks-caution doctrine.

## D

Finally, the district court appropriately exercised its discretion in denying Mi leave to amend the complaint a second time. "[A] court need not always allow a party to replead simply because it asked. In particular, denial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.' " *Noto v. 22nd Century Grp.*, 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). Mi asserts that if given the opportunity to amend, he would "alleg[e] more explicitly [that] the Q1:21 financial results were final by the date of the IPO" and "alleg[e] additional facts detailing how a reasonable investor would have found the undisclosed information about the cessation of Mutual Aid to be important." Appellants' Br. 45. These vague and conclusory statements do not show that amendment would cure the defects in the complaint. *See Noto*, 35 F.4th at 107 (affirming the denial of leave to amend because "[i]n their briefing on appeal, plaintiffs contend that they could 'cure any deficiencies with additional testimony ... about [d]efendants' editing, review, and approval' of the promotional articles, but do not allege what specific facts they would include to demonstrate the level of control needed for Rule 10b-5 liability").

\* \* \*

We have considered Mi's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 159191

## Footnotes

1      First-year premiums, or FYP, include "all premiums that policyholders are obligated to pay for short-term policies and the premiums that policyholders are obligated to pay in the first policy year for long-term policies." Appellees' Br. 6-7 (quoting J. App'x 239). Thus, FYP serves as a measure of new insurance business generated in a given period.

Case 1:22-cv-02189-JLR    Document 101-1    Filed 03/05/24    Page 6 of 6

**Mi v. Waterdrop Inc., Not Reported in Fed. Rptr. (2024)**

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.