**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE GRAB HOLDINGS LIMITED SECURITIES LITIGATION |

Case No. 1:22-cv-02189-JLR

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.   PRELIMINARY STATEMENT ........................................................................1

II.  NATURE OF THE ACTION .............................................................................2

III. THE SETTLEMENT ..........................................................................................3

IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .............5

   A. The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and
      *Grinnell* ...................................................................................................6

      1. The Settlement Is an excellent Result for the Settlement Class................7

         a. The costs, risks, and delay of trial and appeal support approval .....9

         b. Other 23(e)(2)(C) factors support approval ..................................11

      2. The Settlement Treats All Members of the Settlement Class Equitably
         Relative to Each Other ...........................................................................13

      3. The Settlement Class Was Well-Represented by Lead Plaintiffs and Co-
         Lead Counsel ..........................................................................................13

      4. The Settlement Is the Result of Good Faith, Arm's-Length
         Negotiations ...........................................................................................15

   B. The Remaining *Grinnell* Factors Support Approval.............................16

V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED.................................18

   A. The Settlement Class Satisfies the Requirements of Rule 23(a)............18

      1. Numerosity.............................................................................................18

      2. Commonality...........................................................................................19

3.  Typicality ..................................................................................................19

4.  Adequacy ...................................................................................................20

B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3)........................21

1.  Common Legal and Factual Questions Predominate.............................21

2.  A Class Action is Superior to Other Methods of Adjudication ..............22

C.  Co-Lead Counsel Should be Appointed as Settlement Class Counsel ...................22

VI.  THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY
APPROVED ...............................................................................................................22

VII.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
NOTICE TO THE SETTLEMENT CLASS...................................................................23

VIII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................25

IX.  CONCLUSION............................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp*,
572 F.3d 221, 235 (5th Cir. 2009) ......................................................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................21, 22

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..............................................................................................................14

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................................11

*Beckman v. KeyBank*, N.A.,
293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................17

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)................................................................................................19

*Christine Asia Co. v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........7, 13, 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..................................................................................................18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)..................................................................................................15

*Davenport v. Elite Model Mgmt. Corp.*,
No. 1:13-CV-01061-AJN, 2014 WL 12756756 (S.D.N.Y. May 12, 2014)......................17, 18

*Del. Cty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
No. 21-3382, 2024 WL 3360661 (E.D. Pa. July 10, 2024) ....................................................16

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................................................................18

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................6, 7, 16, 17

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) .......................................................................................25

*Edwards v. N. Am. Power & Gas, LLC*,
 No. 3:14-cv-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018)...............................25

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
 594 U.S. 113, 121 (2021)..........................................................................................................11

*Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*,
 338 F.R.D. 205 (S.D.N.Y. 2021) ..............................................................................................19

*In re "Agent Orange" Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................................8, 17

*In re "Agent Orange" Prod. Liab. Litig.*,
 818 F.2d 145 (2d Cir. 1987).................................................................................................8, 25

*In re Am. Bank Note Holographics*,
 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ........................................................................10

*In re Am. Int'l Grp. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012)......................................................................................................21

*In re AppHarvest Sec. Litig.*,
 No. 1:21-cv-07985-LJL, 2024 WL 967258 (S.D.N.Y. Mar. 6, 2024)......................................25

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................11

*In re Celera Corp. Sec. Litig.*,
 Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ......................10

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................................13

*In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*,
 No. 17-cv-1580, 2022 WL 3220783 (Aug. 5, 2022) ................................................................13

*In re China Sunergy Sec. Litig.*,
 No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011).........................8

*In re Drexel Burnham Lambert Grp., Inc.*,
 960 F.2d 285 (2d Cir. 1992)......................................................................................................20

*In re 3D Sys. Sec. Litig.*,
 No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ............................9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
 343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................................................................................5, 11

iv

*In re Frontier Comm's Corp.,*
   No. 3-17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022) ..................................8

*In re IMAX Sec. Litig.,*
   283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................................5, 18

*In re Initial Pub. Offering Sec. Litig.,*
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................................6

*In re Initial Pub. Offering Sec. Litig.,*
   260 F.R.D. 81 (S.D.N.Y. 2009) ..............................................................................................18

*In re J.P. Morgan Stable Value Fund ERISA Litig.,*
   No. 12-cv-2548, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ...................................... 12-13

*In re Marsh ERISA Litig.,*
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................20, 21

*In re Merrill Lynch Tyco Research Sec. Litig.,*
   249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................16

*In re N. Dynasty Minerals Ltd. Sec. Litig.,*
   No. 20-CV-5917 (TAM), 2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023)..........................9, 25

*In re PAR Pharm. Sec. Litig.,*
   Civil Action No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) .............................9

*In re Payment Card Interchange Fee & Merch. Antitr. Litig.,*
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................7

*In re Pfizer Inc. Sec. Litig.,*
   282 F.R.D. 38 (S.D.N.Y. 2012) ..............................................................................................19

*In re Platinum & Palladium Commodities Litig.,*
   No. 10-CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................7

