P1dWgraC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re GRAB HOLDINGS LIMITED                22 Civ. 2189 (JLR)
SECURITIES LITIGATION

                                           Conference
------------------------------x

                                           New York, N.Y.
                                           January 13, 2025
                                           11:00 a.m.

Before:

                    HON. JENNIFER L. ROCHON,

                                           District Judge

                          APPEARANCES

LEVI & KORSINSKY, LLP
     Attorneys for Plaintiffs
BY:  GREGORY M. POTREPKA
     SHANNON L. HOPKINS
     -and-
POMERANTZ LLP
     Attorney for Plaintiff
BY:  BRIAN P. O'CONNELL
     JOSHUA B. SILVERMAN

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     Attorneys for Defendants Grab
BY:  SUSAN L. SALTZSTEIN
     LARA A. FLATH
     JEFFREY S. GEIER

ROPES & GRAY LLP
     Attorneys for Defendants
     Gerstner, Siam, Barton, Dozie
     and Ittycheria
BY:  ELANA STERN

P1dWgraC

(Case called; appearances noted)

THE COURT:  Good morning, everyone.  Pleasure seeing you back here.

I see that we have a potential settlement here. Compromise is always good and bad, but hopefully this is more on the side of good.  We're here for preliminary approval of the settlement before we proceed on to approval.  I have just a few questions, but I'm happy to hear from plaintiffs about anything they'd like to add to their papers that have been submitted here.

Mr. Potrepka.

MR. POTREPKA:  Yes, your Honor.

We, you know, believe our papers were thorough, and hopefully we addressed most of the Court's questions.  We're happy to start with the questions if that would be preferable to the Court.

THE COURT:  Sure.

Let me also give a compliment to the parties here. Generally speaking, I have had to bring people in to make sure that they address the Second Circuit's decision in *Moses* and not apply a presumption and other things that the Second Circuit advised us against, but you wonderfully have addressed that in your initial papers and not applied a presumption, so kudos to you.

One of the questions I had was the administrative

P1dWgraC

fees; my understanding is that this was a $80 million settlement fund, that it represents a recovery of between 8.9 percent and 13.4 percent of the maximum likely recoverable damages.

Is that correct, Mr. Potrepka?

MR. POTREPKA:  That's correct, your Honor.

THE COURT:  OK.  And then we've got a plan of allocation, and we're also, and the attorneys' fees here are proposed to be a third of the settlement fund.  I also see that we're going to, you're going to request an award of 15,000 for each of the three lead plaintiffs.  And then I see that there will be administrative fees, as there always are, and I see in there that it's estimated at 0.03 cents per postcard.  But what's your overall estimate of the cost for administrative fees here?

MR. POTREPKA:  Yes, your Honor.

And so in the -- actually, in the stipulation and in the preliminary approval order, this is the stipulation at paragraph 6.2, and paragraph 19 of the preliminary approval order, we have requested the Court's permission to authorize up to $300,000 without further leave of the Court or notice to defendants.  Your Honor, there, it was a lot of uncertainty as to what a, you know, a firm number would be for total administrative costs.  This was our best guess at this point, you know, to get through the claims administration process and

P1dWgraC

up to distribution.  This was a case obviously with 700 and --
over 750 million damaged shares and the amount of, you know,
mailings that can happen in any particular case, which eats up
a lot of that notice, administrative cost changes, you know.
Sometimes brokers are willing to give email addresses, in which
case it will be cheaper for us to administer and notify the
class because we can use the emails to send copies of the
postcard and a link to the notice and the settlement website
ourselves.  Sometimes, you know, we do have to use the postal
service, and so we thought that this was a way to, you know,
just have a good starting point, and of course, if the Court
preliminarily approves the settlement, the preliminary approval
order and the stipulation will both be on the settlement
website, which class members will be able to see and be
notified of.

THE COURT:  Thank you for pointing that out.  I wanted
to see that number.

Does the notice that's sent to the class members,
maybe not the postcard because that's a bit smaller, but the
notice, does that include the administrative fees estimate?

MR. POTREPKA:  It does not, but we'd be happy to, you
know, add that to the long-form notice.

THE COURT:  I would like you to add that, please,
because it already has the settlement amount.  I believe it has
attorneys' fees of a third.

P1dWgraC

MR. POTREPKA:  That's correct, your Honor.

THE COURT:  And it also has the 15,000 for the lead plaintiffs.

MR. POTREPKA:  Correct, your Honor.

THE COURT:  And that's the only thing that's missing. Yes, if you could add that, that would be great.  I think it also has reimbursement of expenses up to 400,000.

MR. POTREPKA:  Yes, your Honor.

THE COURT:  And those expenses are different than the administrative expenses of up to 300,000.

MR. POTREPKA:  Correct.  So, the up to 300,000 is the notice cost.

THE COURT:  Right.

MR. POTREPKA:  The litigation expenses are counsels' expenses incurred in the settlement and throughout the case.

THE COURT:  Understood.  Yes, of course.

OK.  And if I were to put down a final approval hearing date for May 15 at 11 a.m., would that give you enough time?  I think it's a little bit longer than the hundred days.

MR. POTREPKA:  Yeah, that works for plaintiffs, your Honor.

THE COURT:  OK.  Finally, can you just tell me a little bit about the negotiations that went into resolving this matter.  I don't need to know the confidential machinations there, but just talk to me a little bit about how I can be

P1dWgraC

comfortable that this is result of arm's-length negotiations and this is, in fact, the best deal you could get for your shareholders.

