UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE GRAB HOLDINGS LIMITED
SECURITIES LITIGATION

Case No. 1:22-cv-02189-JLR

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION.............................4

ARGUMENT .....................................................................................................................4

    I.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ...............4

          A.      Rule 23(e)(2)(A): Lead Plaintiffs and Co-Lead Counsel Have
                Adequately Represented the Settlement Class...............................................6

          B.      Rule 23(e)(2)(B): The Settlement Was Reached After Arm's-Length
                Negotiations with the Assistance of an Experienced Mediator ....................7

          C.      Rule 23(e)(2)(C): The Settlement Relief Is Adequate, Considering
                the Costs, Risks and Delays of Further Litigation and Other
                Relevant Factors (*Grinnell* Factors 1, 4, 5-6, 8-9).....................................9

               1.      The Complexity, Expense, and Duration of Litigation...................9

               2.      The Risks of Establishing Liability and Damages........................10

                3.      The Settlement Represents a Substantial Percentage of
                      Likely Recoverable Damages Especially in Light of the
                      Risks of Litigation.......................................................................13

          D.      The Remaining Rule 23(e)(2)(C) Factors Support Approval.....................14

          E.      Rule 23(e)(2)(D): The Settlement Treats All Members of the
                Settlement Class Equitably Relative to Each Other...................................16

           F.      The Remaining *Grinnell* Factors (2, 3 and 7) Are Neutral or Weigh
                in Favor of Final Approval .......................................................................16

    II.     THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED .......................19

    III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE........................20

    IV.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .........23

    V.    CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ............................................................................................ 7

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ................................................................................. 6

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
  2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ................................................... 15

*Beckman v. KeyBank*, N.A.,
  293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................... 19

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................... 6, 16, 20

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................. 7

*Davenport v. Elite Model Mgmt. Corp.*,
  2014 WL 12756756 (S.D.N.Y. May 12, 2014) ................................................. 19

*Del. Cty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
  2024 WL 3360661 (E.D. Pa. July 10, 2024) ...................................................... 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) .......................................................................................... 22

*Edwards v. N. Am. Power & Gas, LLC*,
  2018 WL 3715273 (D. Conn. Aug. 3, 2018) .................................................... 24

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................... 23

*Flores v. CGI Inc.*,
  2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ................................................... 4

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................................. 5

*In re 3D Sys. Sec. Litig.*,
  2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ........................................................ 13

iii

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 24

*In re \Agent Orange\ Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)...................... 9, 13

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................... 18, 22

*In re Appharvest Sec. Litig.*,
    2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) ...................................................... 24

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................... 11, 12, 18, 20

*In re Blech Sec. Litig.*,
    2000 WL 661680 (S.D.N.Y. May 19, 2000) .................................................... 19

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015).................................................. 12

*In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*,
    2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022).................................................... 15

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................................. 13

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................... 16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).................................................... 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) ................................................................. 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................... 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................... 20

*In re Frontier Comm's Corp.*,
    2022 WL 4080324 (D. Conn. May 20, 2022).................................................... 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................ 20

iv

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 22

*In re Grab Holdings Ltd.. Sec. Litig.*,
2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) ........................................................ 2, 20

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................. 9, 10, 11

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................... 18, 20

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................................ 20

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)........................................................... 16

*In re Lyft Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ........................................................... 8

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 17

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 19

*In re Mut. Funds Inv. Litig.*,
2010 WL 2342413 (D. Md. May 19, 2010)................................................................. 24

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023)........................................................................ 12

*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023)....................................................... 14, 24

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................. 9

*In re PAR Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)................................................................... 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ............................................................................. 6, 7

*In re Puda Coal Sec. Inc. Litig.*,
　2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ........................................................................ 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................................ 8

*In re Tenaris S.A. Sec. Litig.*,
　2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ...................................................................... 15

*In re Tesla Inc., Sec. Litig.*,
　2023 WL 4032010 (N.D. Cal. June 14, 2023) ...................................................................... 12

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................................ 12

*In re XL Fleet Corp. Sec. Litig.*,
　Docket No. 1:21-cv-02002-JLR (S.D.N.Y Jan. 18, 2024) .................................................... 13

*Maley v. Del Global Tech. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 17

*Moses v. N.Y. Times Co.*,
　79 F.4th 235 (2d Cir. 2023) ................................................................................................... 8

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
　2018 WL 889472 (S.D.N.Y. Feb. 1, 2018) ........................................................................... 13

*Pearlstein v. BlackBerry Ltd.*,
　2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ............................................................... 8, 9, 12

*Robbins v. Koger Props., Inc.*,
　116 F.3d 1441 (11th Cir. 1997) ............................................................................................. 12

*Torretto v. Donnelley Fin. Sols., Inc.*,
　2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) ............................................................................. 8

*Villa v. Highbury Concrete Inc.*,
　2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022) ..................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　396 F.3d 96 (2d Cir. 2005) ........................................................................................... 4, 5, 17

