**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE GRAB HOLDINGS LIMITED
SECURITIES LITIGATION

**Case No. 1:22-cv-02189-JLR**

**CO-LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT**
**OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFFS**

**TABLE OF CONTENTS**

**PAGE(S)**

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ....................................................................................... ii

I.      **INTRODUCTION** ...........................................................................................1

II.     **THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES** ...........................................................3

      A.     The Guiding Principle for Fee Awards ...................................................3

      B.     The Court Should Award Counsel a Reasonable Percentage of the Fund ..............4

III.    **THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE** ....................5

      A.     Co-Lead Counsel's Expended Time and Labor Support the Requested Fee ..........5

      B.     The Risks of Litigation Support the Requested Fee ................................7

      C.     The Magnitude and Complexities of the Litigation Support the Requested Fee ...11

      D.     The Quality of Counsel's Representation Supports the Requested Fee ...............11

      E.     The Requested Fee is a Reasonable Percentage of the Settlement .....................14

      F.     Public Policy Considerations Support the Requested Fee .....................15

      G.     A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request .........16

      H.     The Reaction of the Settlement Class Supports the Fee Request ...........18

IV.    **CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED** ..........................................................19

V.     **THE AWARDS TO LEAD PLAINTIFFS SHOULD BE APPROVED** ....................21

VI.    **CONCLUSION** .............................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                 **PAGE(S)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)................................23

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-CV-118 VM, 2012 WL 1981505 (S.D.N.Y. June 1, 2012)........................................20

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ...............................................................................................10

*Blum v. Stenson*,
465 U.S. 886 (1984).........................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).........................................................................................................3

*Bozak v. FedEx Ground Package Sys., Inc.*,
No. 3:11-CV-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014)..............................15

*Christine Asia Co v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)...................20

*City of Providence v. Aéropostale, Inc.*,
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)...........11, 13, 16

*Capsolas v. Pasta Resources Inc.*,
No. 10-CV-5595 RLE, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .....................................15

*Cornwell v. Credit Suisse Grp.*,
No. 08-CV-03758(VM), 2011 WL 13263367 (S.D.N.Y. July 20, 2011)...............................17

*Gilliam v. Addicts Rehab. Ctr. Fund,*
No. 05 CIV. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................15

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) ...........................................................................................11

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000)...................................................................................3, 5, 8, 16

*Gross v. GFI Grp., Inc.*,
784 Fed. App'x 27 (2d Cir. Sept. 13, 2019) ........................................................................9

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:18-cv-09784-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................11

ii

*Hicks v. Morgan Stanley & Co.*,
 No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................4, 16

*In re 3D Sys. Sec. Litig.*,
 No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ..........................12

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
 No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)...............................13

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
 272 F. App'x 9 (2d Cir. 2008) .......................................................................................13, 14

*In re "Agent Orange" Prod. Liab. Litig.*,
 818 F.2d 226 (2d Cir. 1987)..................................................................................................8

*In re Am. Bank Note Holographics*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................10

*In re Ashanti Goldfields Sec. Litig.*,
 No. 00-717, 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ....................................................20

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
 772 F.3d 125 (2d Cir. 2014)..................................................................................................21

*In re Barclays PLC Sec. Litig.*,
 No. 1:22-CV-08172-KPF, 2025 WL 842939 (S.D.N.Y. Mar. 18, 2025) .................................18

*In re BRF S.A. Sec. Litig.*,
 No. 1:18-cv-02213-PKC, 2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020) ...............................18

*In re Celera Corp. Sec. Litig.*,
 No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ................................8

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
 No. 1:17-CV-1580, 2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022)...........................................14

*In re China Sunergy Sec. Litig.*,
 No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)..................................16

*In re Comverse Tech., Inc. Sec. Litig.*,
 No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..........8, 14, 17

*In re Deutsche Telekom AG Sec. Litig.*,
 No. 00-CV-9475 NRB, 2005 WL 7984326 (S.D.N.Y. June 9, 2005) .....................................17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
 MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)......................................7, 14

iii

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 5, 2010).................. *passim*

*In re Frontier Comm's Corp.*,
No. 3:17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022)................................12

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .................................11

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .....................21

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................8, 13, 21

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................11, 20

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005) .....................................19

*In re Hi-Crush Partners L.P. Sec. Litig*
No. 12–Civ–8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ....................13

*In re Initial Public Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................................................14

