# Exhibit 2

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW

Edward Flores and Svetlana Starykh[1]

Filings Flat Relative to 2023, Standard Filings Increase for Second Straight Year

Resolutions Rise, Led by Increase in Dismissals

22 January 2025

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts and attorneys' fee percentages, we hope you will contact us if you want to learn more about our research or our consulting and testifying experience in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

DAVID TABAK, PhD
Senior Managing Director



# INTRODUCTION

There were 229 new federal securities class action suits filed in 2024, equaling the total number of filings seen in 2023. Standard cases, containing alleged violations of Rule 10b-5, Section 11, and/or Section 12, grew for a second consecutive year with 214 cases filed in 2024, an increase of 20% relative to 2022. Filings against companies in the technology and healthcare sectors combined accounted for more than half of all filings, and the Second and Ninth Circuits accounted for 61% of filings. Among filings of standard cases, 41% had an allegation related to missed earnings guidance while only 8% had an allegation related to merger-integration issues. There were 36 standard filings against foreign companies, of which 33% had an allegation related to regulatory issues.

Suits with AI-related claims more than doubled relative to 2023, with 13 such suits filed in 2024. Nineteen cases with COVID-related claims were filed in 2024, a 46% increase from 2023. On the other hand, crypto- and SPAC-related filings continue to decline, with only eight and nine suits filed in each category, respectively.

There were 217 cases resolved in 2024, consisting of 124 dismissals and 93 settlements, ending a six-year decline in resolutions seen from 2017 to 2023. The 17% increase in resolutions was mostly driven by an increase in the number of dismissed cases with Rule 10b-5, Section 11, and/ or Section 12 claims. For cases filed in 2024, 7% have been dismissed and 93% remain pending.

Aggregate settlements totaled $3.8 billion in 2024, with the top 10 settlements accounting for approximately 60% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $1.1 billion, accounting for 27.3% of the 2024 aggregate settlement value. The average settlement value declined by 7% to $43 million in 2024, and the median settlement value slightly declined by 2% to $14 million. Overall, the distribution of settlement values for 2024 was largely similar to that of 2023.

# TRENDS IN FILINGS

Across full-year 2024, 229 new federal securities class action cases were filed in the United States, the same number as were filed in 2023 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, increased for a second straight year, with 214 new filings, and accounted for over 93% of all filings in 2024.[3] Of these, filings with Rule 10b-5-only claims continue to make up the majority of standard cases with 198, an increase of 8% relative to 2023 and 46% since 2022, marking a 10-year high. On the other hand, there were only 16 standard cases with Section 11 and/or Section 12 claims (with or without an accompanying Rule 10b-5 claim), a 62% decline relative to 2022 and the lowest level of such filings over the past decade. This trend mirrors the slowdown in US IPO activity in recent years, which has seen the number of initial public offerings decline from a high of 1,035 in 2021 to at most 225 per year over 2022–2024.[4] Cases involving merger objections and crypto unregistered securities continue to decline, with only five suits filed in each category.[5] See Figure 2.

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2024



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data are from World Federation of Exchanges (WFE). The 2024 listings data are as of November 2024.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 2. **Federal Filings by Type**
January 2015–December 2024



Filings with Rule 10b-5-only claims continue to make up the majority of standard cases with 198, an increase of 8% relative to 2023 and 46% since 2022, marking a 10-year high.

Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector and the healthcare technology and services sector together comprised 56% of new filings in 2024, up from 41% in 2023. The percentage of suits in the finance sector declined by nearly half to 10%, partially due to a decline in filings against banking institutions. Elsewhere, the consumer durables and non-durables sector accounted for 8% of filings, roughly in line with recent years. See Figure 3.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2020–December 2024



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second and Ninth Circuits continue to be the jurisdictions in which the majority of cases are filed, together accounting for 134 of the 219 non-merger objection, non-crypto unregistered securities filings in 2024. The Ninth Circuit saw 72 new filings, 11% more than in 2023 and marking a second consecutive year that filings have increased, and the Second Circuit witnessed 62 new filings, eight more than in 2023. After hitting a five-year high of 35 filings in 2023, filings in the Third Circuit declined by nearly half in 2024, with only 18 suits filed. Elsewhere, the First, Fourth, and Fifth Circuits each saw at least 10 suits filed, marking a five-year high in their respective circuits. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2020–December 2024



Excluding merger objections and crypto unregistered securities cases, the Second and Ninth Circuits accounted for 61% of filings.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Among filings of standard cases, 41% included an allegation related to missed earnings guidance and 32% included an allegation related to misled future performance.[6] On the other hand, the percentage of standard cases containing an allegation related to accounting issues declined by over one-third to 13%. The percentage of standard cases containing an allegation related to merger-integration issues continued to decline by over one-quarter to 8%, partially driven by a decline in SPAC-related filings. See Figure 5.

