P5FLGraH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re GRAB HOLDINGS LIMITED                22 Civ. 2189 (JLR)
SECURITIES LITIGATION

                                           Conference
------------------------------x

                                           New York, N.Y.
                                           May 15, 2025
                                           11:40 a.m.

Before:

                    HON. JENNIFER L. ROCHON,

                                           District Judge

                         APPEARANCES

LEVI & KORSINSKY, LLP
     Attorneys for Plaintiffs
BY:  SHANNON L. HOPKINS
     -and-
POMERANTZ LLP
     Attorney for Plaintiff
BY:  BRIAN P. O'CONNELL
     JOSHUA B. SILVERMAN

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     Attorneys for the Grab Defendants
BY:  SUSAN L. SALTZSTEIN
     DAVID KIDD
     JEFFREY S. GEIER

ROPES & GRAY LLP
     Attorneys for Defendants
     Gerstner, Siam, Barton, Dozie
     and Ittycheria
BY:  ELANA STERN

P5FLGraH

(Case called; appearances noted)

THE COURT:  All right.  Let's get appearances.  Who do we have here on behalf of the plaintiffs?

MS. HOPKINS:  Good morning/afternoon, your Honor. Shannon Hopkins with Levi & Korsinsky for the plaintiffs.

THE COURT:  Thank you.

MR. O'CONNELL:  I will say the same thing as Ms. Hopkins.  Good morning/afternoon.  I am not sure exactly. This is Brian P. O'Connell on behalf of the plaintiffs and from Pomerantz LLP.

MR. SILVERMAN:  Hello, your Honor.  Josh Silverman on behalf of the plaintiffs from Pomerantz LLP.

THE COURT:  Thank you.

MS. SALTZSTEIN:  Good morning/afternoon, your Honor. Susan Saltzstein from Skadden Arps on behalf of the Grab defendants.  And I want to introduce David Kidd, who is a colleague and first time in court.

THE COURT:  Wonderful.  Welcome.

MR. GEIER:  Good morning, your Honor.  Jeffrey Geier, Skadden Arps, for the Grab defendants.

MR. HENNES:  I am going straight for the morning. David Hennes from Ropes & Gray on behalf of the Altimeter defendants, your Honor.

THE COURT:  Thank you.

MS. STERN:  Good morning, your Honor.  Elana Stern

P5FLGraH

from Ropes & Gray also on behalf of the Altimeter defendants. Thank you.

THE COURT:  Thank you.  And Mr. Kidd, welcome.

All right.  So we are here for a final approval hearing.  Let me start with apologies that we are delayed.  I had a lengthy oral argument this morning.  It was really interesting, so it kept my attention for longer than I had anticipated.  But it also has the benefit of providing additional time, should anyone wish to come and object and be here for the hearing.  I see no one here, and so -- and I have received nothing from any objectors.

So let me go through a few preliminary things.  Why don't I hear from you, Ms. Hopkins, about any update on the notice process, claims, objections, exclusions.  Is there anything different than what's been addressed in the papers?

MS. HOPKINS:  Sure, your Honor.  As you said, the objection deadline was April 24, and we still have not received any objections, and we still have only the one exclusion for a hundred shares.

I just wanted to advise your Honor that we did include in the notice, per your Honor's request and order, the language regarding the estimated claims administration costs, which was 300 to 490,000 through the initial distribution.  So that was included in the notice.  I have a red line if your Honor wants to see that.

P5FLGraH

As of yesterday, the claims administrator had mailed 70,375 notices.  As of yesterday, they have received 121,995 legitimate claims.  That's a slight increase from the reply brief.  There was an initial 226 claims received between when we filed the reply and yesterday.  And so we have now received a total of 121,995 claims.  A.B. Data currently is processing those claims and has processed over 35,000 of them so far.  So we have made really good progress there.  And then just so far, as of yesterday, the settlement fund has earned $867,145.27 in interest.

THE COURT:  OK.  And do you expect that the administrative fees are going to fall within the estimate that you had provided in the notice?

MS. HOPKINS:  Yes, your Honor.  We have no reason to think it won't.

