**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GRAB HOLDINGS LIMITED SECURITIES LITIGATION | Case No. 1:22-cv-02189-JLR |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR CLASS DISTRIBUTION ORDER**

Court-appointed Lead Plaintiffs Amit Batra, Si Fan, and SLG Cloudbank Holdings, LLC, together with the Settlement Class (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion ("Motion") for entry of the [Proposed] Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1] If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claim Forms submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claim Forms have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Teichmiller Declaration. *See* Teichmiller Decl. ¶¶38-40.

## I.    BACKGROUND

On December 30, 2024, the Parties entered into the Stipulation, the terms of which established an $80,000,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons or entities who: (i) purchased or otherwise acquired public shares in Grab (including by way of exchange of AGC shares) pursuant to or traceable to the proxy/registration statement that Grab filed with the SEC on Form F-4 on August 2, 2021, and that was thereafter amended on Forms F-4/A on September 13, 2021, October 18, 2021, November 12, 2021, November 17, 2021, and November 19, 2021, and incorporated into the final prospectus on Form 424(b)(3) filed on November 19, 2021, as amended (the "Proxy/Registration Statement"); (ii) who exchanged AGC

---

[1] All capitalized terms used herein that are not otherwise defined have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated December 30, 2024 ("Stipulation"; ECF No. 138-1), or the concurrently filed Declaration of Rochelle J. Teichmiller in Support of Plaintiffs' Motion to Distribute the Net Settlement Fund ("Teichmiller Declaration" or "Teichmiller Decl.") submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("Claims Administrator").

shares for Grab Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement; or (iii) purchased or otherwise acquired public Grab Class A Ordinary Shares or other public Grab or AGC securities between August 2, 2021 and March 3, 2022, both dates inclusive ("Settlement Class Period"), and were damaged thereby. ECF No. 138-1, ¶1.38. Excluded from the Settlement Class are: (a) Defendants and their immediate families; (b) current and former directors or officers of Grab or AGC; and (c) claims relating to the purchase or acquisition of Grab shares subject to a Lock-Up Agreement referenced in the Proxy/Registration Statement. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion. *Id.*

The Court granted preliminary approval of the Settlement on January 13, 2025. ECF No. 142 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, a total of 70,375 Postcard Notices were mailed to potential Settlement Class Members, brokers, and other nominees. Teichmiller Decl. ¶4. Moreover, the Claims Administrator published the Summary Notice, transmitted the Summary Notice over *PR Newswire* and *Business Wire*, established a case-specific website dedicated to the Settlement (www.GrabSecuritiesSettlement.com), and set up a toll-free telephone helpline. Teichmiller Decl., ¶¶2, 6. The Notice and the Settlement Website provided Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claim Forms. *Id.*, ¶2. The Settlement Website also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form. *Id.*

On May 15, 2025, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate, and approving the Plan of Allocation, which was explained in the

Notice, as providing a fair and reasonable method upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 154.

Co-Lead Counsel now request that the Court authorize distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants.

## II. CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than April 24, 2025. ECF No. 138-5, Ex. A-3 (Postcard Notice). The Claims Administrator received and reviewed all submitted Claim Forms and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Teichmiller Decl. ¶¶20-28.

Of the 201,312 Claim Forms submitted to and fully processed by the Claims Administrator, 166 were paper submissions ("Paper Claims"), and 705 were online submissions through the online filing portal on the Settlement Website ("Web Claims"). Teichmiller Decl. ¶¶10, 13. The remaining 200,441 Claim Forms were electronic claims ("Electronic Claim(s)") filed by Electronic Claims filers, who are typically banks, brokers, nominees, and other third-party filers that file Claim Forms on behalf of numerous Claimants. Teichmiller Decl. ¶14. Because Electronic Claims filers submit a high volume of Claim Forms on behalf of multiple Claimants, the Claims Administrator provides Electronic Claims filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing large

volumes of paper documentation. Teichmiller Decl. *Id.* This process is designed to expedite the claims process.

If a Paper or Web Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit A to the Teichmiller Declaration. Teichmiller Decl. ¶¶20-23; Ex. A. The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶22. If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim Filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibits B and C to the Teichmiller Declaration respectively. Teichmiller Decl. ¶¶24-28; Exs. B and C. The Claims Administrator worked diligently with claimants to resolve deficiencies where possible, and, as a result of this process, a number of claimants with initially deficient claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Teichmiller Declaration, after the deficiency process was complete, the Claims Administrator determined that 37,428 claims are acceptable and should receive a distribution. Teichmiller Decl. ¶38. This number includes 37,320 timely and valid claims, and 108 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* 30, 38. The Claims Administrator also determined that 163,884 claims are not eligible and should be rejected for the following reasons: (i) 85,600 claims did not result in a Recognized Loss under the Court-approved Plan of Allocation; (ii) 78,186 claims were duplicates or replaced; (iii) 29 claims were submitted without documentation; (iv) 28 claims were identified as PIPE Investors; (v) 24 claims were withdrawn; (vi) 9 claims were identified as shares that were subject to a Lock-Up Agreement;

4

(vii) 5 claims did not comply with documentation audit; and (viii) 3 claims were filed by Questionable Filers. Teichmiller Decl. ¶38.