*In re Polaroid ERISA Litig.,*
   240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................................14

*In re Puda Coal Sec. Inc. Litig.,*
   No. 11 Civ. 2598 (KBF), 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013)..................................10

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...........................................................................................18

*In re Take Two Interactive Secs. Litig.*,
   No. 06 Civ. 803 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)...................................23

*In re Tenaris S.A. Sec. Litig.*,
   No. 18-CV-7059 (KAM) (SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ...............12, 17

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ......................................................................................20

*In re Veeco Instruments, Inc.*, *Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................................21

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................................19

*In re XL Fleet Corp. Securities Litig.*,
   Docket No. 1:21-cv-02002, ECF No. 181 (S.D.N.Y Jan. 18, 2024) .........................................9

*McIntosh v. Katapult Holdings, Inc.*,
   No. 21-CV-07251 (AS) (KHP), 2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024)........................5

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d Cir. 2019)......................................................................................................23

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010).................................................................................................9

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ...............................................................................................7, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950).................................................................................................................25

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
   No. 15 Civ. 1938 (DAB), 2018 WL 889472 (S.D.N.Y. Feb. 1, 2018) ......................................8

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)....................................................................................................21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..............................................................................................11

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010).......................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................................5, 14

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................................18

*Wojcik v. Omega Healthcare Inv'rs, Inc.*,
    No. JKB-20-3491, 2024 WL 3743081 (D. Md. Aug. 8, 2024)................................................16

## Rules

Fed. R. Civ. P. 12(b)(6)...............................................................................................................2

Fed. R. Civ. P. 23(a) ............................................................................................................18, 22

Fed. R. Civ. P. 23(a)(1)........................................................................................................18, 19

Fed. R. Civ. P. 23(a)(2)...............................................................................................................19

Fed. R. Civ. P. 23(a)(3)...............................................................................................................19

Fed. R. Civ. P. 23(a)(4)...............................................................................................................20

Fed. R. Civ. P. 23(b)(3)......................................................................................................18, 21, 22

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................................................11

Fed. R. Civ. P. 23(c)(2)...............................................................................................................23

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................................23

Fed. R. Civ. P. 23(c)(3)...............................................................................................................23

Fed. R. Civ. P. 23(e) ............................................................................................................17, 23

Fed. R. Civ. P. 23(e)(1).................................................................................................................6

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................................23

Fed. R. Civ. P. 23(e)(2).......................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2)(A) ...................................................................................................13, 15

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................................15

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................7, 8, 11

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................................13

Fed. R. Civ. P. 23(e)(3)................................................................................................6, 11

Fed. R. Civ. P. 23(f)..........................................................................................................11

Fed. R. Civ. P. 23(g) .........................................................................................................22

**Statutes and Regulations**

15 U.S.C. §78u-4(a)(7) ....................................................................................................23

Private Securities Litigation Reform Act.......................................................................2, 23

**Other Sources**

NERA, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (Jan. 23, 2024). Retrieved from https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html?lang=en............................................................9

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Si Fan, Amit Batra, and SLG Cloudbank Holdings, LLC (hereafter the "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for an order preliminarily approving the proposed Settlement[1] of this Action (hereafter the "Preliminary Approval Order"). The Settlement provides a highly-favorable $80.0 million cash recovery for the benefit of the Settlement Class in consideration for fully resolving all claims alleged in this Action. The Settlement is the result of Lead Plaintiffs' and Co-Lead Counsel's vigorous litigation and multiple mediations. Having achieved this agreement, Lead Plaintiffs now move the Court to: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation dated December 30, 2024 (the "Stipulation"); (2) certify a Settlement Class for purposes of effectuating this Settlement; (3) approve the form and plan of notice to the Settlement Class; and (4) schedule a final approval hearing at which this Court will, among other things, make a final determination as to whether the Settlement is fair, reasonable, and adequate.

Preliminary approval is warranted where, as here, the Settlement is within the range of what may be found to be fair, reasonable, and adequate, so that notice of the Settlement can be given to all Settlement Class Members and a hearing scheduled to consider final approval of the Settlement. As provided herein, the proposed Settlement is the product of informed, good faith, arm's-length negotiations between experienced counsel. After assessing the merits of the case as well as Defendants' potential defenses, the risks and expenses in continuing litigation through trial, and the recovery offered in the Settlement, Lead Plaintiffs and Co-Lead Counsel believe that the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement ("Stipulation"). Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Amended Class Action Complaint (the "Complaint"), filed August 22, 2022, ECF No. 58.

Settlement is in the best interests of the Settlement Class.

## II.        NATURE OF THE ACTION

On March 16, 2022, Plaintiff Vincenzo Peccarino filed a class action complaint against Defendants Grab Holdings Limited ("Grab"), Anthony Tan, and Peter Oey alleging violations of the federal securities laws (specifically, Sections 10(b) and Section 20(a) of the Exchange Act and SEC Rule 10b-5) in the United States District Court for the Southern District of New York. ECF No. 1 (the "*Peccarino* Action"). On April 21, 2022, a similar securities class action captioned *Si Fan v. Grab Holdings Limited et al.*, Case No. 1:22-cv-03277 (S.D.N.Y.) (the "*Fan* Action") was also filed in this Court seeking the same relief against the same defendants on behalf of persons and entities that purchased or otherwise acquired Grab securities between August 2, 2021 and March 3, 2022, inclusive. ECF No. 39 at 1. On June 7, 2022, the Court entered an order consolidating the *Peccarino* and *Fan* Actions, appointing Lead Plaintiffs pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and approving their selection of counsel. ECF No. 38.