MR. POTREPKA:  Yes, absolutely, your Honor.

So, the negotiations for this matter were extensive. After, you know, the Court denied the motion to dismiss, the parties took up settlement discussions.  That involved two full-day mediations.  One was in person, attended by counsel for all the Grab defendants as well as all the Altimeter defendants, before a very experienced, you know, mediator with Phillips ADR, which is a firm that has a lot of experience resolving this type of securities class action.

In advance of the, both mediations, the parties exchanged voluminous mediation statements, exhibits.  The mediation statements and arguments that counsel exchanged with each other, you know, really attacked all substantive and procedural areas that might occur throughout the life of this case, you know, from liability to causation to damages to class certification to trial risks to -- you name it, your Honor, it was in our mediation statements.

The first mediation, although, you know, vigorously represented by co-lead counsel and counsel for the defendants, did not resolve in a settlement.  The parties did not, you know, end there, though.  We kept trying to see if this matter could be resolved.  We, you know, were facilitated in that

P1dWgraC

regard with the ongoing discussions with Mr. Murphy and in -- in, you know, that regard we took up the second mediation.

Again, we were not successful after the second mediation, but with continued discussions with Mr. Murphy, ultimately the settlement was the product of his double-blind mediator's recommendation, which is, you know, recognized as a hallmark of procedural fairness and that these negotiations really were at arm's length.

THE COURT:  And after taking out of this fund -- thank you for that -- taking out of the fund the attorneys' fees, the expenses, the administrative costs, the payments for the lead plaintiffs, and given the number of potential plaintiffs we have here, do you have a ballpark as to what you believe the plaintiffs will be recovering?

I think it's in your papers, but I want to understand a little bit more about it, and I also do see that there's an attempt even to give the 0.10 dollar per share for the Section 10(b) claims.  So it does seem to try to address everything here, but tell me a little bit about what the parties can, what the plaintiffs can expect to receive.

MR. POTREPKA:  Yes, your Honor.

So, as you mentioned, the figure in our notice, which, again, will be provided to class members through the settlement website, and that figure is the .10 -- about 10 cents per damaged share.

P1dWgraC

THE COURT:  OK.

MR. POTREPKA:  That takes into account, you know, what would be available after, as your Honor's mentioned, taking out fees, expenses, and it's just an estimate, your Honor, because in every case the number of class members who submit claims varies.  The amount of settlement interest can change, and this is a significant size settlement, your Honor, so we do expect, you know, an amount of interest there that will make that number fluctuate.  But this our best estimate, using the calculations that our financial experts have provided us to provide the Court and class members with a sense of, you know, what would be recovered if they submit a claim.

Your Honor also mentioned -- forgive me.  You also mentioned a separate figure, I believe.

THE COURT:  Well, I was commenting that even though the Section 10(b) claims were dismissed, there appears to be an effort to provide some compensation there notwithstanding that.

MR. POTREPKA:  Yes, your Honor.  Thank you.

Within this case, your Honor has dismissed the 10(b) claims at the motion to dismiss.  That said, there are, you know, contingent appellate rights that class members would have if this case were to run the gauntlet of getting through trial, going up to appeal and, you know, we believe that your Honor had a sensible opinion.  But if your Honor was reversed, there is some value to that.  We tried to give that nominal amount,

P1dWgraC

the 10 cents per share, reflecting the realities of the risks of litigation in this case, while also, you know, trying to be inclusive of 10(b) class members who have that contingent risk and share.

THE COURT:  Thank you.

OK.  I think that covers my questions.

Ms. Saltzstein, can I have your view on the settlement.

MS. SALTZSTEIN:  Sure, your Honor.

I don't think I have much to add.  This was a vigorously negotiated process, supervised and mediated by an experienced mediator and, as already discussed by plaintiff's counsel, resulted in a double-blind suggested amount, and so I don't think I have much to add other than what was said already.

THE COURT:  OK.  Good.  Thank you.

MS. SALTZSTEIN:  Thank you, your Honor.

THE COURT:  Thank you.

And I will be receiving as part of the final settlement papers your attorneys' fee application as well, correct?

MR. POTREPKA:  That's correct, your Honor.

THE COURT:  OK.  And I will also note that I saw firsthand the intense litigation that the parties put into this and the very good papers that were prepared early on in this

P1dWgraC

case.  So I am sure that that deserves compensation.

All right.  I think that covers all of my questions.
I will enter the preliminary approval order.  I will set down a
hearing for May 15 at 11 a.m.

I suppose you probably don't have any indication or
view as to whether you're going to get objectors or people
excluded.  Do you have any view at all on that?  Have you heard
any rumblings?

MR. POTREPKA:  We do not have any indication at this
time, your Honor.

THE COURT:  OK.  That's fine.  Good.  Well, we'll
handle them should they come in.

OK.  Good.  Is there anything else then?  I will put
out the order today.

Is there anything else, Mr. Potrepka, that we should
talk about?

MR. POTREPKA:  No, I don't believe so.

THE COURT:  Thank you.

MR. POTREPKA:  Thank you very much.

THE COURT:  Anything else from defendants?

MS. SALTZSTEIN:  No, your Honor.  Thank you.

THE COURT:  Anything from Ropes & Gray?

MS. STERN:  No, your Honor.  Thank you.

THE COURT:  OK.  Good.

All right.  Well, thank you all very much.  Your

P1dWgraC

papers -- again, thank you for addressing *Moses* -- were very good, and I look forward to receiving the final approval papers.  And I think that takes care of us today.

Court is adjourned for the day.  Thank you.

(Adjourned)