*Wojcik v. Omega Healthcare Inv'rs, Inc.*,
　2024 WL 3743081 (D. Md. Aug. 8, 2024) ............................................................................. 8

**STATUTES**

15 U.S.C. § 77k ............................................................................................................... 2, 18, 21, 22

15 U.S.C. § 78n(a) ............................................................................................ 2, 18, 21

15 U.S.C. §77z-(1)(a)(7) ........................................................................................ 24

**OTHER AUTHORITIES**

Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904) ........................................ 5, 6

Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action
    Litigation, 2024 Full-Year Review (NERA Jan. 22, 2025) ............................................. 14

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................. 19

Fed. R. Civ. P. 23(b) ............................................................................................. 19

Fed. R. Civ. P. 23(c) ........................................................................................ 17, 23, 24

Fed. R. Civ. P. 23(e) ........................................................................................ passim

Fed. R. Civ. P. 23(f) ............................................................................................. 10

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Si Fan, Amit Batra, and SLG Cloudbank Holdings, LLC ("Lead Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit this memorandum of law in support of their unopposed motion for final approval of (1) the proposed Settlement resolving this Action for the payment of $80.0 million in cash for the benefit of the Settlement Class in consideration for fully resolving all claims alleged in this Action, and (2) the proposed Plan of Allocation of the proceeds of the Settlement.

## PRELIMINARY STATEMENT

After nearly three years of hard-fought litigation, Lead Plaintiffs have agreed to settle this Action for a non-reversionary, all-cash payment of $80,000,000 (the "Settlement Amount"), which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. This Settlement is an excellent result for the Settlement Class, and is both substantively and procedurally fair.

Substantively, the Settlement represents a recovery of between 8.9% and 13.4% of the *potential maximum* recoverable damages related to the pending claims. As set forth below, such a recovery is (i) far above the 1.2% median recovery in securities class actions settled in 2024; and (ii) much higher than the 1.6-1.7% median recovery in securities cases with similar damages that settled between January 2015 and December 2024. For this reason, and as further discussed herein and in the Joint Declaration, the Settlement is substantively fair.

Similarly, the process by which the Settlement was achieved evidences a lack of collusion

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement ("Stipulation") (ECF No. 140-1). Unless otherwise indicated, references herein to "¶_" are to paragraphs of the Joint Declaration of Shannon L. Hopkins and Brian P. O'Connell in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plan of Allocation, and (II) Co-Lead Counsel's Motion For Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiffs ("Joint Declaration" or "Joint Decl."), filed herewith, and references to "Ex.__" are to exhibits to the Joint Declaration.

among the Parties and supports a finding of procedural fairness.  By the time the Settlement was

reached, Lead Plaintiffs and Co-Lead Counsel were well informed about the strengths and

weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Co-Lead

Counsel had, *inter alia*:

- conducted extensive investigation of the claims asserted in the Action by, *inter alia*: (a) consulting with an expert in market efficiency, loss causation and damages; (b) working with a private investigator to interview former Grab employees, drivers, merchants, local regulators, and conduct in-depth investigation of Grab's business in the countries in which it operated in Southeast Asia; and (c) reviewing and analyzing (i) filings with the U.S. Securities and Exchange Commission ("SEC") by both Grab Holdings, Limited ("Grab") and Altimeter Growth Corp. ("AGC"); (ii) public reports, news articles, and research reports prepared by securities and financial analysts concerning Grab and AGC; (iii) transcripts of investor calls conducted by Grab's management; and (iv) press releases issued by and about Grab and AGC;

- drafted and filed the detailed Amended Class Action Complaint for Violation of Federal Securities Laws ("Complaint"), which included, *inter alia*: (a) new alleged facts based on information obtained during the foregoing investigation; (b) allegations against eleven additional defendants; (c) an expanded class period; (d) additional false statements; (e) new theories concerning the falsity of Defendants' statements; (f) two additional substantive claims, for liability under Section 11 of the Securities Act of 1933 ("Securities Act") and Section 14(a) of the Securities Exchange Act ("Exchange Act"); and (g) allegations based on additional SEC filings, in particular those incorporated into the allegedly defective proxy/registration statement on Form 425 that Defendants filed with the SEC on Form F-4 on August 2, 2021, and thereafter underwent several amendments and was incorporated into the final prospectus on Form 424(b)(3) filed on November 19, 2021, as amended (the "Proxy/Registration Statement"), in connection with the "de-SPAC" transaction with AGC pursuant to which Grab became a publicly-traded company;

- researched, drafted, and filed an opposition to Defendants' joint motion to dismiss the Complaint, which, after oral argument, this Court denied in part and granted in part (ECF No. 103; *In re Grab Holdings Ltd.. Sec. Litig.*, 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024));