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
No. 20-cv-4953 (JPO), 2024 WL 5107289 (S.D.N.Y. Dec. 13, 2024)....................................9

*In re Luckin Coffee Inc. Securities Litigation*,
No. 1:20-cv-01293, 2022 WL 22853339 (S.D.N.Y. Jul. 22, 2022)........................................18

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010) ...........................................................................21

*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
No. 20-CV-5917 (TAM), 2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ..............................12

*In re Northern Dynasty Mins. Ltd. Sec. Litig.*,
No. 20-CV-5917(TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024)...................................22

*In re Perrigo Co. PLC Sec. Litig.*,
19-CV-70 (DLC), 2022 WL 500913 (S.D.N.Y. Feb. 18, 2022).............................................14

*In re Puda Coal Sec. Inc. Litig.*,
No. 11 Civ. 2598 (KBF), 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013)....................................9

*In re Qudian Sec. Litig.*,
  No. 1:17-cv-09741-JMF, 2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...................................22

*In re Reconnaissance Energy Afr. Ltd. Sec. Litig.*,
  No. 1:21-CV-06176-NRM-RML, 2024 WL 5265298 (E.D.N.Y. Dec. 30, 2024) ..................23

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  18-MD-2819, 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020)................................................14, 15

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)......................17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ....................................................................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y Nov. 7, 2007) ..................3, 4, 11, 13

*In Re Wells Fargo & Co. Sec. Litig.*,
  No. 1:20-cv-04494, 2023 WL 11885184 (S.D.N.Y. Sep. 8, 2023) .........................................18

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................4

*In re XL Fleet Corp. Sec. Litig.*,
  No. 1:21-cv-02002, 2024 WL 1884483 (S.D.N.Y April 30, 2024)...................................12, 22

*Johnson v. Brennan*,
  No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..................................5

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
  No. 08-cv-03601, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ..........................................14

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................15, 17

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)...................................................................................................4

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster B.*,
  No. 06 CIV.4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)...............................15

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).............................................................................................................17

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .................................................................................................21

*Nichols v. Noom, Inc.*,
  20-CV-3677 (KHP), 2022 WL 2705354 (S.D.N.Y. July 12, 2022) .......................................14

*Pearlstein v. BlackBerry Ltd.*,
  No. 13CIV7060CMKHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)...............................22

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
  No. 15 Civ. 1938 (DAB), 2018 WL 889472 (S.D.N.Y. Feb. 1, 2018)...................................12

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  No. 11 CIV. 0520 JLC, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ....................................17

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .................................17

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..................................8

*Silverstein v. Alliance Bernstein*, L.P.,
  No. 09-cv-5904, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) .............................................19

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023)................................................................................................................9

*TBK Partners, Ltd. v. Warshow*,
  No. 77 Civ. 972 (JMC), 1977 WL 1047 (S.D.N.Y. Oct. 5, 1977)........................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................................15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................................4, 17

## STATUTES

15 U.S.C. §78u-4(a)(6) ...............................................................................................................4

15 U.S.C. §78u-4(a)(4) .............................................................................................................21

## RULES

Fed. R. Civ. P. 23........................................................................................................ *passim*

Co-Lead Counsel, Pomerantz LLP ("Pomerantz") and Levi & Korsinsky, LLP ("L&K"), respectfully submit this memorandum of law in support of their motion for: (1) an award of attorneys' fees of one third of the Settlement Amount, plus interest accrued thereon while said amount was in escrow; (2) reimbursement of $224,744.92 in litigation expenses plus interest; and (3) an award to Lead Plaintiffs Si Fan ("Fan"), Amit Batra ("Batra") and SLG Cloudbank Holdings, LLC ("SLG," and together with Fan and Batra, "Lead Plaintiffs") in the amount of $15,000 each.

## I.    INTRODUCTION

Co-Lead Counsel[1] have vigorously litigated this case without compensation for nearly three years. Having achieved a highly favorable $80,000,000.00 cash settlement for the benefit of the Settlement Class, Co-Lead Counsel now request that the Court award attorneys' fees in the amount of one third of the Settlement Amount plus interest, award reimbursement of their litigation expenses, and provide compensatory awards to Lead Plaintiffs for their time and efforts of $15,000 each. Each of these requests is consistent with Second Circuit precedent and warranted under the circumstances of this Action.