Figure 5. **Allegations in Federal Filings**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2020–December 2024



The percentage of standard cases containing an allegation related to accounting issues declined by over one-third.

# FILINGS AGAINST FOREIGN COMPANIES

While the percentage of foreign companies listed on US stock exchanges has steadily increased over the past 10 years, there has been a notable decline in the percentage of federal filings against foreign companies since 2020.[7] In 2024, 25.9% of US listings were represented by foreign companies, a 10-year high, though only 16.8% of filings of standard cases were against foreign companies, a 10-year low. See Figure 6.

Figure 6. **Foreign Companies: Share of Federal Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2015–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

Over the past four years, the share of US filings against foreign companies has sharply decreased.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

There were 36 standard suits filed against foreign companies in 2024, a 5% decline from 2023, when 38 such suits were filed. The number of filings against companies based in Europe has steadily grown over the past three years, going from nine cases in 2021 to 17 cases in 2024. On the other hand, suits against companies based in China or Hong Kong declined from 24 in 2021 to four in 2024—an 83% decrease over the same three-year period. Elsewhere, there were six suits filed against companies based in Canada, four suits against companies in Israel, and one suit against a company in Australia. See Figure 7.

Figure 7. **Federal Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2015–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Among standard filings against foreign companies, 39% included an allegation related to missed earnings guidance, and 8% included an allegation related to merger-integration issues, roughly in line with the analogous rates for standard filings against US companies. Allegations related to regulatory issues were twice as common among foreign companies, however, with 33% of standard filings against foreign companies having this allegation, compared with 16% for standard filings against US companies. See Figure 8.

Figure 8. **Allegations in Federal Filings by US and Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2024–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas we have identified for securities class actions over the past five years (see Figures 9 and 10).

Figure 9. **Number of Crypto Federal Filings**
January 2016–December 2024



## Crypto Cases

Crypto-related filings, comprising cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency industry, reached a peak in 2022 but have declined substantially since then. While 2022 saw 29 crypto-related filings, there were only 17 such filings in 2023 and eight in 2024. Of the eight filings in 2024, five suits included allegations the cryptocurrencies or nonfungible tokens (NFTs) at issue constituted sales of unregistered securities.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## COVID-19

While it has been approximately five years since the start of the COVID-19 pandemic, suits with COVID-19-related claims continue to be filed. There were 19 such suits in 2024, a 46% increase relative to the 13 filings seen in 2023.

## Artificial Intelligence

As interest in artificial intelligence (AI) has increased in recent years, securities class action suits with AI-related allegations have been filed in greater frequency. In 2024, there were 13 AI-related filings in which companies are alleged to have overstated the use or effectiveness of AI in their businesses, more than double the number of filings seen in 2023. Seven were filed in the second half of 2024, including suits against Oddity Tech Ltd., Super Micro Computer, Inc., and Gitlab Inc.

## SPAC

Filings related to special purpose acquisition companies (SPACs) have continued to decline since their peak in 2021, when 36 securities class action suits were filed. There were only nine SPAC-related filings in 2024. This trend is consistent with the decline in SPAC IPOs in recent years, which saw a high of 613 in 2021 but dropped to only 57 in 2024.[8]

## Environment

There were five environment-related securities class action suits filed in 2024, a 38% decline from the eight cases seen in 2023. Four of these cases were filed in the first half of 2024 against Cummins Inc., SSR Mining Inc., GrafTech International Ltd., and AXT, Inc.[9] In the second half of 2024, a suit was filed against RELX Plc over greenwashing allegations.[10]

## Cybersecurity and Customer Privacy Breach

From 2020 to 2022, there were at least four securities class action suits filed each year related to cybersecurity and/or customer privacy breach. In 2023 and 2024, there were two such filings each year. Suits in 2024 included a filing against PDD Holdings Inc. over allegations its applications installed malware on users' phones and against CrowdStrike Holdings, Inc. in connection with the worldwide IT outages caused by a faulty software update in July 2024.[11]

## Bribery/Kickbacks

Between 2020 and 2022, there were 12 cases filed related to allegations of bribery or kickbacks. While there were no bribery/kickback-related cases filed in 2023, there were two such cases filed in 2024.