THE COURT:  OK.  That's good.

All right.  Again, I am going through my checklist. You have not received any further objections.  I see no one here in court, and we delayed the proceeding.  And I have not received in chambers or on the docket any objections.  So I think that takes care of that.

Ms. Saltzstein, is there anything that you would like to add in addition to the papers that have been submitted?

MS. SALTZSTEIN:  No, your Honor, nothing else to add.

THE COURT:  OK.  And Ms. Hopkins, it's your

understanding -- the parties' understanding that the entry of judgment in this lead case will also resolve the consolidated member case, the *Fan v. Grab Holdings* case?  Is that correct?

MS. HOPKINS:  Yes, your Honor.

THE COURT:  That's 22-cv-3277, so that will be folded into this.

MS. HOPKINS:  Correct.

THE COURT:  OK.  I think that covers my questions. What I would like to do -- thank you, Ms. Hopkins.  You may be seated.  I will do a catch-all.

Ms. Hopkins, is there anything else you would like to present before I give you my ruling on this?

MS. HOPKINS:  No, your Honor.  I think everything is set forth in our papers, so unless your Honor has any other questions.

THE COURT:  OK.  And pleased with how the settlement process is going thus far?

MS. HOPKINS:  Yes.

THE COURT:  Thank you.

Ms. Saltzstein, anything further to add?

MS. SALTZSTEIN:  Nothing further to add.  Thank you.

THE COURT:  Thank you.

All right.  What I would like to do, in order to get you a ruling as soon as possible, is to put my ruling on the record here today.  I know that that will task your patience a

P5FLGraH

bit because I like to be comprehensive in my fairness opinions, so it will take a bit of time for me to go through that opinion, but I would like to do it today so that you can get approval as soon as possible.

What I would like to ask is whether there is any objection to me providing the name of a case that I rely upon, and then saying the phrase "citation included" or "parenthetical included," and then providing those citations and parentheticals to the court reporter, who will include those in the transcript. But then you don't sit here while I read through the particular Federal Recorder number, so that it's a little bit less lengthy for the parties.

Would that be OK, Ms. Hopkins?

MS. HOPKINS:  Yes, your Honor.  Thank you.

THE COURT:  Thank you.

Ms. Saltzstein, is that all right?

MS. SALTZSTEIN:  Yes, your Honor.  Thank you for that.

THE COURT:  We will do that.

All right.  This hearing was scheduled to consider approval of the proposed settlement in the case of *In re Grab Holdings Limited Securities Litigation,* Case Number 22-cv-02189. It will also cover *Fan v. Grab Holdings Limited*, 22-cv-3277.  Lead Plaintiffs Si Fan, Amit Batra, and SLG Cloudbank Holdings LLC ("Lead Plaintiffs"), on behalf of themselves and the Settlement Class (the "Class"), seek final

P5FLGraH

approval here of the class action settlement between the Class and defendants Grab Holdings Limited ("Grab"), Brad Gerstner, Hab Siam, Richard N. Barton, Aishetu Fatima Dozie, Dev Ittycheria, Anthony Tan, Peter Oey, Tan Hooi Ling, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay (collectively, the "Defendants"). The Lead Plaintiffs also seek the reaffirmation of the Court's prior preliminary certification of the Settlement Class and the proposed plan of allocation of the proceeds of the Settlement, all for the purpose of effectuating the settlement. Co-Lead Counsel Pomerantz LLP and Levi & Korsinsky LLP move for an award of attorneys' fees and litigation expenses, and an award to Lead Plaintiffs. Defendants do not oppose these motions.

Ms. Saltzstein, is there anything else you wanted to say regarding the attorney's fees application?  Any opposition there?

MS. SALTZSTEIN:  No, your Honor.

THE COURT:  OK.  Thank you.

Anything further you wanted to add on the attorney's fees application, Ms. Hopkins?

MS. HOPKINS:  No, your Honor.  Thank you.

THE COURT:  OK.  Thank you.

I will now rule on the motions, and I ask the parties to listen closely in case there is anything that I state incorrectly, and we can make that correction to make sure that

the record is clear.