## III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive claims after the April 24, 2025 claim filing deadline. Teichmiller Decl. ¶30. "There must, however, be a final cut-off date after which no more claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *3 (C.D. Cal. Mar. 24, 2025) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'")); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claim Forms received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of January 15, 2026—approximately nine months after the Court deadline of April 24, 2025. Teichmiller Decl. ¶30.

Of the 201,312 claims submitted, 400 claims were received or postmarked after the initial April 24, 2025 deadline, but before the Claims Administrator's imposed cut-off of January 15, 2026. Teichmiller Decl. ¶30. Of these 400 Claims, 108 are late but otherwise eligible ("Late But Otherwise Eligible Claims"). *Id;* Ex. E. These 108 Late But Otherwise Eligible Claims have been recommended for payment. *Id.*

Co-Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit

a Claim Form, but while the claims were still being processed. *See In re XL Fleet Corp. Sec. Litig.*, Case No. 1:21-cv-02002-JLR, ECF No. 209 (S.D.N.Y. Sept. 4, 2025) (allowing late claims); *In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Stable Road*, 2025 WL 924928, at *3 (accepting "Late but Otherwise Eligible Claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same); *see also In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Co-Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Teichmiller Decl. ¶30, Ex. E.

Additionally, it is respectfully requested that the Court enter an Order directing that no claims or responses to deficiency letters received after January 15, 2026, be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.   DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a pro rata basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution"). Teichmiller Decl. ¶¶40, 42. Based on the substantial experience of Co-Lead Counsel in similar distributions, it is anticipated that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claim Forms will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Co-Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." Teichmiller Decl. ¶42(a)(iv).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after six months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Co-Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. Teichmiller Decl. ¶42(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of fees and expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants who participated in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* Following the Second Distribution, additional

7

redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Co-Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id.*, ¶42(c).

Finally, pursuant to Paragraph 7.6 of the Stipulation, if any funds remain thereafter in the Net Settlement Fund that cannot be feasibly redistributed, and after payment of outstanding Notice and Administration Expenses, Taxes, attorneys' fees and expenses and other awards approved by the Court, Co-Lead Counsel shall propose a non-sectarian, non-profit to the Court for a *cy pres* distribution

## V.    RELEASE OF CLAIMS

To permit the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in reviewing, verifying, calculating, tabulating, or otherwise processing the submitted Claims, or in administering or handling the taxation of the Settlement Fund or Net Settlement Fund, shall be released and discharged from any and all claims arising from such involvement. Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Co-Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent

retained by Plaintiffs or Co-Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g.*, *XL Fleet Corp.* Case No. 1:21-cv-02002-JLR, ECF No. 209 ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim…."); *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) (same); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 4245185, at *2 (S.D.N.Y. Sept. 15, 2022) (same); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033, at *2 (S.D.N.Y. Dec. 23, 2010) (same).

## VI.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration for this project up to the Initial Distribution is $293,233.56. Teichmiller Decl. ¶41. To date, the Claims Administrator has received payment of $293,233.56. *Id.* The estimate to conduct the Initial Distribution is $41,007.50. *Id.* Therefore, Co-Lead Counsel

respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $41,007.50 in anticipation of the work to be performed during the Initial Distribution.[2] *Id.*

## VII.  RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that: (i) no earlier than one (1) year after the final distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the claims and all supporting documentation; and (ii) no earlier than three (3) years after the final distribution date of the Net Settlement Fund, the Claims Administrator may destroy the electronic copies of the claims and all supporting documentation.

## VIII.  CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

Dated: February 2, 2026

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*

Shannon L. Hopkins
Gregory M. Potrepka
Morgan M. Embleton (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com

*Co-Lead Counsel for Lead Plaintiffs*

---

[2] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

**POMERANTZ LLP**

*/s/ Brian P. O'Connell*

Joshua B. Silverman
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jeremy A. Leiberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165
Tel.: (212) 697-6484
Fax: (212) 697-7296
eitank@bandg.com

*Additional Counsel for Lead Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: February 2, 2026                                    */s/ Shannon L. Hopkins*
                                                            Shannon L. Hopkins

12