On August 22, 2022, Lead Plaintiffs filed the operative Complaint. ECF No. 58. As a result of Co-Lead Counsel's thorough investigation, Lead Plaintiffs were able to dramatically expand the initially alleged violations of Section 10(b), Rule 10b-5, and Section 20(a), to assert claims under Section 14(a) of the Exchange Act and Sections 11 and 15 of the Securities Act. *Id.* The Complaint also named 11 additional defendants: Brad Gerstner, Hab Siam, Richard N. Barton, Aishetu Fatima Dozie, Dev Ittycheria, Tan Hooi Ling, Maa Ming-Hokng, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay (collectively, with Grab, Tan, and Oey, "Defendants"). On November 18, 2022, Defendants filed a joint motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and an accompanying memorandum of law in support. ECF Nos. 89, 90. On

January 27, 2023, Lead Plaintiffs filed a memorandum of law in opposition to the motion to dismiss, ECF No. 92, to which Defendants filed a reply on February 27, 2023, ECF No. 93. The Court held oral argument on the motion to dismiss on March 7, 2024. *See* ECF No. 108 (transcript of oral argument held on March 7, 2024).

On March 12, 2024, the Court denied in part and granted in part Defendants' motion to dismiss the Complaint. ECF No. 103. The Court sustained core aspects of Lead Plaintiffs' claims under Sections 11 and 15 of the Securities Act and Section 14(a) of the Exchange Act. In particular, the Court held that the Complaint sufficiently alleged that the Proxy/Registration Statement contained four material misstatements and omissions concerning Grab's incentive spend strategy and driver supply. *See id.* at 28-49. The Court also dismissed claims related to certain other statements in the Proxy/Registration Statement, including claims arising under Item 303 of Regulation S-K, and dismissed Lead Plaintiffs' claims under Section 10(b) of the Exchange Act. *Id.* at 50-53.

After this ruling, the Parties proceeded to discovery. Lead Plaintiffs zealously litigated this case until the time an agreement in principle was reached.

### III.    THE SETTLEMENT

On July 30, 2024, the Parties participated in a full-day mediation session conducted by David M. Murphy, a mediator with Phillips ADR Enterprises with experience mediating settlements in securities class actions. This mediation was unsuccessful, however, Lead Plaintiffs and Defendants continued to negotiate a possible settlement through Mr. Murphy and upon his recommendation, the Parties agreed to participate in a second mediation via Zoom. The Parties then participated in another mediation before Mr. Murphy on October 16, 2024. While the Parties did not reach an agreement during the second mediation, the Parties continued to negotiate a

possible settlement through Mr. Murphy. On October 23, 2024, Mr. Murphy issued a double-blind

mediator's recommendation to resolve the claims in the Action for $80 million, which all Parties

subsequently accepted. On November 1, 2024, the Parties notified the Court that they had agreed

in principle to resolve all issues and claims in the Action and requested a stay of all deadlines.

The Parties thereafter negotiated and executed a Term Sheet on November 22, 2024, and

finalized the terms of the Stipulation on December 30, 2024. The Settlement Class, as defined in

the Stipulation, consists of:

> All persons or entities who: (i) purchased or otherwise acquired public shares in
> Grab (including by way of exchange of Altimeter Growth Corp. ("AGC") shares)
> pursuant to or traceable to the proxy/registration statement that Grab filed with the
> SEC on Form F-4 on August 2, 2021, and that was thereafter amended on Forms
> F-4/A on September 13, 2021, October 18, 2021, November 12, 2021, November
> 17, 2021, and November 19, 2021, and incorporated into the final prospectus on
> Form 424(b)(3) filed on November 19, 2021, as amended (the "Proxy/Registration
> Statement"); (ii) who exchanged AGC shares for Grab Class A Ordinary Shares
> rather than redeeming the same pursuant to the Proxy/Registration Statement; or
> (iii) purchased or otherwise acquired public Grab Class A Ordinary Shares or other
> public Grab or AGC securities between August 2, 2021 and March 3, 2022, both
> dates inclusive.

*See* Stipulation ¶1.34. Excluded from the Settlement Class are: Defendants and their immediate

families; current and former directors or officers of Grab or AGC; claims relating to the purchase

or acquisition of Grab shares subject to a Lock-up Agreement referenced in the Proxy/Registration

Statement; and all putative members of the Settlement Class who exclude themselves by filing a

valid and timely request for exclusion. Further, and as detailed in the Stipulation, the Settlement

Class definition is intended to encompass claims of public AGC shareholders who purchased or

otherwise acquired public Grab Class A Ordinary Shares as well as claims relating to the

approximately 20.97% of Grab Class A Ordinary Shares that were not subject to a Lock-up

Agreement and became freely transferable on December 2, 2021, but is not intended to encompass

claims of the PIPE Investors in their capacity as such or claims related to Grab shares acquired

4

through the exchange of Sponsor shares.