- engaged in substantial discovery, which entailed, *inter alia*: (a) exchanging initial disclosures; (b) exchanging, and responding to, Party requests for the production of documents; (c) serving ten subpoenas on third parties and negotiating document productions therefrom; (d) negotiating an ESI and search protocol with Defendants, as well as a stipulated Protective Order, pursuant to which Defendants and third parties produced nearly 300,000 pages of documents that Co-Lead Counsel reviewed and analyzed; (e) extensive meet-and-confer sessions and correspondence regarding all of

2

the foregoing; (f) producing more than 900 pages of documents from Lead Plaintiffs; and (g) causing to be issued letters rogatory commanding production of information in certain foreign countries;

- engaged in two full-day mediation sessions overseen by a mediator highly experienced in complex actions, David Murphy, Esq., of Phillips ADR Enterprises, which involved the exchange of detailed pre-mediation briefs and ancillary submissions concerning the facts of the case, liability, and damages, and consultation with damages experts, but which did not result in a settlement agreement at that time;

- prepared a motion for class certification and memorandum in support thereof, which Co-Lead Counsel were ready to file in case a settlement agreement was not reached; and

- engaged in months of follow-up negotiations with Mr. Murphy and Defendants' Counsel following the initial mediation session, that ultimately resulted in a mediator's double-blind recommendation to settle the Action for $80.0 million. *See* Stipulation (ECF No. 140-1), Section I, pp. 1-5; Joint Decl. ¶¶9, 13-41, 92.

Thus, the Settlement is the result of arm's-length negotiations, and was conducted by informed and experienced counsel, under the auspices of an experienced mediator. Moreover, the Settlement has the full support of the Lead Plaintiffs, and—although the deadline to object to the Settlement has not yet passed—to date, no Settlement Class Member has objected to the Settlement.[2]

Given these considerations and other factors discussed below, Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court. Additionally, Lead Plaintiffs request that the Court approve the Plan of Allocation, which was set forth in the Notice available for all Settlement Class Members to review on the Settlement Website, as advised by the Postcard Notice. The Plan of Allocation was developed in conjunction with Lead Plaintiffs' damages consultant and is designed to distribute the proceeds of the Net

---

[2] The objection deadline is April 24, 2025. Lead Plaintiffs will address all requests for exclusion and any objections received in their reply papers, due May 8, 2025.

Settlement Fund fairly and equitably to Settlement Class Members.  No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement Class Members—including Lead Plaintiffs—are treated in the same manner.  *See* Ex. 1-B (Notice), pp. 9-11.  Therefore, the Plan of Allocation is fair and reasonable, and should also be approved.

### FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

Lead Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a detailed discussion of, *inter alia*, the factual and procedural background of the Action, the nature of the claims asserted, the extensive efforts undertaken by Co-Lead Counsel during the litigation, the risks of continued litigation, negotiations in conjunction with an independent mediator that led to the Settlement, and the terms of the Plan of Allocation of the Net Settlement Fund.

### ARGUMENT

### I.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class-action claims.  *See* Fed. R. Civ. P. 23(e).  A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Second Circuit favors the settlement of disputed claims among private litigants, particularly in class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").  In ruling on motions for final approval of a class settlement, courts examine the negotiating process leading to the settlement and the settlement's substantive terms. *Id.*; *Flores v. CGI Inc.*, 2022 WL 13804077, at *3 (S.D.N.Y. Oct. 21, 2022).

Rule 23(e)(2), as amended on December 1, 2018, provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

4

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters ... described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on ... a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919). As discussed below, all of these factors strongly support approval of the Settlement here.

Historically, the Second Circuit has held that district courts should consider the following factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating a class-action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117.

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the

5

lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ P. 23(e)(2) (Advisory Committee Notes, 2018 Amendments).

Accordingly, Lead Plaintiffs will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-duplicative *Grinnell* factors. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinne[ll]* factors.").

### A. Rule 23(e)(2)(A): Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class-action settlement, courts consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, there is no antagonism or conflict between Lead Plaintiffs and the proposed Settlement Class. Lead Plaintiffs and other Settlement Class Members all purchased or otherwise acquired Grab public shares during the Settlement Class Period and were injured by the same alleged false and misleading statements. Whether Lead Plaintiffs or a Settlement Class Member

recover under Section 11 or Section 14(a), the underlying proof necessary for each Lead Plaintiff to prevail is the same as that required to prove the claims of the rest of the Settlement Class. If Lead Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions); *Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member.").

Second, Lead Plaintiffs retained counsel highly experienced in securities litigation, with a long and successful track record of representing investors in such cases. *See* Exs. 3A-1, 3B-1 (Pomerantz LLP and Levi & Korsinsky, LLP firm résumés). As noted above, Co-Lead Counsel vigorously prosecuted the Settlement Class's claims for nearly three years, including by investigating and developing the claims in the Action, largely defeating Defendants' joint motion to dismiss, reviewing documents, representing the Settlement Class at multiple hearings and mediations, and negotiating the Settlement against skilled opposing counsel. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (counsel "highly qualified" where they "prosecuted this action vigorously, their efforts resulting in surviving a motion to dismiss against some of the finest firms in the nation.").