The Settlement provides an excellent result for the Settlement Class. The Settlement avoids the considerable risks and expense of class certification, summary judgment, trial, and any appeals. After consultation with experts on damages and taking into account Defendants' negative causation defenses, Co-Lead Counsel believe that the maximum damages that the Settlement Class could recover for the Section 11 claims are between $599 million and $898 million. ¶64. Class-

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement, dated December 30, 2024 ("Stipulation" (ECF No. 140-1)). Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Joint Declaration of Shannon Hopkins and Brian P. O'Connell ("Joint Declaration").

wide damages under Lead Plaintiffs' Section 14(a) claims entirely overlap with the Section 11 damages, and so do not enlarge this figure. ¶64 n.4. The $80 million Settlement thus represents a recovery between 8.9% and 13.4% of the maximum recoverable damages if Lead Plaintiffs prevailed at trial, well above the range of the average recovery in shareholder litigation. ¶64.

The reaction of the Settlement Class shows overwhelming support not only for the Settlement, but also for the requested fees and expenses. Pursuant to the Preliminary Approval Order (ECF No. 142), the Claims Administrator, A.B. Data, mailed or emailed 70,229 notice forms to Settlement Class Members. *See* Decl. of Rochelle Teichmiller Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ¶12 ("A.B. Data Decl." attached as Ex. 1 to the Joint Declaration). The Notice informed Settlement Class Members that Co-Lead Counsel intended to seek attorneys' fees of up to one-third of the Settlement Amount plus interest, reimbursement of up to $400,000 for out-of-pocket expenses plus interest, and awards to Lead Plaintiffs of up to $15,000 each. Neither Co-Lead Counsel nor the Claims Administrator have received any objection to the proposed award of fees and expenses or to the proposed awards to Lead Plaintiffs.[2] *See* A.B. Data Decl. ¶18. To date, only one putative member of the Settlement Class has requested exclusion from the Settlement, and that exclusion request did not identify any criticism of the Settlement itself or the awards requested herein. *See* A.B. Data Decl. ¶17 and Ex. F to the A.B Data Decl.

A lodestar cross-check further confirms the fairness and reasonableness of Co-Lead Counsel's fee request. Co-Lead Counsel spent a total of over 16,091 hours of professional time having a market value of $9,832,161.00 in prosecuting the claims in this litigation. ¶95. The

---

[2] The deadline to file objections and to request exclusion from the Settlement is April 24, 2025. Co-Lead Counsel will file a reply brief updating the Court after this deadline has passed.

2

requested one third award will result in a lodestar multiplier of approximately 2.71 which is within the range of reasonable multipliers that courts in the Second Circuit routinely award. *See infra* at 16-18.

In addition, the litigation expenses for which Co-Lead Counsel request reimbursement are modest given the size and scope of this litigation and are common litigation expenses necessary for the prosecution of the action. Moreover, the requested awards to Lead Plaintiffs are reasonable given the considerable time spent and service that they provided to the Settlement Class.

For these reasons, and as further set forth below, Co-Lead Counsel and Lead Plaintiffs respectfully submit that the requested award of attorneys' fees amounting to one third of the Settlement Amount plus interest; reimbursement of litigation expenses in the amount of $224,744.92 plus interest; and awards of $15,000 to each of the three Lead Plaintiffs are eminently reasonable and should be granted.

## II. THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES

### A. The Guiding Principle for Fee Awards

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has also held that attorneys who create a "common fund" are entitled to "a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco*

3

*Instruments Inc. Sec. Litig*., 2007 WL 4115808, at *2 (S.D.N.Y Nov. 7, 2007); *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.      The Court Should Award Counsel a Reasonable Percentage of the Fund**

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 121 (2d Cir. 2005) (superseded on other grounds)).  The Supreme Court and the Private Securities Litigation Reform Act ("PSLRA") suggest that a reasonable fee in a common-fund case "is based on a percentage of the fund bestowed on the class," *see Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), and courts in the Second Circuit "often and emphatically . . . note[] [that] the percentage of recovery methodology is considered the 'most efficient and logical means' for calculating attorneys' fees," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 5, 2010) (citation omitted); *see also Wal-Mart*, 396 F.3d at 121 (noting the "trend in this Circuit is toward the percentage method," rather than the lodestar method); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing 15 U.S.C. §78u-4(a)(6) and noting "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities class actions").

"There are several reasons that courts prefer the percentage method," including, among others, that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution

4

of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, 2011 WL 4357376, at \*14-15 (S.D.N.Y. Sept. 16, 2011) (citations and quotation marks omitted).