## Money Laundering

While 2022 and 2023 saw only one suit filed with claims related to money laundering, there were two such suits filed in 2024. These suits involved TD Bank in connection with issues involving its anti-money laundering program and Customers Bancorp, Inc. over inadequate anti-money laundering practices.

## Banking Turmoil

Between March and May 2023, there was a string of bank collapses and failures, which led to 11 securities class action suits filed against banking institutions in 2023. There have been no filings associated with banking turmoil since then; as a result, this development area is no longer presented in Figure 10.

Figure 10.  **Event-Driven and Other Special Cases by Filing Year**
January 2020–December 2024



Number of Federal Filings

# TRENDS IN RESOLUTIONS

From 2017 to 2023, there was a decline in the number of resolved federal securities class action cases. This six-year decline ended in 2024, which saw the number of resolutions increase by 17% from 186 in 2023 to 217 in 2024. Of these resolved cases, 93 were settlements and 124 were dismissals.[12] Although the number of settlements increased by only 3% in 2024, the number of dismissals increased by 29% from 96 in 2023, largely driven by a rise in dismissals involving standard cases. Standard cases accounted for more than 90% of resolutions, comprising 197 of 217 resolved cases. See Figure 11.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
January 2015–December 2024



Excluding suits involving merger objections and crypto unregistered securities, historically, a minority of all dismissed cases are voluntarily dismissed by plaintiffs, though the percentage of voluntary dismissals has varied over time. For instance, while 35% of dismissed cases were voluntarily dismissed in 2021, this percentage has declined in subsequent years to 24% in 2024. See Figure 12.

Figure 12. **Type of Dismissal as Percentage of Dismissed Cases by Resolution Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



Note: Court dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Since 2015, more filed cases have been dismissed than settled, with approximately 29% of filings remaining pending. This is consistent with historical trends, which indicate dismissals tend to occur earlier in the litigation cycle and settlements occur later. For cases filed in 2024, 7% have been dismissed and 93% remain pending as of 31 December 2024. See Figure 13.

Figure 13. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Since 2015, more filed cases have been dismissed than settled, with approximately 29% of filings remaining pending.

For cases dismissed between 2015 and 2021, the median time from the filing of the first complaint to resolution was relatively stable at around 1.4 years. Since 2021, the median time to dismissal has steadily increased, reaching a 10-year high of 2.0 years in 2024. For cases settled between 2015 and 2021, the median time from filing of the first complaint to resolution was relatively stable at around 3.0 years. While the median time to settlement notably increased to 3.9 years in 2023, it declined to 3.2 years in 2024. See Figure 14.

Figure 14. **Median Time from First Complaint Filing to Resolution**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the past 10 years in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. Of these, a decision was reached in 74% of these cases, while 19% were voluntarily dismissed by plaintiffs, 7% settled before a court decision was reached, and 1% were withdrawn by defendants. Among the cases in which a decision was reached, 61% of motions were granted (with or without prejudice) while 39% were denied either in part or in full. See Figure 15.

Figure 15. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2015–December 2024



# Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 61% of the cases in which a motion for class certification was filed, while nearly all remaining 39% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 83% of cases and denied (with or without prejudice) in 11% of cases. See Figure 16.

Figure 16. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Approximately 62% of decisions on motions for class certification occur within three years of the filing of the first complaint, with 94% of decisions occurring within five years (see Figure 17). The median time is about 2.7 years.

Figure 17. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2015–December 2024



The median time (for decisions on motions for class certification) is about 2.7 years.

# TRENDS IN SETTLEMENT VALUES[13]

In 2024, aggregate settlements totaled $3.8 billion, nearly matching the inflation-adjusted total of $4.0 billion from 2023 (see Figure 18). After excluding cases involving merger objections, crypto unregistered securities, or settlements of $0 to the class, around 42% of settlements had a recovery of less than $10 million, another 40% had a settlement between $10 million and $49.9 million, and 18% settled for $50 million or more, largely mirroring the distribution of settlement values from 2023 (see Figure 19). The average settlement value was $43 million, a roughly 7% decline relative to the 2023 inflation-adjusted average settlement value of $46 million (see Figure 20).[14]

Figure 18. **Aggregate Settlement Value**
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 19.  **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2020–December 2024



Figure 20.  **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

While 2023 saw a $1 billion settlement by Wells Fargo & Company,[15] there were no settlements of $1 billion or higher in 2024, and the average settlement value excluding such cases was also $43 million (see Figure 21). The median settlement value was $14.0 million, roughly in line with the inflation-adjusted median settlement values in 2022 and 2023 (see Figure 22).