On January 13, 2025, under Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily certified a Settlement Class for settlement purposes only. The Settlement Class was defined as:

[A]ll persons or entities who: (i) purchased or otherwise acquired public shares in Grab (including by way of exchange of Altimeter Growth Corp. ("AGC") shares) pursuant to or traceable to the proxy/registration statement that Grab filed with the SEC on Form F-4 on August 2, 2021, and that was thereafter amended on Forms F-4/A on September 13, 2021, October 18, 2021, November 12, 2021, November 17, 2021, and November 19, 2021, and incorporated into the final prospectus on Form 424(b)(3) filed on November 19, 2021, as amended (the "Proxy/Registration Statement"); (ii) the Class is defined as those who exchanged AGC shares for Grab Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement; or (iii) those who purchased or otherwise acquired public Grab Class A Ordinary Shares or other public Grab or AGC securities between August 2, 2021 and March 3, 2022, both dates inclusive.

Excluded from the Settlement Class are:

(a) Defendants and their immediate families; (b) current and former directors or officers of Grab or AGC; and (c) claims relating to the purchase or acquisition of Grab

shares subject to a Lock-Up Agreement referenced in the Proxy/Registration Statement.

That's at Dkt. 142, paragraph 2. "Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion." *Id.* We have one individual who has filed such a request. See Dkt. 153-1 paragraph 8; Dkt. 151-1 at 43. Therefore, he shall be excluded, and I now reaffirm the Court's preliminary approval of the class for purposes of final approval of the settlement.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), courts must consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

P5FLGraH

*Id.* To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). Courts in this Circuit have historically determined substantive fairness by analyzing the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974). "The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors." See *Pearlstein v. BlackBerry Limited,* 2022 WL 4554858, at *7 (SDNY Sept. 29, 2022); see also In re *Payment Card Interchange Fee & Merck Disc. Antitrust Litig.,* 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace the [*Grinnell*] factors.")). The Court must consider the procedural and substantive fairness of the settlement, "determining whether the terms of the settlement and the negotiation process leading up to it are fair." *Flores v. CGI Inc.,* 2022 WL 13804077, at *3 (SDNY Oct. 21, 2022).

The Court will not presume fairness of the settlement even if it arises from an armslength agreement. See *Moses v. New York Times Co.,* 79 F.4th 235, 243 (2d Cir. 2023) ("Rule 23(e)(2)'s procedural factors prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement"). Rather, the Court will evaluate all of the factors set forth in Rule 23(e)(2) including the proposed attorneys' fee award. *Id.*

P5FLGraH

For the reasons set forth in a few moments, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell*, and accordingly, the Court approves the Settlement.

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion.  Considering Rule 23(e)(2)(A) first, the Court considers whether the class representatives and class counsel have adequately represented the class.  To show adequacy, courts look to whether the class representatives have conflicting interests with other class members and "whether counsel is qualified, experienced and generally able to conduct the litigation." See *Flores*, 2022 WL 13804077, at *4; see also *Soler v. Fresh Direct, LLC,* 2023 WL 2492977, at *3 (S.D.N.Y.  Mar. 14, 2023).

The Lead Plaintiffs here do not have interests that are antagonistic or at odds with the putative class. All purchased or acquired Grab public shares during the Settlement Class Period and were injured by the same alleged false and misleading statements. The record here reflects that Co-Lead Counsel are experienced and qualified in securities litigation and prosecuted this case vigorously for several years.

The Court also finds that the settlement was reached after arms-length negotiations pursuant to Rule 23(e)(2)(B). The settlement was reached after the parties engaged in multiple mediation sessions with David Murphy, and months of follow-up negotiations. See Dkt. 151 ("Joint Declaration" or

P5FLGraH

"Joint Decl.")  Paragraphs 36-39.  The involvement of an experienced mediator such as Mr. Murphy — who issued a double-blind recommendation that all parties ultimately accepted — supports a finding that the settlement was negotiated at arms' length.  See *Yang v. Focus Media Holding Ltd.,* 2014 WL 4401280, at \*5 (S.D.N.Y. Sep. 4, 2014). Here given the adequacy of representation here, the proceedings before Mr. Murphy, the presettlement discovery, and the parties' months-long arms-length negotiations, I conclude that the settlement is procedurally fair.