Under the Stipulation's terms, Grab will pay or cause to be paid $80,000,000.00 in cash into an Escrow Account maintained by the Escrow Agent on behalf of Lead Plaintiffs and the Settlement Class within 25 business days after the Court enters an order granting preliminary approval of the Settlement (together with all interest earned thereon, the "Settlement Fund"). The Settlement Fund shall be used to first pay the following: Taxes, Notice and Administration Expenses, attorneys' fees and expenses awarded by the Court, an award to Lead Plaintiffs, and any other fees and expenses awarded by the Court. *See* Stipulation ¶4.1. The remaining Net Settlement Fund shall be paid to Authorized Claimants on a *pro rata* basis as set forth in the Notice and the proposed Plan of Allocation contained therein. In exchange for the consideration above, the Settlement provides that Lead Plaintiffs and Settlement Class Members release known and unknown claims against Defendants arising from their Settlement Class Period purchases or acquisition of Grab or AGC securities and the facts alleged in the Action. *See* Stipulation ¶1.31.

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Courts approve class action settlements that are determined to be "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-07251 (AS) (KHP), 2024 WL 5118192, at *4 (S.D.N.Y. Dec. 13, 2024); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018).[2] The Second Circuit recognizes the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). "Review of a proposed class action

---

[2] Unless otherwise noted, all emphases are added and internal citations are omitted throughout.

5

settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties[] show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those typically considered in this Circuit as articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Additionally, the Settlement Class meets the standards for certification for purposes of effectuating the Settlement.

### A. The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell*

The Settlement is beneficial to the Settlement Class, and easily satisfies both the factors articulated in the recent amendments to Rule 23(e)(2) and in *Grinnell*. Under the recent amendments to Rule 23(e)(2), courts assessing approval are to consider whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

(i) The costs, risks, and delay of trial and appeal;

(ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) The terms of any proposed award of attorney's fees, including timing of payment; and

(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The "rule now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023). These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Antitr. Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also N.Y. Times Co.*, 79 F.4th at 243 (noting that the *Grinnell* factors "remain a useful framework for considering the substantive fairness of a settlement"). Courts in the Second Circuit have long considered the following factors, set forth in *Grinnell*, to evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (citing *Grinnell*, 495 F.2d at 463). However, courts should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *See Payment Card*, 330 F.R.D. at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—may be premature at this stage. *Id.*

### 1.  The Settlement Is an Excellent Result for the Settlement Class

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a

settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $80,000,000 for the benefit of the Settlement Class. This is an excellent result given the significant risks of continued litigation. Moreover, after consultation with experts on damages and taking into account Defendants' negative causation defenses, Lead Plaintiffs believe that the maximum damages that the Settlement Class could recover for the Section 11 claims are between $599 million and $898 million, after accounting for negative causation. Class-wide damages under Lead Plaintiffs' Section 14(a) claims are approximately $177.49 million, but entirely overlap with the Section 11 damages. The $80 million Settlement thus represents a recovery between 8.9% and 13.4% of the maximum likely recoverable damages if Plaintiffs prevailed at trial, well above the range of the average recovery in shareholder litigation. *P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, No. 15 Civ. 1938 (DAB), 2018 WL 889472, at *3 (S.D.N.Y. Feb. 1, 2018) (granting final approval of settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and $19.64 million); *see also In re Frontier Comm's Corp.,* No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *14 (D. Conn. May 20, 2022) (approving 7% of estimated maximum recoverable damages); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (finding that recovery in the double digits as a percentage of total damages "far surpasses the 'average settlement amounts in securities fraud class actions . . . [of]

8

3% to 7% of the class members' estimated losses.'"); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (granting preliminary approval of settlement representing approximately 8% of maximum recoverable damages); *In re XL Fleet Corp. Sec. Litig.*, Docket No. 1:21-cv-02002, ECF No. 191 (S.D.N.Y Jan. 18, 2024) (granting preliminary approval in securities class action in which estimated damages ranged from 3.9 to 7.8% of potential maximum recovery); *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at \*12 & n.11 (E.D.N.Y. Jan. 4, 2024) (approving settlement amount of $4 million, representing approximately 1% of maximum recoverable damages of $414.1 million); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2023 WL 5511513, at \*10-11 & n.11 (E.D.N.Y. Aug. 24, 2023) (finding a recovery of 2.3% of maximum potential damages to be adequate relief).[3]

The percentage recovery here also exceeds the 1.8% median settlement value in 2023 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review at p. 26 (Jan. 23, 2024) ("Securities Settlements Report").[4]

### a. The costs, risks and delay of trial and appeal support approval

The Settlement's $80 million recovery is particularly favorable when considered against the risks of continued litigation. Securities class actions are "notably complex, lengthy, and expensive cases to litigate." *In re PAR Pharm. Sec. Litig.*, Civil Action No. 06-3226 (ES), 2013 WL 3930091, at \*10 (D.N.J. July 29, 2013). "To be successful, a securities class-action plaintiff

---

[3] No damages would be available at trial for the Section 10(b) claims which were dismissed and not repleaded. However, because the release encompasses any remaining appellate or other interest for the Settlement Class, the proposed Plan of Allocation provides a nominal $0.10 per share for such claims.