### B. Rule 23(e)(2)(B): The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length[.]" In reviewing this aspect of procedural fairness, courts recognize that a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Here, the parties engaged in hard-fought, adversarial litigation since the Action's inception,

including a hotly-contested motion to dismiss, and subsequent discovery.  Prior to settling, the parties engaged in extensive arm's-length settlement negotiations—including the exchange of multiple detailed mediation statements and two mediation sessions under the auspices of David Murphy, Esq., a nationally-recognized mediator highly experienced in resolving securities class actions and other complex litigation.  ¶¶36-39.  That the Settlement was reached only after these extensive arm's-length negotiations, and upon a mediator's recommendation, while not conclusive, strongly supports that it is fair and free of collusion.  *See Torretto v. Donnelley Fin. Sols., Inc.*, 2023 WL 123201, at *2 (S.D.N.Y. Jan. 5, 2023) (noting that "the involvement of a mediator in the Parties' negotiations ... further supports the finding that the Settlement was negotiated at arm's-length"); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022) (approving a settlement, in part, because it was facilitated by the "extensive mediation efforts" of a "highly regarded mediator"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (finding settlement negotiated at arm's length; "[i]n fact, the Settlement is the product of a mediator's recommendation"); *see also Del. Cty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 2024 WL 3360661, at *3 (E.D. Pa. July 10, 2024) (noting Mr. Murphy has "experience in securities class actions," and his involvement as mediator "demonstrates that these negotiations were conducted at arm's length"); *Wojcik v. Omega Healthcare Inv'rs, Inc.*, 2024 WL 3743081, at *4 (D. Md. Aug. 8, 2024) (Mr. Murphy's involvement as an experienced, neutral mediator "weigh[ed] in favor of settlement approval"); *In re Lyft Inc. Sec. Litig.*, 2022 WL 17740302, at *4 (N.D. Cal. Dec. 16, 2022) (approving settlement in part because it was reached "with the assistance of an experienced mediator," Mr. Murphy, "after two-and-a-half years of litigation … and months of negotiations).[3]

---

[3] Lead Plaintiffs do not seek a "presumption" of fairness based on the arm's-length negotiations and mediator involvement, but it remains a "significant[]" factor in the holistic analysis. *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

In addition, Co-Lead Counsel, who are highly experienced in securities class-action litigation, strongly believe that the Settlement is in the Settlement Class's best interests—an opinion that is entitled to "great weight."  *Pearlstein*, 2022 WL 4554858, at \*7; *accord In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' … to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

### C.  Rule 23(e)(2)(C): The Settlement Relief Is Adequate, Considering the Costs, Risks and Delays of Further Litigation and Other Relevant Factors (*Grinnell* Factors 1, 4, 5-6, 8-9)

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[4]  Under *Grinnell*, the adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

### 1.  The Complexity, Expense, and Duration of Litigation

Securities class actions are "notably complex, lengthy, and expensive cases to litigate."  *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at \*10 (D.N.J. July 29, 2013).  This Action presented particular complexities, costs and likely delays, even more than the usual securities class

---

[4] Rule 23(e)(2)(C)(i) encompasses at least six of the nine traditional *Grinnell* factors.  *See Grinnell*, 495 F.2d at 463 ("(1) the complexity, expense, and likely duration of the litigation,… (4) the risks of establishing liability, (5) [] damages, (6) the risks of maintaining class action status through the trial,… (8) the range of reasonableness of the settlement fund in light of the best possible recovery [and in light of (9)] the attendant risks of litigation"); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

action.  First, it involves statements in a Proxy/Registration Statement in a complex de-SPAC transaction, shareholders who held private Grab shares that were thereby converted into public shares, and AGC shareholders who exchanged their shares for Grab public shares issued in the related IPO.  Second, it focuses on technology-based operations across numerous countries in Southeast Asia.  Much of the discovery Lead Plaintiffs needed to prove their case was international in nature which required, *inter alia*, Letters Rogatory or similar methods which could take more than a year to yield documents—much less schedule, compel and take depositions.  Besides taking an inordinate amount of time, foreign discovery (both from Defendants and third parties) would be unusually expensive, and would also require translation from and into the many Southeast Asian languages implicated in this case, for, *e.g.*, document analysis and deposition testimony, trial or appeal, further adding to costs and delays.

Even under the best of circumstances, assuming Lead Plaintiffs' claims were certified under Rule 23 (and not reversed on a Rule 23(f) interlocutory appeal or subsequent motion for decertification), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.  Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'").  By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### 2.    The Risks of Establishing Liability and Damages

"[A] court should balance the benefits afforded the Class, including immediacy and

certainty of recovery, against the continuing risks of litigation." *GSE*, at 694.  As discussed in the Joint Declaration (¶¶43-66) and below, while Lead Plaintiffs believe their claims had merit, they also recognized that continued litigation of the Action presented serious risks that Lead Plaintiffs would be unable to prove liability, loss causation and damages.