In sum, examining the fee as a percentage of the Settlement Class's recovery is the most logical and appropriate method to determine the fee's reasonableness, and should be used here.

## III.    THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).  Consideration of these factors supports the reasonableness of the requested fee.

### A.    Co-Lead Counsel's Expended Time and Labor Support the Requested Fee

The time and effort expended by Co-Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee.  As set forth in greater detail in ¶¶9, 13-42 of the Joint Declaration, Co-Lead Counsel:

- Conducted an extensive review of all relevant public filings and other publicly available information concerning the Company, the SPAC with which the Company merged (Altimeter Growth Corp. ("AGC")), and/or Defendants;

5

- Thoroughly researched the applicable law governing the claims and potential defenses involved, which included previously untested claims in the de-SPAC IPO transaction context;

- Consulted with experts on damages and causation, among other issues;

- Drafted an amended complaint, responded to Defendants' motion to dismiss, prepared for and delivered oral argument, and prevailed in part on the motion to dismiss;

- After the motion to dismiss was denied in part and discovery was permitted, conducted widespread discovery, which included (i) exchanging initial disclosures; (ii) exchanging and responding to Party requests for the production of documents; (iii) serving ten subpoenas on relevant third parties and negotiating document productions therefrom; (iv) negotiating a protective order and ESI protocol; (v) negotiating a search protocol with Defendants, pursuant to which Defendants and third parties produced nearly 300,000 pages of documents that Co-Lead Counsel reviewed and analyzed; (vi) producing more than 900 pages of documents from Lead Plaintiffs; and (vii) causing to be issued letters rogatory commanding production of information in certain foreign countries;

- Prepared a motion for class certification;

- Prepared detailed mediation statements and reply mediation statements, and engaged in two full-day mediation sessions with an experienced mediator, David Murphy which, after further negotiations after the mediations were unsuccessful, ultimately led to a Settlement that is highly favorable to the Settlement Class;

- Negotiated the terms of the Settlement, including the Stipulation and exhibits attached thereto;

- Worked with a consulting damages expert to draft a plan of allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly;

- Drafted the preliminary approval motion and supporting papers;

- Prepared for and attended the preliminary approval hearing;

- Worked with the Court-appointed Claims Administrator to provide notice to the Settlement Class; and

- Drafted the final approval motion and supporting papers.

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a motion for distribution. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig*., 2015 WL 6971424, at *27 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this case by Co-Lead Counsel to obtain the $80,000,000 Settlement confirms that the fee request is reasonable.

**B.    The Risks of Litigation Support the Requested Fee**

"[T]he risk of success [i]s 'perhaps the foremost' factor to be considered" in determining

a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis.").

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010), and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *Flag Telecom*, 2010 WL 4537550, at *27 (internal quotation marks omitted). "As with any securities litigation case, it would be difficult for Lead Plaintiff[s] to prove loss causation and damages at trial…. Lead Plaintiff[s] would risk recovering nothing without a settlement." *See, e.g., In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015).

The many risks that Co-Lead Counsel faced in prosecuting this suit more than justify the requested one third fee. *See, e.g.*, ¶¶43-66. From the outset of this Action, Co-Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than three] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Co-Lead] Counsel have not

been compensated for any time or expenses since this case began more than [three] years ago." *Flag Telecom,* 2010 WL 4537550, at *27. Co-Lead Counsel's commitment was substantial: $9,832,161.00 in lodestar and $224,744.92 in out-of-pocket costs. Had they not obtained a recovery, these sums and more could have all been lost. *See Gross v. GFI Grp., Inc.*, 784 Fed. App'x 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action); *see also* ¶¶93-95 (lodestar), 109-19 (expenses) & Joint Declaration Ex. 3.

Defendants, represented by world-class counsel at Skadden, Arps, Slate, Meagher & Flom LLP, and Ropes & Gray LLP, have hotly contested this litigation at every step, and inevitably would have continued to do so if the litigation had continued. Although the Court denied, in part, the motions to dismiss, Lead Plaintiffs would have faced significant hurdles in connection with summary judgment challenges and ultimately proving material falsity and overcoming Defendants' negative causation defense. This is in addition to the substantial burdens of class certification, and prevailing at trial, as well as in likely appeals – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, in recent years, securities class actions that survive pleading-stage motions to dismiss have faced increasing risk of failure at class certification and on *Daubert* motions, summary judgment, at trial, and on appeal. *See, e.g.*, *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 5107289, at *1 (S.D.N.Y. Dec. 13, 2024). Falsity and negative causation posed significant obstacles at summary judgment or trial. ¶¶48-61. Section 11 claims would also require tracing transactions to the Proxy/Registration Statement, often a difficult task. ¶45; *see Slack Techs., LLC v. Pirani,* 598 U.S. 759, 770 (2023); *In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