Figure 21.  **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2015–December 2024



Figure 22.  **Median Settlement Value**

Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

January 2015–December 2024



The median settlement value was $14.0 million, roughly in line with the inflation-adjusted median settlement values in 2022 and 2023.

# TOP SETTLEMENTS

The 10 largest settlements in 2024 ranged from $85 million to $490 million and collectively accounted for 60% of the $3.8 billion aggregate settlement amount. There were four settlements of at least $200 million, which include suits against Uber Technologies, Inc. ($200 million) over alleged misrepresentations in connection with its initial public offering,[16] Alphabet Inc. ($350 million) in a case involving a data privacy breach,[17] Under Armour, Inc. ($434 million) over claims the company hid declining demand of its products,[18] and Apple Inc. ($490 million) in a matter over alleged misrepresentations involving iPhone sales in China.[19] The Third and Ninth Circuits each accounted for four suits in the top 10 largest settlements. See Table 1.

Table 1.  **Top 10 2024 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Apple Inc. | 16 Apr 2019 | 17 Sep 2024 | $490.0 | $110.5 | 9th | Electronic Technology |
| 2 | Under Armour, Inc. | 10 Feb 2017 | 7 Nov 2024 | $434.0 | $116.3 | 4th | Consumer Non-Durables |
| 3 | Alphabet, Inc. | 11 Oct 2018 | 24 Sep 2024 | $350.0 | $68.0 | 9th | Technology Services |
| 4 | Uber Technologies, Inc. | 4 Oct 2019 | 5 Dec 2024 | $200.0 | $61.2 | 9th | Transportation |
| 5 | Rite Aid Corporation | 2 Nov 2018 | 7 Feb 2024 | $192.5 | $59.2 | 3rd | Retail Trade |
| 6 | TuSimple Holdings, Inc. | 31 Aug 2022 | 2 Dec 2024 | $189.0 | $47.6 | 9th | Consumer Durables |
| 7 | Envision Healthcare Corporation | 4 Aug 2017 | 21 Mar 2024 | $177.5 | $54.8 | 6th | Health Services |
| 8 | Pattern Energy Group Inc. | 25 Feb 2020 | 3 May 2024 | $100.0 | $29.8 | 3rd | Utilities |
| 9 | Perrigo Company plc | 18 May 2016 | 5 Sep 2024 | $97.0 | $22.5 | 3rd | Health Technology |
| 10 | Becton, Dickinson and Company | 27 Feb 2020 | 22 Apr 2024 | $85.0 | $22.1 | 3rd | Health Technology |
| | **Total** | | | **$2,315.0** | **$592.0** | | |

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2024. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

Table 2.  **Top 10 Federal Securities Class Action Settlements (As of 31 December 2024)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
|  | Total |  |  | $32,334 | $13,249 | $1,017 | $3,358 |  |  |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[20]

A statistical review reveals that although settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 24% of Investor Losses, while for cases with $100 million or more in Investor Losses, the median settlement value is at or under 3.0% of Investor Losses. See Figure 23.

Figure 23. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Level of Investor Losses
Cases Settled January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Since 2015, annual median Investor Losses have ranged from a low of $358 million to a high of $1.76 billion. For cases settled in 2024, the median Investor Losses were $1.76 billion, the highest recorded value over the past 10 years. The median ratio of settlement amount to Investor Losses was 1.2% in 2024, a notable decline from the 1.8% median ratio seen over 2021–2023. See Figure 24.

Figure 24.  Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 25).

Among cases settled between January 2012 and December 2024, these factors in NERA's statistical model can explain more than 70% of the variation observed in actual settlements.

Figure 25. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

In the past decade, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $504 million to a high of $1.6 billion. In 2024, aggregate plaintiffs' attorneys' fees and expenses totaled $1.06 billion, nearly $90 million more compared with the $974 million seen in 2023 (see Figure 26). Plaintiffs' attorneys' fees and expenses comprised approximately 27.3% of the $3.8 billion aggregate settlement amount.