The settlement is also substantively fair.  Courts in this Circuit look to the *Grinnell* 9-factor test to assess the substantive fairness of a settlement and whether it is fair, reasonable and adequate, as required by Rule 23(e). See, e.g., *Flores,* 2022 WL 13804077, at \*7; *Christine Asia Co.,* 2019 WL 5257534, at \*10. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all

P5FLGraH

the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. "[N]ot every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Christine Asia,* 2019 WL 5257534, at *9 (citing *In re Glob. Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

Here, litigation through trial would be particularly complex, expensive, and long. It would entail time-consuming foreign discovery throughout Southeast Asia, including from third parties, and require costly translations from and into multiple languages. Any potential recovery could take years. Therefore, the first *Grinnell* factor weighs in favor of final approval. See *Payment Card,* 330 F.R.D. at 36 ("Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial.").

With respect to the second *Grinnell* factor, the class members' reaction to the Settlement has been very positive. As of May 6, 2025, 70,375 postcard notices were disseminated to potential Settlement Class Members and there have been NO objections to the settlement, plan of allocation or application for attorneys' fees. See *Pearlstein v. Blackberry Ltd.,* 2022 WL 4554858, at *3 (SDNY Sept. 29, 2022) (noting that the adequacy of the settlement is supported if there are only a small number of objections). There was also just one request for exclusion

P5FLGraH

from an individual representing only 100 shares.  No institutional investors have objected to or requested exclusion from the settlement.  Thus, I conclude that the overwhelmingly favorable response demonstrates that the Class approves of the Settlement and supports final approval.  *See In re Signet Jewelers Limited Sec. Litig.,* 2020 WL 4196468, at *6 (S.D.N.Y. July 21, 2020) ("The absence of any objections and the small number of requests for exclusion support a finding that the Settlement is fair, reasonable, and adequate.").

With respect to the third *Grinnell* factor, the stage of the proceeding, the parties have engaged in motion practice on a motion to dismiss, which I am familiar with, fact discovery, class certification motion practice, and more. These actions indicate that the parties "had adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004)).  Therefore, the third *Grinnell* factor weighs in favor of final approval.

Turning to the fourth and fifth *Grinnell* factors, the risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *See Velez*

P5FLGraH

*v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs would have faced numerous risks if they had continued to litigate, including with respect to proving liability, traceability, and damages.  The proposed settlement eliminates uncertainties regarding all of these substantive risks in the present litigation.  These factors therefore weigh in favor of final approval.

Relatedly, the risk of obtaining class certification and maintaining this action through trial is also present. Plaintiffs' claims would also have had to face a potential motion for summary judgment, class certification proceedings, and trial, all of which would have required further and extensive briefing, and also could have entailed additional appeals.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

Turning to the seventh *Grinnell* factor, there is nothing to suggest that Defendants would be unable to withstand a greater judgment, especially given the availability of D&O insurance. "But a defendant is not required to empty its coffers before a settlement can be found adequate." *Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quotation omitted). Defendants' financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the Settlement is

P5FLGraH

fair, reasonable and adequate.

Finally, the amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000).  Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).

The Lead Plaintiffs seek approval here of an $80 million cash Settlement. This represents 8.9% to 13.4% of the maximum potential damages of $599M to $898M. Joint Decl. paragraph 64. This recovery percentage "falls well above the 1.2% median settlement value for all securities class actions settled in 2024" and securities cases with similar damages that settled between 2015 and 2024, as demonstrated by the NERA Report submitted by Plaintiffs. *Id. See also Okla. Firefighters Pension & Ret. Sys.,* 2021 WL 76328, at *3 (noting that the settlement that was 10% of estimated damages was "within the range previously approved by judges in this District," referencing recoveries ranging from 3% to 11% of estimated

P5FLGraH

damages).