[4] *Available at*: https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html?lang=en

must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J, sitting by designation).

This case is more complex than most, involving a SPAC transaction and operations in numerous foreign countries, which requires significant costs, delay and uncertainties in obtaining discovery necessary to prove Lead Plaintiffs' claims at trial. Defendants have vigorously argued that the Proxy/Registration Statement at issue contained no misrepresentations, that no losses could accrue as a result of the disclosures on March 3, 2022, and have contested causation and traceability. Lead Plaintiffs' claims would be subject to complex expert testimony, offered by Defendants' experts, that would likely conflict with Lead Plaintiffs' experts' analyses. The opinions of each side's experts can vary substantially, and continued litigation poses the risks that Defendants would prevail in a "battle of the experts." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).

"As with any securities litigation case, it would be difficult for Lead Plaintiff[s] to prove loss causation and damages at trial…. Lead Plaintiff[s] would risk recovering nothing without a settlement." *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015). Section 11 claims would also require tracing transactions to the Proxy/Registration Statement, often a difficult task. *See In re Puda Coal Sec. Inc. Litig.*, No. 11 Civ. 2598 (KBF), 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

Moreover, prevailing at summary judgment and trial would not necessarily result in a larger recovery. The jury could award a smaller amount of damages, or the verdict could be appealed.

*See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of almost $81.4 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994).

Continued litigation would also involve risks relating to class certification. Presently, no class has been certified for litigation purposes. Risks related to class certification "militate[] in favor of settlement approval." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012). Moreover, even if a litigation class were certified, risks to maintaining certification would persist; Defendants could move for modification or decertification at any time prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Goldman Sachs Grp., Inc.* v. *Ark. Teacher Ret. Sys.*, 594 U.S. 113, 121 (2021) (*citing* Fed. R. Civ. P. 23(f)).

Therefore, continued litigation, in addition to being highly uncertain, would be costly and take years to complete. In contrast, the Settlement Amount provides an immediate and substantial recovery for the Settlement Class. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d at 414 (admonishing that in securities fraud cases, "the risk of a zero- or minimal–recovery scenario are real.").

### b. Other 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R.

11

Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, the Settlement calls for an experienced Claims Administrator to process claims and equitably distribute the Net Settlement Fund on a *pro rata* basis to Settlement Class Members who file valid claims, based on each Member's Recognized Loss. These procedures are well-established and proven effective in securities fraud litigation. A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator selected by Co-Lead Counsel (subject to Court approval), will process claims under Co-Lead Counsel's guidance, and provide Settlement Class Members with reasonable opportunity to cure deficiencies in their claims. Thereafter, A.B. Data will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Co-Lead Counsel will then move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[5]

Second, as disclosed in the Notice, Co-Lead Counsel, who have not been paid to date, will apply for a fee award not to exceed one-third of the Settlement Amount, plus any interest on that portion that has accrued while in the Escrow Account. The requested fee is reasonable for the work performed and the results obtained, and consistent with awards in similar complex class action cases. *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059 (KAM) (SJB), 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (approving "an award of attorneys' fees in the amount of one third or 33 1/3% of the" settlement amount and noting "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable"); *In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-cv-2548, 2019 WL 4734396, at *1, *6 (S.D.N.Y. Sept.

---

[5] This is not a claims-made settlement. If the Settlement is approved, Defendants have no right to recoup a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

23, 2019) (awarding one-third of a $75 million settlement); *In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*, No. 17-cv-1580, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (awarding 33-1/3% of $44 million settlement). Further, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶5.7.

Third, to protect the Settlement and the Settlement Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion into a separate confidential agreement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia Co.*, 2019 WL 5257534, at *15.

### 2. The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 3. The Settlement Class Was Well-Represented by Lead Plaintiffs and Co-Lead Counsel

Lead Plaintiffs and Co-Lead Counsel more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart*, 396 F.3d at 106-07. Here, Lead Plaintiffs' interests (and

13

those of Co-Lead Counsel) were always aligned with the interests of absent Settlement Class Members. All brought the exact same claims asserting the same legal theory over the same Class Period. And, because Lead Plaintiffs, Co-Lead Counsel, and the Settlement Class Members all "share the common goal of maximizing recovery, there is no conflict of interest." *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006); *see also Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60 (2013).