Defendants have vigorously argued that the Proxy/Registration Statement at issue contained no misrepresentations, that they disclosed all material facts and risks, that any losses upon Grab's March 3, 2022 disclosures were not due to Defendants' misrepresentations, have otherwise contested causation and traceability, and contended that Lead Plaintiffs would be unable to certify a class.

For example, Defendants argued that:

- The case was substantially narrowed by the Court's decision on the motion to dismiss to four statements contained in the Proxy/Registration Statement's "risk disclosure" section about Grab's use of incentives, implicating only the first six weeks of Grab's Q4 2021, and that the dismissal of the Section 10(b) claims based on intentional wrongdoing further detracted from any jury appeal;

- Grab's Proxy/Registration Statement was not misleading because it disclosed the information that Plaintiffs alleged was omitted and rendered Defendants' Proxy/Registration Statement misleading;

- Grab accurately disclosed the exact amount of incentives in Q3 2021, the quarter preceding the Proxy/Registration Statement, and that Grab did not have to disclose its corresponding fluctuations in incentives intra-quarter;

- Grab's March 3, 2022 disclosures were not inconsistent with its disclosures in the Proxy/Registration Statement;

- The Grab Individual Defendants and the AGC Defendants might prevail on a "due diligence defense" at summary judgment or trial, insofar as they relied on financial and legal advisers;

- Plaintiffs would be unable to certify a class because, *inter alia*, Lead Plaintiffs (and other Settlement Class Members) might not be able to trace their shares to the Proxy/Registration Statement, (*see GSE*, 414 F. Supp. 3d at 694 ("Although the 'risk of maintaining a class through trial is present in [every] class action ... this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would

11

oppose class certification' if the case were to be litigated."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012) (similar)); and

- Any damages would be substantially reduced by Defendants' "negative causation" defense, and Plaintiffs could not carry their burden under Section 14(a) of establishing loss causation (*see In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (noting that difficulties in proving loss causation and damages at trial risked plaintiffs recovering nothing); *In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013) (noting difficulties in establishing tracing)).

Further, Lead Plaintiffs' claims would be subject to complex expert testimony, offered by Defendants' experts, that would likely conflict with Lead Plaintiffs' experts' analyses. The opinions of each side's experts can vary substantially, and continued litigation poses the risks that Defendants would prevail in a "battle of experts." *See Pearlstein*, 2022 WL 4554858, at *5 ("These disputes would involve at trial a 'battle of the experts,' and a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) (similar); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *9 (S.D.N.Y. Nov. 7, 2007) (similar).

In short, these risks posed a real possibility that Lead Plaintiffs and the Settlement Class would not be able to recover at all or would have recovered a lesser amount if the Action proceeded through class certification, summary judgment, trial, and appeals. Particularly in view of these risks, Lead Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement, which confers an immediate and substantial benefit, is in the best interests of the Settlement Class.[5]

---

[5] *See, e.g., In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266 (S.D.N.Y. 2023) (defendants prevailed on summary judgment despite DOJ and state Attorney General prosecutions); *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 (N.D. Cal. June 14, 2023) (defendants prevailed at trial despite summary judgment for plaintiffs on falsity and scienter, and SEC settlement based on same alleged conduct); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict reversed on appeal and

### 3. The Settlement Represents a Substantial Percentage of Likely Recoverable Damages Especially in Light of the Risks of Litigation

As noted, the adequacy of the settlement amount compared to the best possible outcome must be judged "in light of the strengths and weaknesses of plaintiffs' case." *Agent Orange*, 597 F. Supp. at 762. The proposed Settlement amount of $80,000,000 is an excellent result given the significant risks of continued litigation as stated above and in the Joint Decl. ¶¶43-66. Moreover, after consultation with experts on damages, Lead Plaintiffs believe that the maximum damages that the Settlement Class could recover for the Section 11 claims are between $599 million and $898 million, after accounting for Defendants' negative causation defenses. Class-wide damages under Lead Plaintiffs' Section 14(a) claims are approximately $177.49 million, but entirely overlap with the Section 11 damages. The $80 million Settlement thus represents a recovery between 8.9% and 13.4% of the maximum likely recoverable damages if Plaintiffs prevailed at trial, well above the range of the average recovery in shareholder litigation. *See, e.g., P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, 2018 WL 889472, at *3 (S.D.N.Y. Feb. 1, 2018) (approving settlement recovering 5.6% to 6.9% of estimated damages); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting "average settlement amounts" over past decade ranged from "'3% to 7% of the class members' estimated losses.'"); *see also In re XL Fleet Corp. Sec. Litig.*, Docket No. 1:21-cv-02002-JLR, ECF Nos. 193 at p.1, 199 (S.D.N.Y Apr. 30, 2024) (approving settlement where estimated damages ranged from 3.9 to 7.8% of potential maximum recovery); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 & n.11 (E.D.N.Y. Jan. 4, 2024) (approving $4 million settlement, representing approximately 1% of maximum recoverable