If this case continued, Lead Plaintiffs would need to convince the Court to certify a class for litigation purposes, which Defendants could contest at a later stage of the proceedings. Even if the Court granted class certification, risks to maintaining certification would persist: Defendants could petition to appeal the certification order under Rule 23(f) or move for modification or decertification at any point prior to final judgment. ¶¶44-47. *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) (reversing class certification order under Fed. R. Civ. P. 23(f) more than ten years after the case was filed).

At trial, Lead Plaintiffs would face significant risks as to both liability and damages. This case is more complex than most, involving a de-SPAC transaction and operations in numerous foreign countries, which requires significant costs, delay and uncertainties in obtaining discovery necessary to prove Lead Plaintiffs' claims at trial. The Parties sharply disputed whether problems with rising incentives and driver shortages were disclosed, whether any misrepresentations were made, whether declines in stock price following the de-SPAC were proximately caused by the alleged misrepresentations or omissions, and whether post-de-SPAC purchasers could trace their purchases to the Proxy/Registration Statement. While Co-Lead Counsel believe they could support these claims at trial, they acknowledge that the fact that key evidence was spread across the several Asian markets in which Grab operated rendered discovery difficult and expensive. Lead Plaintiffs' claims would also be subject to complex expert testimony, leading to a "battle of the experts" in which Defendants might prevail. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001); *see also* ¶¶48-61.

Moreover, even if Lead Plaintiffs prevailed at trial, a jury could award damages far lower than Lead Plaintiffs' estimation. Lead Plaintiffs also recognize that the evidence in this Action is likely susceptible to different interpretations. The jury might not agree that the evidence

10

demonstrates that Defendants made materially false and misleading statements or caused Lead Plaintiffs' losses. Lead Plaintiffs would also face trial challenges concerning proof of control and the measure of damages. And, even if successful, Lead Plaintiffs would still face the risk of a dispositive post-trial motion or reversal on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction); *see also* ¶¶62-63.

Given these substantial litigation risks, the achievement of an $80 million Settlement confers a strong benefit upon the Settlement Class and supports the requested fee.

### C.     The Magnitude and Complexities of the Litigation Support the Requested Fee

In addition to the specific challenges discussed above, courts recognize that "virtually all securities actions [are] inherently complex." *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *19 (S.D.N.Y. Dec. 18, 2019); *see also In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."); ¶65.

### D.     The Quality of Counsel's Representation Supports the Requested Fee

The quality of the representation by Co-Lead Counsel is another important factor that supports the reasonableness of the requested fee. Here, "the quality of the representation of [Co-Lead] Counsel is best evidenced by the quality of the result." *Veeco*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The Settlement provides an outstanding result for the Settlement Class in light of the serious risks of continued

11

litigation.  Had they prevailed on every issue at trial, Co-Lead Counsel, after consulting with experts, estimate that the maximum recoverable damages were between $599 million and $898 million for the claims the Court allowed to proceed to discovery.  Thus, the $80 million Settlement represents approximately 8.9% and 13.4% of the maximum potential recoverable damages.  This result is far above "the range of the average recovery in shareholder litigation."  *P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, 2018 WL 889472, at *3 (S.D.N.Y. Feb. 1, 2018) (approving settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and $19.64 million); *see also In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483 (S.D.N.Y April 30, 2024) (approving settlement in securities class action recovering between 3.9% to 7.8% of estimated damages); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 & n.11 (E.D.N.Y. Jan. 4, 2024) (approving settlement amount of $4 million, representing approximately 1% of maximum recoverable damages); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *10-11 & n.11 (E.D.N.Y. Aug. 24, 2023) (finding a recovery of 2.3% of maximum potential damages to be adequate relief); *In re Frontier Comm's Corp.*, 2022 WL 4080324, at *14 (D. Conn. May 20, 2022) (approving 7% of estimated maximum recoverable damages).