Figure 26. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2015–December 2024



For cases that have settled since the passage of the Private Securities Litigation Reform Act (PSLRA) in 1995, plaintiffs' attorneys' fees and expenses as a percentage of the settlement amount generally decline as the settlement size increases. For instance, for cases settled between 2015 and 2024, the median percentage of fees and expenses ranged from 36.0% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

Over the 2015–2024 period, median percentage of attorneys' fees have increased for settlements under $5 million, settlements between $100 and $500 million, and settlements over $1 billion, relative to the 1996–2014 period. This increase is more pronounced for settlements of $1 billion or higher, although this category has only five settlements in the post-2014 period (see Figure 27).

Figure 27.  **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

# CONCLUSION

Filings of federal securities class actions remained flat in 2024, with 229 suits filed. Of these, there were 198 suits with Rule 10b-5-only claims, a 10-year high, while there were only 16 suits with Section 11 and/or Section 12 claims, a 10-year low. After a dip in 2023, the percentage of filings against companies in the technology and healthcare sectors increased to 30% and 26%, respectively. The percentage of filings against foreign companies continues to decline, with only 16.8% targeting foreign companies. While suits with AI-related allegations doubled in 2024 to 13 filings, there were no suits related to banking turmoil, a category that saw 11 filings in 2023.

The number of resolved cases increased by nearly 17% from 186 in 2023 to 217 in 2024, ending a six-year decline in resolutions dating back to 2017. This increase in resolutions, consisting of 93 settlements and 124 dismissals, was mostly driven by an increase in the number of dismissed cases. For dismissed cases, the median time to dismissal increased from 1.4 years in 2021 to 2.0 years in 2024, while the percentage of voluntary dismissals declined from 35% to 24% over that same period. For settled cases in 2024, the average and median settlement values were $43 million and $14 million, respectively, a slight decline over their 2023 inflation-adjusted values.



# ▌NOTES

1  This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other researchers from NERA's securities and finance capability for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to US federal case filings and resolutions.

2  NERA tracks securities class actions that have been filed in US federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3  Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which are considered a separate category.

4  IPO figures taken from Stock Analysis, accessed 13 January 2025, available at https://stockanalysis.com/ipos/statistics/.

5  In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

6  Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

7  Here, a company is considered a foreign company based on the location of its principal executive office.

8  SPAC IPO figures taken from SPAC Data, accessed 13 January 2025, available at https://www.spacdata.com.

9  See Figure 8 of NERA's 2024 midyear report "Recent Trends in Securities Class Action Litigation: 2024 H1 Update," 6 August 2024, available at https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2024-h1-upd.html.

10  Sarah Jarvis, "RELX Hit with Proposed Greenwashing Class Action," *Law360.com*, 7 August 2024, available at https://www.law360.com/articles/1867368/.

11  Jordan Robertson and Evan Gorelick, "CrowdStrike and the Global IT Outage, Explained," *Bloomberg*, 19 July 2024, available at https://www.bloomberg.com/news/articles/2024-07-19/crowdstrike-microsoft-it-outage-what-caused-it-what-comes-next.

12  Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, and an ultimately unsuccessful motion for class certification.

13  For our settlement analyses, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

# NOTES

[14] While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger objection and non-crypto unregistered securities cases with settlements of more than $0 to the class.

[15] Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

[16] Bonnie Eslinger, "Uber Investors' Attys Awarded $58M In $200M IPO Suit Deal," *Law360.com*, 4 December 2024, available at https://www.law360.com/articles/2269355.

[17] Bonnie Eslinger, "Google Investors' Attys Snag $66.5M In $350M Privacy Deal," *Law360.com*, dated 30 September 2024, available at https://www.law360.com/articles/1884117.

[18] Hailey Konnath, "Under Armour to Pay $434M to End Securities Fraud Claims," *Law360.com*, dated 21 June 2024, available at https://www.law360.com/articles/1850514.

[19] Dorothy Atkins, "Apple's $490M Deal Over China Sales OK'ed, Attys Get $110M," *Law360.com*, 19 September 2024, available at https://www.law360.com/articles/1880634.

[20] NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## RELATED EXPERTS



**Edward Flores, MA**
Director
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh, MA**
Associate Director,
Securities Class Actions Database
New York City: +1 914 563 6761
svetlana.starykh@nera.com



**SUBSCRIBE**

To receive publications, news, and insights from NERA, please visit
**www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

# ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allow us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2025
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.