Even if the Lead Plaintiffs were ultimately successful in obtaining a higher recovery after trial and appeals, they still will experience a significant delay in obtaining such relief and face considerable litigation expenses and attorneys' fees.  For all of these reasons, I agree that the amount of this immediate cash recovery is reasonable and that, therefore, this factor too weighs in favor of final approval.

Weighing all these *Grinnell* factors, again, I find that the Settlement is substantively fair and weighs in favor of final approval.

The Court next turns to Rule 23(e)'s remaining factors, the proposed method of distribution is effective and consistent with standard means that are frequently used in securities class actions.  See Fed. R. Civ. P. 23(e)(2)(C)(ii). The settlement provides that proceeds will be distributed to members who submit eligible claim forms and documentation. They are processed through A.B. Data, an independent company with experience in securities class action administration.  This is an effective and standard approach and there have been no objections to this distribution mechanism.  Finally, as will be discussed further shortly, the Plan of Allocation is fair and adequate.

The proposed award of attorneys' fees is fair and reasonable when the terms of the proposed award are considered.

P5FLGraH

See Fed. R. Civ. P. 23(e)(2)(C)(iii).  As I will discuss further shortly, the proposed attorneys' fees of one-third (or 33 1/3%) of the Settlement Fund to be paid upon approval by the Court, while a large amount, is reasonable in light of the work of Co-Lead Counsel, their investment of resources in the case for the past several years on a contingency basis, their prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the settlement achieved.  To be clear, the Court is not reviewing the settlement agreement independent of the attorneys' fees requested given the Second Circuit's direction in *Moses. Moses,* 79 F.4th at 244. Rather, I am conducting a "symbiotic review" of the proposed settlement and the attorneys' fees to make sure that there is not an "unwarranted windfall[] for attorneys."  *Id.* (quoting *Goldberger v. Integrated Resources Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

The parties are also required to identify agreements entered into in connection with the Settlement.  Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3) require that the parties seeking approval file a statement identifying any agreement made in connection with the proposal, and that I consider any such agreements in my evaluation of the settlement.  Here, the parties have entered into a confidential Supplemental Agreement that states that Defendants may terminate the Settlement if shares held by persons who request exclusion from the

Settlement Class reach a certain threshold. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.,* 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); Signet, 2020 WL 4196468, at *13 (same).  The single request for exclusion also renders this agreement essentially a non-factor at this point.

Is that correct, Ms. Saltzstein?

MS. SALTZSTEIN:  That's correct, your Honor.

THE COURT:  Finally, the Settlement treats class members equitably relative to one another. Fed. R.  Civ. P. 23(e)(2)(D).  As discussed further below, the plan of allocation provides that each eligible class member will receive a settlement amount based on a pro rata share of the net settlement fund.  Moreover, reimbursement of fees and expenses for the Lead Plaintiffs is reasonable for the reasons that will be discussed.  Again, to be clear, I am evaluating the payments to the Lead Plaintiffs as part of the analysis under Fed. R. Civ. P. 23(e)(2)(D).  *Moses* 79 F.4th at 244.

The Court will next evaluate the Plan of Allocation here to determine whether it is fair and adequate. "[A] plan of allocation need not be perfect," *EVCI*, 2007 WL 2230177, at *11 (collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," *In re PaineWebber,* 171 F.R.D. at 133.  Thus, "[i]n determining whether a plan of

P5FLGraH

allocation is fair, courts look primarily to the opinion of counsel." *EVCI*, 2007 WL 2230177, at *11.  A plan is more likely to be reasonable "if recommended by experienced and competent counsel." *Villa v. Highbury Concrete Inc.,* 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022).

Co-Lead Counsel, who are experienced and competent in complex class actions, prepared the Plan of Allocation in consultation with Plaintiffs' economic expert consultant.  The Plan of Allocation is based on a theory of damages consistent with Section 11 of the Securities Act and 14(a) of the Exchange Act, and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action.  Under the Plan of Allocation, Authorized Claimants will receive their pro rata share of the Net Settlement Fund, which is the Authorized Claimant's Recognized Loss divided by the total of recognized losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Joint Dec. paragraphs 11, 85.  Prorated claims of less than $10 will not be distributed given that it is cost prohibitive. *Id*. at paragraph 86. The plan of allocation was detailed in the notice and no objections were received.