Lead Plaintiffs and Co-Lead Counsel vigorously litigated this case since their appointment on June 7, 2022. Lead Plaintiffs have significantly contributed to the Action by overseeing the litigation and participating in settlement discussions with Co-Lead Counsel. Lead Plaintiffs and Co-Lead Counsel substantially advanced this Action and benefitted the Settlement Class by conducting a thorough pre-filing investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action, which included reviewing and analyzing: (i) Grab's and AGC's public filings with the SEC; (ii) publicly available information, including press releases, news articles, interviews, conference calls, and other public statements issued by or concerning the Company and/or Defendants; (iii) information obtained from interviews with knowledgeable individuals; (iv) reports of securities and financial analysts about Grab, and other commentary and analysis concerning Grab and the industry in which it operates; and (v) the applicable law governing the claims and potential defenses. Lead Plaintiffs also consulted with experts in connection with their investigation.

Because of their thorough investigation, Lead Plaintiffs were able to substantially expand the claims brought in the operative Complaint, adding lucrative causes of action under Sections 11 and 15 of the Securities Act and Section 14(a) of the Exchange Act. They were also able to add extensive factual detail permitting those claims to largely survive Defendants' motion to dismiss.

14

Lead Plaintiffs and Co-Lead Counsel also advanced this case after the pleading stage by conducting widespread discovery, which included (i) exchanging initial disclosures; (ii) exchanging and responding to Party requests for the production of documents; (iii) serving eight subpoenas on relevant third parties and negotiating document productions therefrom; (iv) negotiating an ESI and search protocol with Defendants, pursuant to which Defendants and third parties produced nearly 300,000 pages of documents that Co-Lead Counsel reviewed and analyzed; (v) producing more than 900 pages of documents from Lead Plaintiffs; and (vi) causing to be issued letters rogatory commanding production of information in certain foreign countries. Finally, Lead Plaintiffs and Co-Lead Counsel zealously fought for the Settlement Class's interests at mediation, including drafting two detailed mediation statements, engaging in two separate mediation sessions overseen by Mr. Murphy that ultimately resulted in the Settlement, and negotiating the terms of the Settlement, including the Stipulation and exhibits thereto. Thus, Lead Plaintiffs and Co-Lead Counsel readily satisfy Rule 23(e)(2)(A)'s adequate representation requirement.

### 4. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To that end, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Settlement was the result of a mediator's proposal after vigorous negotiation and two separate mediation sessions, which weighs in favor of preliminary approval. The parties engaged in two mediation sessions with David Murphy, a mediator with experience in securities class actions. As another court recently noted, Mr. Murphy has "experience in securities class actions," and his involvement as

15

mediator "demonstrates that these negotiations were conducted at arm's length." *Del. Cty. Emps. Ret. Sys. v. AdaptHealth Corp.*, No. 21-3382, 2024 WL 3360661, at *3 (E.D. Pa. July 10, 2024); *see also Wojcik v. Omega Healthcare Inv'rs, Inc.*, No. JKB-20-3491, 2024 WL 3743081, at *4 (D. Md. Aug. 8, 2024) (Mr. Murphy's involvement as an experienced, neutral mediator "weigh[ed] in favor of settlement approval").[6]

### B.  The Remaining *Grinnell* Factors Support Approval

The additional factors articulated in *Grinnell* but not expressly listed in Rule 23(e)(2) include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. Here, all applicable factors support approval. However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotations omitted).

*Stage of proceedings and amount of discovery*: Lead Plaintiffs and Co-Lead Counsel undertook extensive discovery and investigation, and are therefore well equipped to evaluate the Settlement and the strengths and weaknesses of their claims. They conducted an extensive investigation, thoroughly assessed the merits of their claims, successfully defeated Defendants' attempt to have this Action dismissed, developed new theories of recovery under Section 11 of the

---

[6] Lead Plaintiffs note that while the arm's length nature of the negotiations here weighs in favor of preliminary approval, they are not requesting that the Court apply any presumption of fairness because of these arm's length negotiations. *See N.Y. Times Co.*, 79 F.4th at 243 ("We agree, and conclude that Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length.").

Securities Act and Section 14(a) of the Exchange Act, consulted with world-class experts on damages, thoroughly reviewed Grab's and AGC's public filings and other publicly-available information, prosecuted multiple letters rogatory seeking third-party discovery in foreign countries, prepared mediation papers and participated in two contested mediations, and evaluated class certification. Thus, Lead Plaintiffs and Co-Lead Counsel were well-informed to assess the Settlement. *See In re Tenaris S.A. Sec. Litig*., 2024 WL 1719632, at \*7 (extensive written discovery weighed in favor of settlement).

*The Settlement is well within the range of reasonableness*:  The Settlement is not only within, but in the upper end of, the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. at 762. Here, the $80 million recovery is favorable even before considering potential impediments to continued litigation of the Action, *see* Section IV.A.1, *supra*, and is especially good after considering such risks, *see* Section IV.A.1.a., *supra*.