---

judgment entered for defendant). *See also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (in securities fraud cases, "the risk of a zero- or minimal-recovery scenario are real.").

damages of $414.1 million); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *7 (E.D.N.Y. Aug. 24, 2023) (approving recovery of 2.3% of maximum potential damages); *In re Frontier Comms. Corp.*, 2022 WL 4080324, at *14 (D. Conn. May 20, 2022) (approving 7% of estimated maximum recoverable damages).[6]

The percentage recovery here exceeds the 1.2% median settlement value in 2024 for all securities class actions. *See* Ex. 2 (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review), at 27 (Fig. 24) (NERA Jan. 22, 2025) ("NERA Report") (median recovery in securities class actions in 2024 was approximately 1.2% of estimated damages).

### D.  The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C) provides that adequacy should also be assessed considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports approval.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Here, A.B. Data, Ltd., the Court-approved Claims Administrator (*see* ECF No. 142, ¶7), will process claims under the guidance of Co-Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or

---

[6] No damages would be available at trial for the Section 10(b) claims which were dismissed and not repleaded. However, because the release encompasses any remaining appellate or other interest for the Settlement Class, the Plan of Allocation provides up to a nominal $0.10 per share for such claims.

request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *See Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) ("[t]he requirement that class members submit documentation to substantiate their holdings of the bonds as of the record date will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Co-Lead Counsel will be applying for a fee award not to exceed one-third of the Settlement Amount, plus interest on that amount which accrued while in the Escrow Account, to compensate them for the services they have rendered on behalf of the Settlement Class. As discussed in the memorandum concurrently submitted in support of Co-Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs, the requested fee is reasonable for the work performed and the results obtained, and consistent with awards in similar complex class action cases. *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (approving "an award of attorneys' fees in the amount of one third or 33 1/3% of the" settlement amount and noting "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable."); *In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (awarding 33-1/3% of $44 million settlement); *In re J.P. Morgan*

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants have no right to recoup a portion of the Settlement Fund based on the number or value of the claims submitted.

*Stable Value Fund ERISA Litig.,* 2019 WL 4734396, at *1, *6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of a $75 million settlement). Notably, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶5.7.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of Grab public securities submit valid and timely requests for exclusion ("opt out") from the Settlement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *15.

### E. Rule 23(e)(2)(D): The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, set forth in the Notice (Ex. 1-B) and summarized further below, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of the Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead Plaintiffs will receive the same *pro rata* recovery under the Plan of Allocation as all other Settlement Class Members. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### F. The Remaining *Grinnell* Factors (2, 3 and 7) Are Neutral or Weigh in Favor of Final Approval

*Grinnell* also outlined additional factors that do not overlap with Rule 23(e)(2). These factors, viewed in light of the Rule 23(e)(2) factors identified above, also support or are neutral

16

with respect to final approval.  However, "[a] court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotations omitted).

**The Reaction of the Settlement Class:** The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(c)(2)(B)(v), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rules 23(c)(2)(B)(v) and (e)(5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Ex. 1-B (Notice).  In total, as of April 8, 2025, 70,229 potential Settlement Class Members were notified of the Settlement by emailed or mailed Postcard Notice.  Ex. 1 (Declaration of Rochelle J. Teichmiller Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("A.B. Data Decl.")), ¶12. To date, only one request for exclusion has been received, and no objections have been filed with the Court.  *Id.* ¶¶17-18.[8] The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement.  *See, e.g., Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."); *see also Visa*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

**Stage of Proceedings and Amount of Discovery:** The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can

---

[8] As noted above, if any objections or opt-outs are received after the date of this filing up to the April 24, 2025 deadline therefor, they will be addressed on reply.

intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement[.]" *Bear Stearns*, 909 F. Supp. 2d at 267.  Here, Lead Plaintiffs and Co-Lead Counsel undertook extensive discovery and investigation, and are therefore well-equipped to evaluate the Settlement and the strengths and weaknesses of their claims.  They conducted an extensive investigation, including overseas, thoroughly assessed the merits of their claims, successfully defeated Defendants' attempt to have this Action dismissed, developed new theories of recovery under Section 11 of the Securities Act and Section 14(a) of the Exchange Act, consulted with world-class experts on damages, thoroughly reviewed Grab's and AGC's public filings and other publicly-available information, prosecuted multiple letters rogatory seeking third-party discovery in foreign countries, prepared mediation papers and participated in two contested mediations, exchanged initial disclosures and reviewed approximately 300,000 pages of documents on the key issues in the Action produced by Defendants, evaluated class certification and merits issues, and drafted a class certification motion. Thus, Lead Plaintiffs and Co-Lead Counsel were well informed to assess the Settlement.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("'To approve a proposed settlement ... the Court need not find that the parties have engaged in extensive discovery… Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make ... an appraisal of the Settlement.'") (citations omitted).