The percentage recovery also exceeds the 1.2% median settlement value in 2024 for all securities class actions.  *See* Joint Declaration Ex. 2 (NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review at pp. 26-27 (Jan. 22, 2025)).[3]  Such a result would not have been achieved if not for the high quality of Co-Lead Counsel's representation, whose creative investigation resulted in a compelling amended complaint, whose

---

[3] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted.

skill largely defeated Defendants' motion to dismiss, and who aggressively pressed discovery and negotiated an outstanding result for the Settlement Class in a case fraught with risks and obstacles.

In this case, the requested fee is further justified because Lead Counsel independently investigated and developed the claims alleged without the benefit of a related regulatory investigation or settlement. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel did not have the benefit of a road map established by a government investigation off which they could piggy back, but instead independently developed factual allegations and legal theories sufficient to survive the PSLRA's heightened pleading standards."); *City of Providence*, 2014 WL 1883494, at *16 (noting "there was no road-map for Lead Counsel to follow in this Action as no governmental agency investigated or brought action against Defendants"); *In re Giant Interactive Grp. Inc.*, 279 F.R.D. at 164-65 (fee supported "in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement").

The quality of representation is also reflected in the experience of Co-Lead Counsel. All specialize in securities class action litigation, and collectively have over a hundred years of experience that contributed to the strong result here. *See* Joint Declaration Exs. 3A, 3B. The quality of opposing counsel also matters. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting the award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work") (internal citations omitted),

13

*aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Here, Defendants were represented by Skadden, Arps, Slate, Meagher & Flom LLP and Ropes & Gray LLP, both well-recognized global defense firms that vigorously represented Defendants throughout this Action.    ¶106.    Notwithstanding this formidable opposition, Co-Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action enabled Co-Lead Counsel to achieve a highly favorable Settlement.  ¶¶90-106.  As a result, this factor supports the requested fee.

### E.    The Requested Fee is a Reasonable Percentage of the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'"  *Comverse Tech.*, 2010 WL 2653354, at *3.  The one-third fee requested by Co-Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable securities class actions.  *See, e.g.*, *Nichols v. Noom, Inc.*, 2022 WL 2705354, *10 (S.D.N.Y. July 12, 2022) (awarding one-third of $56 million cash settlement fund and stating that "[a] fee equal to one-third of a settlement fund is routinely approved in this Circuit"); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the settlement fund of over $510 million); *Landmen Partners Inc. v. The Blackstone Grp. L.P.*, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million settlement fund); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding 33 1/3% of $31.9 million settlement); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (awarding 33 1/3% of $44 million settlement); *In re Facebook*, 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust*

*Litig.*, 2020 WL 6193857, at *1, *5-6 (E.D.N.Y. Oct. 7, 2020) (awarding 33 1/3% of $51.25 million settlement).

Indeed, a one-third fee is so frequently awarded in class actions in this District that many courts recognize it to be the "norm" or "typical." *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one third of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of awards in this Circuit.").

Thus, Co-Lead Counsel's requested fee is typical and consistent with other fees awarded in the Second Circuit for comparable securities class actions.

## F.        Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).    In particular, securities class actions like this complement governmental enforcement and protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights,*

15

*Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate [Co-Lead] Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.  As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved."  *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9.  Consequently, public policy considerations favor Co-Lead Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *17 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." (internal quotation marks omitted)).

### G.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50.  In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors.  *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and

16

other factors.'"); *Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").[4]

"In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) (collecting cases); *see also Sewell v. Bovis Lend Lease, Inc*., 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six"). Even higher multipliers have been awarded, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012); *see also Del Global Techs. Corp.*, 186 F. Supp. 2d at 369 (finding that a multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country" in securities cases); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.97 multiplier).

Here, if the Court decides to consider it, a lodestar cross-check would support the requested fee. Co-Lead Counsel collectively devoted a total of $16,091.16 hours to the prosecution of this Action, resulting in a lodestar of $9,832,161.00 and a multiplier of 2.71. ¶¶ 94-96. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other