Because the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced class counsel in consultation with an economic

P5FLGraH

expert, the Court finds it fair and adequate. *See In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) (approving "pro rata distribution of the Net Settlement Fund among all Authorized Claimants based solely on if and when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during certain segments of the Class Period").

I will next evaluate the dissemination of notice here to determine whether it satisfies Rule 23 and Due Process.

The Court entered the order preliminarily approving the class action settlement on January 13, 2025.  Shortly thereafter, A.B. Data, the claims administrator, began mailing postcard notices to potential class members.  Rochelle J. Teichmiller, a project manager at A.B. Data, provided two declarations detailing the dissemination of notice and claims administration. Dkt.  No. 151-1, 153-1.  As of May 6, 2025, AB Data had disseminated 70,375 postcard notices to Settlement Class members by email and first-class mail.  Dkt. 153-1 paragraphs 4-5.

In addition to mailing, the notice was transmitted over PR Newswire and Business Wire.  Dkt. 151-1 paragraph 13. Finally, A.B. Data set up a settlement website, where copies of the Notice Claim Form, and other court documents can be found, and provided a toll-free number for class members to call with questions. *Id*.  Paragraphs 14-15.  The Notice included all of

P5FLGraH

the information required by Rule 23(c)(2)(B), the PSLRA, and the SDNY Local Rules. See *Id.* at 8-23.

I find that these efforts fairly and adequately advised class members of the terms of the Settlement, including the Plan of Allocation for the Settlement.  The Notice informed class members of the deadline and manner in which they were required to submit a claim form to be eligible for a distribution, and informed all class members of their rights, including their right to object to the Settlement and to attend the final fairness hearing today.  As mentioned, no one has chosen to attend the hearing today.  I find that the notice and its distribution comported with all constitutional requirements, including those of due process.

The Court will next consider Co-Lead Counsel's requests for attorneys' fees. Co-Lead Counsel request attorneys' fees in the amount of 33 1/3% of the $80M Settlement Fund. Dkt.  148 ("Fees Mem.") at 1.  Co-Lead Counsel also seek reimbursement of $224,744.92 in litigation expenses, and $15,000 for each of the three Lead Plaintiffs. *Id.*

The trend in the Second Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases, although the Court has discretion to award attorneys' fees based on either the lodestar method or the percentage-of-recovery method. See *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.,* 925 F.3d 63, 68 (2d Cir.

P5FLGraH

2019); *Wal-Mart Stores,* 396 F.3d at 121.

The Notice provided to Settlement Class Members advised that Co-Lead Counsel would apply for an award not to exceed one-third of the Settlement Amount, plus reimbursement of litigation expenses in an amount not to exceed $400,000, which may include reimbursement to plaintiffs for their representation of the settlement class in an amount not to exceed $15k. Dkt. No. 151-1 at 13.  The Notice informed class members of the process and deadline for objecting and no objections to the fees were filed.  The amounts sought now fall under the estimates provided in the notice.

Reasonableness is the touchstone when determining whether to award attorney's fees.  In *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id*. at 50. The Court will evaluate each of these factors in turn.

Co-Lead Counsel's fee declarations show a total of 16,091.16 hours spent on the litigation between the two firms over the course of litigating this action over nearly three years.

P5FLGraH

The joint declaration details how Co-Lead Counsel performed tasks such as the following: (i) conducting a review of SEC filings, investor call transcripts and press releases among other things; (ii) drafting and filing an initial complaint based on this analysis; (iii) filing contested motions for appointment of lead plaintiff and co-lead counsel; (iv) drafting and filing an amended complaint; (v) researching, drafting, and filing an opposition to Defendants' joint motion to dismiss; (vi) conducting extensive discovery, including preparing and serving document requests as well as subpoenas to non-parties; (vii) working with both domestic and foreign private investigators to interview relevant individuals and investigate Grab's business in the Southeast Asian countries in which it operated; (viii) analyzing thousands of documents produced by Defendants and third parties; (ix) engaging in two full-day mediation sessions and follow up negotiations; (x) filing a motion for class certification; (vii) working with experts; and (viii) finalizing a proposed settlement and preparing related documents. See Joint Decl.  Paragraph 9.