*Ability to withstand a higher judgment*: Although Defendants could likely withstand a greater judgment, "[their] ability to do so, 'standing alone, does not suggest that the settlement is unfair.'" *Davenport v. Elite Model Mgmt. Corp*., No. 1:13-CV-01061-AJN, 2014 WL 12756756, at \*7 (S.D.N.Y. May 12, 2014) (quoting *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Further, enforcing a judgment after a verdict could prove difficult and expensive, considering that many of the Defendants reside outside the United States. Thus, this factor is "neutral and does not preclude the Court from granting final approval." *Id.* at \*7.

Because these factors, as well as the *Grinnell* factors that overlap Rule 23(e), heavily support the Settlement, the Court should grant preliminary approval. *See Davenport*, 2014 WL

17

12756756, at *8.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Because this Action was settled before a motion for class certification, Lead Plaintiffs also seek certification of a Settlement Class. The Second Circuit has long acknowledged that courts may properly certify a class to effectuate a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig*., 283 F.R.D. at 186.

As demonstrated below, since the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3) for the purposes of this Settlement, "certification may be granted." *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

### A.  The Settlement Class Satisfies the Requirements of Rule 23(a)

### 1. Numerosity

The Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig*., 260 F.R.D. 81, 90 (S.D.N.Y. 2009). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig*., 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, according to a Form F-1/A filed by Grab on May 20, 2022, Grab had more than 3.7 billion outstanding Class A

Ordinary Shares as of March 31, 2022.[7] *See* SEC Form F-1/A at 8 (May 20, 2022); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period") (citation omitted). Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud cases like this easily satisfy commonality, because all "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).

Here, common issues include: whether there were any misrepresentations or omissions in the Proxy/Registration Statement, whether any such misrepresentations or omissions were material, and whether losses were caused by Defendants' misstatements. These questions are susceptible to common proof at trial because their resolution does not differ based on the identity of the plaintiff. *Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*, 338 F.R.D. 205, 214-15 (S.D.N.Y. 2021). Thus, commonality is met.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). But "'[t]ypical' does not mean

---

[7] *Available at*: https://d18rn0p25nwr6d.cloudfront.net/CIK-0001855612/fb540a80-54e9-4d27-8a23-38e957671ef7.pdf

'identical.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at \*10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class assert a common course of conduct by Defendants. "Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.* at \*10.

Here, Lead Plaintiffs' claims and those of the proposed Settlement Class are based on the exact same misrepresentations and omissions that Defendants made to the investing public during the Settlement Class Period, as well as the Individual Defendants' control of Grab. Thus, any Settlement Class Member's claim will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### 4. Adequacy

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is measured by two standards: (i) whether the claims of the proposed class representative conflicts with those of the class; and (ii) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Both prongs are met here. As explained in IV.A.3, *supra*, Lead Plaintiffs and Co-Lead Counsel have more than adequately advanced class interests. There are no conflicts of interest and Co-Lead Counsel are qualified, experienced, and able to conduct the litigation. *See* ECF Nos. 22-5, 31-5. Accordingly, Rule 23(a)(4) is satisfied.

20

### B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

### 1. Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instruments, Inc.*, *Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions." *Marsh & McLennan*, 2009 WL 5178546, at *11. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "questions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary." *Veeco*, 235 F.R.D. at 240. Because this is a Settlement Class, "concerns about whether individual issues [like reliance] would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quoting *Amchem*, 521 U.S. at 620, and vacating denial of class certification in a preliminary approval decision).

21

**2. A Class Action is Superior to Other Methods of Adjudication**

Class adjudication is superior to other methods. *See* Fed. R. Civ. P. 23(b)(3). Lead Plaintiffs are aware of no other individual action that would be impacted by the Settlement, or any anticipated action by any Settlement Class Member. Moreover, since Lead Plaintiffs request certification for settlement purposes only, there will be no trial management problems. *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) for the purpose of Settlement and should be preliminarily certified. *See id.*

**C.  Co-Lead Counsel Should be Appointed as Settlement Class Counsel**

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). After being appointed Co-Lead Counsel, *see* ECF No. 38, Pomerantz LLP and Levi & Korsinsky, LLP have substantially advanced the interests of the Settlement Class, as described above in Sections IV.A.3 and IV.B. As set forth in the firm resumes, ECF Nos. 22-5 and 31-5, Co-Lead Counsel are highly experienced, nationally-recognized litigators specializing in complex securities fraud actions. They have spent thousands of hours prosecuting this Action, and expended considerable financial resources to advance expenses, all without any assurance that they would receive any payment. The Settlement itself is a testament to their advancement of the Action—it would not have occurred had Co-Lead Counsel not thoroughly investigated claims, drafted a viable Complaint, or prevailed on the core claims over Defendants' motion to dismiss. Accordingly, there can be no question that Co-Lead Counsel is adequate.

**VI.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED**

The proposed Plan of Allocation, which is detailed in the Notice to be sent to the Settlement Class Members, will govern how the Settlement proceeds and will be distributed among Settlement

Class Members who timely file a valid Claim Form. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co*., 2019 WL 5257534, at \*15. The proposed Plan of Allocation was prepared by Co-Lead Counsel after consulting with experts and A.B. Data. The Plan rationally reflects the allegations and causes of action asserted in this case. It will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims, as all Settlement Class Members are treated fairly under the Plan. Each will receive no more, or less, than his, her, or its *pro rata* share of the Net Settlement Fund based on recognized losses assessed by the formulas described in the Notice.