**Ability to Withstand a Greater Judgment:** Although Defendants could likely withstand

a greater judgment, "[their] ability to do so, 'standing alone, does not suggest that the settlement is unfair.'" *Davenport v. Elite Model Mgmt. Corp.*, 2014 WL 12756756, at *7 (S.D.N.Y. May 12, 2014) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). Moreover, if the litigation continued for several more years through trial and appeals, the amount of D&O insurance available to fund a settlement would be significantly depleted and there is no guarantee that Grab, whose stock is currently trading more than 60% down from its de-SPAC offering price, would not be in a worse financial position to fund any Settlement. *See In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ("While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery."). Further, enforcing a judgment after a verdict could prove difficult and expensive, considering that many of the Defendants, including the corporate defendant, reside outside the United States. Thus, this factor is at best "neutral and does not preclude the Court from granting final approval." *Davenport*, 2014 WL 12756756, at *7.

In sum, all factors under Rule 23(e)(2) and *Grinnell* support a finding that the Settlement is fair, reasonable and adequate, and merits final approval.

## II.    THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED

The Court's January 13, 2025 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 142, ¶¶2-4. There have been no changes to alter the propriety of class certification for settlement purposes.

19

Thus, for the reasons stated in Plaintiffs' Preliminary Approval Memorandum (ECF No. 139, at Section V.A.-C.), Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3). *Cf. In re Grab Holdings*, 2024 WL 1076277, at \*12 (noting plaintiffs' Section 11 and 14(a) claims "'share the common requirement that the plaintiff identify 'a materially misleading statement made by the defendant.''… The standard for establishing a material misrepresentation or omission is the same under each provision.") (citations omitted).

### III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan for allocating settlement proceeds should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation is fair and reasonable as long as it has a "rational basis." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*21 (S.D.N.Y. Nov. 8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). "As numerous courts have held, a plan of allocation need not be perfect[.]" *Christine Asia*, 2019 WL 5257534, at \*15. Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. Courts give great weight to the opinion of experienced counsel. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *see also Villa v. Highbury Concrete Inc.*, 2022 WL 19073649, at \*4 (E.D.N.Y. Nov. 25, 2022) (plan more likely to be reasonable "if recommended by experienced and competent class counsel.").

Here, the proposed Plan of Allocation, which was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim

Forms.  In developing the Plan of Allocation, Lead Plaintiffs' expert calculated the amount of estimated artificial inflation in the price of Grab Class A Ordinary Shares related to Defendants' alleged false and misleading statements in this Action by considering the price changes in such shares in reaction to the alleged corrective disclosures, adjusting for price changes attributable to market and industry factors and litigation risk, in addition to applying the statutory damages formula under Section 11(e) of the Securities Act.

Under the Plan of Allocation, only Grab Class A Ordinary Shares purchased or acquired before January 14, 2022 (including by exchange in the merger of publicly-listed AGC shares and freely transferrable Grab Holdings Inc. shares[9]), the day before the effective date of the registration of additional Grab shares under a PIPE registration, are deemed traceable to the Proxy/Registration Statement for purposes of calculating Recognized Loss per share for the Section 11 Securities Act claims—the calculation of which otherwise follows Section 11(e), and treats August 22, 2022 (the date of the filing of the Complaint adding Section 11 claims for the first time), as "the time such suit was brought" under Section 11(e).  Ex.1-B, pp.10-11.

For Plaintiffs' Section 14(a) Exchange Act claims, Grab Class A Ordinary Shares are eligible for a recovery if they were purchased as AGC shares and exchanged for Grab Class A Ordinary Shares in the merger rather than redeemed.  For shares sold prior to or on the corrective disclosure on March 3, 2022, the Recognized Loss per share will be the $10.00 purchase price deemed for shares exchanged in the merger, minus the sale price; while for shares sold after the March 3, 2022 corrective disclosure date, the Recognized Loss per share will be $10.00 minus the closing price of Grab Class A Ordinary Shares on March 3, 2022.  *Id.*

---

[9] The free transferability of such shares must be documented. The purchase price for shares exchanged in the merger is deemed to be $10.00. Ex. 1-B, p.10 n.5, 11.