---

[4]The Supreme Court and courts in this Circuit have long approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

complex litigation. *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (lodestar cross check of 3.5 held reasonable on appeal). The reasonableness of this lodestar multiplier is further confirmed by recent fee awards from this District. *See, e.g., In re Wells Fargo & Co. Sec. Litig.*, 2023 WL 11885184, at *1 (S.D.N.Y. Sep. 8, 2023) (awarding fees representing a multiplier of 3.8 as referenced in the fee brief at ECF No. 189 at 21); *see also In re Barclays PLC Sec. Litig.*, 2025 WL 842939, at *1 (S.D.N.Y. Mar. 18, 2025) (awarding fees with a lodestar multiplier of 3.18); *In re Luckin Coffee Inc. Sec. Litig.*, 2022 WL 22853339, at *2 (S.D.N.Y. Jul. 22, 2022) (awarding fees with a lodestar multiplier of 4.6); *In re BRF S.A. Sec. Litig.*, 2020 WL 10618214, at *1 (S.D.N.Y. Oct. 23, 2020) (awarding $10 million in fees with a lodestar multiplier of 5.57 as calculated from the lodestar of $1,794,898.00 plus interest, from the fee brief at ECF No. 166 at 9).

Thus, the lodestar cross-check confirms that the requested fee is reasonable.

### H. The Reaction of the Settlement Class Supports the Fee Request

The overwhelmingly positive reaction by Settlement Class Members also supports the requested fee. "[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee." *Flag Telecom*, 2010 WL 4537550, at *29. The Claims Administrator mailed or emailed 70,229 copies of the Court-approved Notice to Settlement Class Members. A.B. Data Decl. at ¶12. The Notice was also made available to the public on the Claims Administrator's website, and a Summary Notice was published on two national news wires. *Id*. at ¶¶13, 15.

The Notice informed Settlement Class Members that Co-Lead Counsel would apply for attorneys' fees of up to one-third of the Settlement plus interest, litigation expenses of up to $400,000 plus interest, and awards to each of the Lead Plaintiffs of up to $15,000. The Notice

18

also advised Settlement Class Members of their right to object to any or all of these requests; however, not a single objection was raised.

That, to date, not even one Settlement Class Member has objected and only one has requested exclusion "is an exceptionally strong indication of the fairness of the Settlement," and supports the fee request. *Flag Telecom*, 2010 WL 4537550, at *16; A.B. Data Decl. at ¶¶17-18; *see also Silverstein v. Alliance Bernstein*, L.P., 2013 WL 7122612, (S.D.N.Y. Dec. 20, 2013) (finding lack of objections and low exclusion rate supported fee request); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *16 (C.D. Cal. June 10, 2005) (concluding "that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"). Lastly, the three Lead Plaintiffs each support the award of the requested fee. *See* Joint Declaration Exs. 4A-4C.

## IV. CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED

Co-Lead Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve the $80 million gross recovery for the Settlement Class. Co-Lead Counsel have incurred litigation expenses of $224,744.92, for which they have not been reimbursed to date. ¶¶98, 109. The amount requested is significantly less than that identified in the Notice, which apprised Settlement Class Members that Co-Lead Counsel could seek expenses in an amount up to $400,000, plus interest accrued.

No Settlement Class Member has objected to that request. A.B. Data Decl. ¶18. Moreover, the three Lead Plaintiffs each support it. *See* Joint Declaration Exs. 4A-4C. These expenses should be reimbursed. Consistent with other jurisdictions, courts in the Second Circuit find that expenses

for "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review[] are the type for which 'the paying, arms' length market' reimburses attorneys" and thus "are properly chargeable to the Settlement fund." *Global Crossing*, 225 F.R.D. at 468 (quoting *TBK Partners, Ltd. v. Warshow*, 1977 WL 1047, at \*3 (S.D.N.Y. Oct. 5, 1977)). Co-Lead Counsel incurred only those expenses necessary to advance the interests of the Settlement Class.

Here, Co-Lead Counsel seek reimbursement for expenses primarily from mediation fees, expert witness fees, investigative fees, eDiscovery hosting, database charges, local counsel fees for issuance of Letters Rogatory in Southeast Asia, and reasonable travel expenses (*see* ¶¶109-19 & Joint Declaration Ex. 3), each of which is the type "the paying, arms' length market" reimburses to attorneys. *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at \*3 (S.D.N.Y. June 1, 2012); *see also In re Ashanti Goldfields Sec. Litig.*, 2005 WL 3050284, at \*5 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses … This is not unusual in securities litigation actions"). Similarly, courts routinely reimburse expenses for "travel including air and ground transportation, hotels, and meals . . . electronic discovery fees" and "other incidental expenses" such as "copying, service of process, [and] filing fees." *Christine Asia Co v. Yun Ma*, 2019 WL 5257534, at \*20 (S.D.N.Y. Oct. 16, 2019).