The size and difficulty of the issues in this case are significant factors to be considered in making a fee award. *In re Prudential Sec. Inc. Ltd. P'ship Litig.,* 912 F. Supp. 97, 100 (S.D.N.Y.  1996).  When reviewing securities class action settlements, federal courts have recognized that these actions are "notably difficult and notoriously uncertain to litigate."

P5FLGraH

*In re Facebook, Inc. IPO Sec. & Derivatives Litig.,* 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (internal quotation Marks omitted) (courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute")(quoting *In re Gilat Satellite Networks, Ltd.,* No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007)).  This case involves complex and disputed questions of liability, traceability, and damages, with evidence spread throughout Asia.  Significant work was undertaken by Co-Lead Counsel, as articulated previously.  The amount sought by Co-Lead Counsel is commensurate with the magnitude and complexity of this litigation.

As discussed, Co-Lead Counsel faced significant risk in prosecuting this action and proving the merits of the claims.  Moreover, moving beyond the pleading stage, Co-Lead Counsel would next be involved in aggressive litigation through further class certification proceedings, summary judgment, trial, and any appeals.  All of this has been, and would continue to be, undertaken on a fully contingent basis, which also weighs in favor of a finding that the requested fees are reasonable.  See *In re Flag,* 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate

P5FLGraH

fee award.").

Co-Lead Counsel has considerable experience in major class action lawsuits, including securities class actions such as this. See Dkts. 151-4, 154-5. Their firms have similarly developed strong reputations for their competent representation. *Id*.  The Court has no reason to doubt the quality of their representation.

The high quality of defense counsel opposing Plaintiffs' efforts further supports the caliber of representation that was necessary to achieve the Settlement. Defendants were represented in this case by two experienced and prominent defense firms, Skadden, Arps and Ropes & Gray. "[T]he ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010); see also *Christine Asia Co.,* 2019 WL 5257534, at *19 ("[o]ne marker of the quality of representation the Class received is the quality of the result obtained.").

Therefore, I find that this *Goldberger* factor weighs in favor of approving the fee award.

Generally, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.  An award of 33 1/3% of the $80M settlement fund is within the range of reasonableness in light of other complex

P5FLGraH

securities class action settlements in this Circuit. Plaintiffs have gathered a representative sample of such cases at Dkt. 148 at 14-15.

Therefore, evaluating the requested fee in relation to the settlement overall weighs in favor of approval.

Finally, when determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). "Courts have, as a generic matter, frequently observed that the public policy of vigorously enforcing the federal securities laws must be considered in calculating an award." *In Re BioScrip, Inc. Sec. Litig.,* 273 F. Supp. 3d 474, 502 (S.D.N.Y. 2017) (internal quotation marks omitted), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.,* 925 F.3d 63 (2d Cir. 2019); see also *Signet*, 2020 WL 4196468, at *21 ("strong public policy concern exists for bringing successful securities litigation"). The Co-Lead Counsel's substantial effort here on a contingency basis to obtain recovery based on public statements serves the public interest. Accordingly, public policy favors granting the fee request.

Therefore, after considering all the factors under *Goldberger*, the fee appears to be reasonable.

But before concluding, to ensure the reasonableness of

P5FLGraH

a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar.  See *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere crosscheck the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Co-Lead Counsel submitted a summary of time records detailing the billable rate and hours worked by the attorneys and professional staff who recorded time in this matter.  See Dkts. 151-4, 151-5.  I find that these billable rates, based on the timekeeper's title and market rates for similar professionals in their fields nationwide, and, in particular, here in New York, to be reasonable in this context.