## VII.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of Plaintiffs' recovery. *In re Take Two Interactive Sec. Litig*., No. 06 Civ. 803 (RJS), 2010 WL 11613684, at \*13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). The notice must "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Solutions, Inc*., 923 F.3d 85, 95 (2d Cir. 2019).

Lead Plaintiffs' proposed Notice, Postcard Notice, and Summary Notice (attached as Exhibits A-1, A-3, and A-4 respectively to the Stipulation), contain all required information. As specified by Rule 23(c)(3) and 15 U.S.C. §78u-4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the prospective Settlement Class and who is excluded; (3) the reasons the

Parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the Settlement Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Co-Lead Counsel may seek; (8) the maximum amount Co-Lead Counsel will request as a reimbursement award to Lead Plaintiffs; and (9) the plan for allocating the Settlement proceeds to the Settlement Class. *See* Stipulation Exhibit A-1. The Notice also describes the process for seeking exclusion from the Settlement Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.* Finally, the Notice provides the information described in Local Civil Rule 23.1.

Plaintiffs' proposed methods for disseminating notice to the Settlement Class—mail, publication and website—satisfy all applicable standards. The proposed Preliminary Approval Order directs that the Claims Administrator to disseminate Notice to all Settlement Class Members who can be reasonably identified via: (1) direct notice to all Settlement Class Members who hold (or held) their eligible securities directly and are listed in the records of Grab's transfer agent with respect to such holdings, (2) publishing the Summary Notice in a minimum of two widely circulated national wire services to target other Settlement Class Members, and (3) a universally accessible Settlement website. *See* Stipulation Exhibit A.

A.B. Data will mail or email Postcard Notice to all potential Settlement Class Members who can be identified via transfer records, brokers and nominees. The Postcard Notice provides general information regarding the Settlement, Settlement Hearing, and Settlement Class Members' rights in connection with it, and directs recipients to the Settlement website for the full Notice. The Proof of Claim Form and all other Settlement-related documents will also be posted on the Settlement website. *See* Stipulation ¶¶1.19, 1.29; *see also Edwards v. N. Am. Power & Gas, LLC*,

24

No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving mailed notice directing class members to website).

Additionally, for those Settlement Class Members whose information is not available through Grab's transfer agent or through reasonable investigation, the Summary Notice will be published over a minimum of two similarly widely circulated national wire services. *See* Stipulation Exhibit A ¶9(b). The newswire releases will also assist with driving search engine results, which will help increase traffic to the Settlement website. A.B. Data will also provide a telephone hotline for inquiries, and both A.B. Data and Co-Lead Counsel provide contact information for Settlement Class Members seeking further information.

This comprehensive Plan of Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950); *see also In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *14 (approving emailing postcard notice, and mailing where no email address is available, and similar proposed notice program including website); *In re AppHarvest Sec. Litig*., No. 1:21-cv-07985-LJL, 2024 WL 967258, at *3 (S.D.N.Y. Mar. 6, 2024) (same). This Court can thus exercise its "considerable discretion" to approve the method of providing the Notice as proposed by Lead Plaintiffs. *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118, 123 (S.D.N.Y. 2001); *see also In re "Agent Orange" Prod. Liab. Litig*., 818 F.2d at 169 (district court's determination with respect to reasonableness of efforts to identify class members "must be accepted unless clearly erroneous").

## VIII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Settlement Hearing

is scheduled. To allow sufficient time for the Notice to be disseminated to the potential Settlement Class Members, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Date to mail or email Postcard and publish Notice on Settlement website "Notice Date" | 15 business days after the Court's entry of Preliminary Approval Order |
| Publish Summary Notice over two national wire services | 10 calendar days after Notice Date |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application, (Preliminary Approval Order ¶20) | 35 calendar days before the Settlement Hearing |
| Deadline for receipts of exclusion requests or objections (Preliminary Approval Order, ¶13) and Deadline for postmarking or electronically submitting Claim Forms (Preliminary Approval Order, ¶11(a)) | 21 calendar days before the Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order ¶20) | 7 days before the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶5) | To be determined by the Court, but not earlier than 100 days after the entry of the Preliminary Approval Order |

## IX.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement, (2) certify the Settlement Class for purposes of effectuating the Settlement, (3) approve the Plan of Allocation, (4) approve the proposed form and manner of Notice, and (5) schedule a Settlement Hearing.

Dated: January 2, 2025          Respectfully submitted,

**POMERANTZ LLP**

*/s/ Brian P. O'Connell*
Joshua B. Silverman
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

and

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins
Gregory M. Potrepka
Morgan M. Embleton (*pro hac vice*)
1111Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165

27

Tel.: (212) 697-6484
Fax: (212) 697-7296
eitank@bandg.com

*Additional Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2025 I served a copy of the foregoing to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on January 2, 2025.


/s/ *Brian P. O'Connell*
Brian P. O'Connell