Because the Section 10(b) claims were dismissed, and given the principles of economic loss articulated by *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Plan of Allocation provides a nominal Recognized Loss for those who purchased during the Section 10(b) class period and held over the corrective disclosure in exchange for releasing such claims. For shares purchased during the Settlement Class Period of August 2, 2021 to March 2, 2022 and sold on or after the March 3, 2022 corrective disclosure, the Recognized Loss will be the lesser of (i) the purchase price minus the sales price, or (ii) $0.10. Ex. 1-B, p.10; *see also Am. Bank Note Holographics*, 127 F. Supp. 2d at 429 (allocation discounts are "an appropriate means to reflect the comparative strengths and values of different categories of the claim.").

For any purchase or acquisition, a claimant's Recognized Loss will be the *highest* of their Recognized Losses under the Securities Act, Section 14(a), or Section 10(b)—these amounts are not cumulative, to prevent double-counting. Ex. 1-B, p.11. Likewise, under the Plan, claimants who have an overall market gain are not eligible for a recovery. *Id*. A claimant's total Recognized Loss will be allocated from the Net Settlement Fund to Authorized Claimants on a *pro rata* basis, in proportion to the size of their total Recognized Loss, subject to a $10 minimum distribution amount. *Id.* p.9-10; *see In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462-63 (S.D.N.Y. 2004) ("*Pro-rata* distribution of settlement funds based on investment loss is clearly a reasonable approach"; $10 minimum distribution threshold "reasonably" applied).

Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. ¶¶78-88. Moreover, to date, no objections to the proposed Plan of Allocation have been received. ¶88.

22

## IV.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B), *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)), and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)).

The Court approved the proposed notice program in the Preliminary Approval Order, and Lead Plaintiffs executed the notice program in accordance with the provisions therein. ¶¶67-77; *see* Ex. 1 (A.B. Data Decl.). Thus, pursuant to the Preliminary Approval Order, the Claims Administrator, A.B. Data, timely: (a) emailed the Postcard Notice, with links to the Notice and Claim Form on the Settlement website (www.GrabSecuritiesSettlement.com)—or sent it by first-class mail where no e-mail address was available—to all Settlement Class Members who could be identified with reasonable effort, (b) caused the Summary Notice to be published over *PR Newswire* and *Business Wire*, which provided clear and concise information concerning the Settlement and how to obtain a copy of the Long Notice, (c) posted the Long Notice and Claim Form on the Settlement website from which copies could be downloaded, and (d) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to provide the Claims Administrator the mailing and email addresses of such beneficial owners, request additional copies of the Postcard Notice to send to all beneficial owners, or request the link to the Notice and Claim Form from A.B. Data, and email the link to all beneficial owners. A.B. Data Decl. ¶¶4-15. The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Long Notice and Claim Form posted on the Settlement website. *Id.* at ¶¶4, 15, Ex. 1-A. A.B. Data also posted copies of the Stipulation, Preliminary Approval Order, and Complaint, along with the Long Notice and Claim Form, on the Settlement website, and provided a toll-free telephone number for Settlement Class Members to call with any questions

concerning the Settlement.  A.B. Data Decl. at ¶¶14-15.

Further, the notice program conveyed to Settlement Class Members all of the information required by Federal Rule of Civil Procedure 23(c)(2) and the PSLRA, 15 U.S.C. §77z-(1)(a)(7), along with the estimated costs of administration as requested by the Court.  A.B. Data Decl. ¶15; Ex. 1-A; Ex. 1-B, p.5.  Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23.  *See In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 182-83 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical"); *see also In re AppHarvest Sec. Litig.*, 2024 WL 967258, at *3 (S.D.N.Y. Mar. 6, 2024) (approving emailing postcard notice, and mailing where no email address is available, and similar proposed notice program including website); *In re N. Dynasty Minerals*, 2023 WL 5511513, at *14 (same); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving mailed notice directing class members to website).

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate, and certify the Settlement Class for purposes of settlement.[10]

---

[10] A proposed Final Order and Judgment approving the Settlement and Plan of Allocation and dismissing this Action with prejudice will be submitted with Plaintiffs' reply papers on May 8, 2025, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

Dated: April 10, 2025

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/    *Shannon L. Hopkins*
Shannon L. Hopkins
Gregory M. Potrepka
Morgan M. Embleton (*pro hac vice*)
1111Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com

*Co-Lead Counsel for Lead Plaintiffs*

**POMERANTZ LLP**

/s/    *Brian P. O'Connell*
Joshua B. Silverman
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jeremy A. Leiberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165
Tel.: (212) 697-6484

25

Fax: (212) 697-7296
eitank@bandg.com

*Additional Counsel for Lead Plaintiffs*

## COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c) and INDIVIDUAL RULE 3(C)

   The undersigned, counsel of record for Lead Plaintiff SLG Cloudbank Holdings, LLC, certifies that this brief contains 8,069 words, which complies with the word limit of L.R. 7.1(c) regarding Length of Memoranda of Law, effective January 2, 2025, and this Court's Individual Rule 3.C. Executed on this 10th day of April, 2025.

             */s/ Shannon L. Hopkins*
             Shannon L. Hopkins

27