The expenses for which Co-Lead Counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Settlement Class and are of the type routinely charged to paying clients. *Id*. The reasonableness of these expenses is further confirmed by the fact that, in the aggregate, they only amount to a tiny 0.28% of the Settlement Fund. For all of these reasons, these expenses should be reimbursed out of the Settlement Fund.

## V.    THE AWARDS TO LEAD PLAINTIFFS SHOULD BE APPROVED

Lead Plaintiffs also request that the Court award them each $15,000 as reimbursement for the significant time they expended in representing the Settlement Class in the prosecution of claims against Defendants. *See* 15 U.S.C. §78u-4(a)(4). This amount was disclosed in the Notice and, no Settlement Class Member has objected to the award amount. "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses.… [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. at 165.

Here, Lead Plaintiffs each took an active role in the litigation by, among other things, reviewing all significant pleadings and briefs in the Action, communicating regularly with Co-Lead Counsel regarding developments in the Action, responding to discovery requests and searching for and producing responsive documents requested in this litigation, monitoring and consulting with counsel as to the progress of settlement negotiations, attending the Mediations, approving the Settlement, and otherwise being involved in the litigation. *See* Joint Declaration Exs. 4A-4AC. Lead Plaintiffs estimate that they each spent approximately 150 hours on these efforts for the benefit of the Settlement Class. *See* Joint Declaration Exs. 4A ¶7, 4B ¶6, 4C ¶6; *see also* ¶¶120-23.

These proposed $15,000 awards are modest awards in this Circuit. *See In re Qudian Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000 and another class representative $12,500 from $8.5 million settlement fund); *In re Northern Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *17 (E.D.N.Y. Jan. 26, 2024) (awarding $20,000 to lead plaintiff as "in line with or . . . more modest than others that have been awarded"); *Flag Telecom*, 2010 WL 4537550 at *31 (approving award of $100,000 to lead plaintiff); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *2 (S.D.N.Y April 30, 2024) (granting lead plaintiff $25,000 and four additional named plaintiffs $15,000 each).

In addition, Lead Plaintiffs note that, in total, their requested awards are less than 0.06% of the common fund, which is a low percentage that further supports granting the service awards. *See Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (approving service award and noting that "the awards only represent approximately 0.3% of the total

22

settlement amount"). As a percentage of the common fund, these proposed Lead Plaintiff awards are very modest.[5]

Thus, awards of $15,000 to each of the Lead Plaintiffs is appropriate under these circumstances.

## VI.    CONCLUSION

Co-Lead Counsel respectfully request that the Court approve the fee and expense application and enter an Order awarding Co-Lead Counsel one-third of the Settlement Amount plus interest, reimbursement of $224,744.92 in litigation expenses plus interest, and awarding $15,000 each to Lead Plaintiffs Si Fan, Amit Batra, and SLG Cloudbank Holdings, LLC.

Dated: April 10, 2025                                Respectfully submitted,

**LEVI & KORSINSKY, LLP**

_/s/ Shannon Hopkins_
Shannon L. Hopkins
Gregory M. Potrepka
Morgan M. Embleton (_pro hac vice_)
1111Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com

_Co-Lead Counsel for Lead Plaintiffs_

---

[5] _See, e.g._, _In re Reconnaissance Energy Afr. Ltd. Sec. Litig._, 2024 WL 5265298, at *1 (E.D.N.Y. Dec. 30, 2024) (awarding $12,000 to lead plaintiff in a case with an approximately $7 million settlement) (0.17% of the fund); _Alaska Elec. Pension Fund v. Bank of Am. Corp._, 2018 WL 6250657, at *3 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 each to six plaintiffs and $100,000 each to two others, finding "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the incentive awards requested [ ] appropriate" and "in the aggregate they amount to a miniscule portion of the settlement fund") (0.09% of the fund).

**POMERANTZ LLP**

*/s/ Brian P. O'Connell*
Joshua B. Silverman
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jeremy A. Leiberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165
Tel.: (212) 697-6484
Fax: (212) 697-7296
eitank@bandg.com

*Additional Counsel for Lead Plaintiffs*

24

**COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c) and INDIVIDUAL RULE 3(C)**

The undersigned, counsel of record for Lead Plaintiffs Si Fan and Amit Batra, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 7.1(c) regarding Length of Memoranda of Law, effective January 2, 2025, and this Court's Individual Rule 3.C.

Executed on this 10th day of April, 2025.

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins

25