As discussed, Co-Lead Counsel expended 16,091.16 hours in attorney and professional staff time over the course of this action.  Based on the hourly rates and work performed, the total lodestar for Plaintiffs' Counsel is $9,832,161.00.  Joint Decl. paragraph 95.  And this does not include additional time that Co-Lead Counsel will devote to overseeing and assisting in the administration of the settlement.  Co-Lead Counsel's requested fee represents a cross-check multiplier of 2.71 on Plaintiffs' Counsel's lodestar. *Id*.  This lodestar multiplier falls well within the range of multipliers typically awarded in this Circuit. "In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *Signet*,

P5FLGraH

2020 WL 4196468, at *16; *Fleisher v. Phoenix Life Ins. Co.,* 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (internal quotation marks omitted)("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit.")(collecting cases); see also cases cited at ECF No. 195 at 9-10.

Thus, the lodestar "cross-check" confirms that Plaintiffs' Counsel's requested fees of 33 1/3% from the Settlement Fund are reasonable.

Therefore, in summary, the Court finds that the fee award is reasonable.  It is within the range of what courts in this Circuit regularly award in class actions such as this, and, as discussed, the factors established for the review of attorney's fees in *Goldberger* supports the conclusion that the fee is reasonable, as well as the lodestar cross-check.

This is a consideration in evaluating the fairness of the class action settlement as well.

Lead Counsel further moves the Court for reimbursement of $224,744.92 in litigation expenses, primarily from mediation fees, expert witness fees, investigative fees, eDiscovery hosting, database charges, local counsel fees for issuance of Letters Rogatory in Southeast Asia and reasonable travel expenses. See Joint. Decl.  Paragraphs 109-19.  Co-Lead Counsel has provided substantiation for the reasonableness of its costs and Courts routinely award such costs. *See In Re Merrill Lynch*

P5FLGraH

*& Co., Inc. Research Reports Sec. Litig., 246* F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); Fed. R. Civ. P. 23(h).

Lead Counsel is also seeking a $15,000 award for each of the three Lead Plaintiffs, totaling $45,000, for time spent prosecuting the action.  The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a Class." 15 U.S.C. Section 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *Christine Asia*, 2019 WL 5257534, at *20.  The amount sought represents the value of time devoted to the action by the three Lead Plaintiffs, and was supported by detailed Declarations of each of the lead plaintiffs with the hours that were expended that would have otherwise been devoted to their regular duties and daily work. Dkts. 151-6 to 151-8.  *See In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of expenses of lead plaintiffs where "representative plaintiffs submitted affidavits to the district

P5FLGraH

court that included a thorough accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time—an item for which § 78u-4(a)(4) expressly allows recovery").

The Notice also informed potential Settlement Class members that Co-Lead Counsel would seek reimbursement of no more than $400,000 in expenses, no objections were filed, and the total reimbursement request falls below the maximum presented to the potential settlement class.

The Court finds that the requested expenses are reasonable and necessary to the representation of the class, and Co-Lead Counsel and Lead Plaintiffs' motion for costs and expenses is granted.  The reasonableness of the expenses also supports the reasonableness of the overall settlement under Rule 23.

Lastly, before I conclude, the PSLRA requires that for any private action under that Act, "upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading or dispositive motion." 15 USC Section 78u-4.  I see that the record reflects that the parties and their counsel agreed in their stipulation and Agreement of Settlement, dated December 30, 2024, "not to assert in any

P5FLGraH

forum that this action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis." Dkt. 138-1 paragraph 14.2.  They also stipulated that no party shall "make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. *Id.*

Based on these representations, and my independent review of the record, I find that the parties and their respective counsel have complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of this action.

Therefore, based on all that I have just reviewed, I am reaffirming the Court's certification of the class for the purpose of effectuating the settlement.  I approve the class action settlement for $80M, and I approve the plan for allocating and distributing the net proceeds of the settlement. I award Lead Counsel attorneys' fees in the amount of 33 1/3% of the Settlement Fund, $224,744.92 for reasonable expenses incurred by Co-Lead counsel; and $15k to each of the three Lead Plaintiffs for their costs and expenses.

I expect to enter an order and judgment today consistent with the parties' proposals.

I want to thank the parties for all of their very good work in preparing these settlement papers.  I wish you the best

P5FLGraH

in administering the settlement.  Your clients were all very well-represented throughout this process.  And court is adjourned.  Thank you very much.

(Adjourned)